# IN THE UNITED STATES COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| WILLIAM BRADLEY[1]; RICHARD BRIAN AARON; KYLE ABBATTISTA; ALULA ABERA; ELISA ADELMAN; MARIE AHMED; COURTNEY BABCOCK; SHARLENE BAGGA-TAVES; RAZIA BAQAI; RAYMA BARAN; DANIELLE BASH; LYLA ANDREWS BASHAN; MIRANDA BECKMAN; LILLIAN BENJAMIN; JULIE BOCCANERA; KAI A. BEARD; KATHRYN BEGEAL; STEPHEN BERLINGUETTE; JAMES BORGER; GINA CADY; ELIZABETH CALLENDER; ANGELA CARDENAS; MARK CHILDERHOSE; ELIZABETH COLARIK; ANDREA PESTONE CAPELLAN; JESSICA CARLSON; TAHALIA BARRETT CHANG; PAUL ANDREW COLBURN; EUGENE COOPER; SARAH COOPER; MATT CURTIS; CHRISTOPHER DALY; MICHELLE DAPRA; CHRISTINA DAVIS; WHITNEY DUBINSKY; MARY EDWARDS; PAUL E. EDWARDS; BOLA EKPE; KATRINA ERDAHL; ARMANDO ESPINOSA; BRANDON FENLEY; PAMELA FOSTER; KEVIN FOX; MELISSA FRASER; ROY GEISER; JASON GILPIN; MICAH ANDREW GLOBERSON; ARVIL GONZALEZ; NICHOLE GRABER; JUSTIN GUNNOE; TRAVIS GUYMON; BETH HAIN; MICHAEL HAINES; CAITLIN HALL; JOHN HANSEN; COREY HANCOCK; KALIM HANNA; JOHN HARRIS; SARAH JEAN HARRISON; MARIA DELORES HERMOSILLO; PLATO HIERONIMUS; ANNA HOFFMAN; STEPHANIE ICELAND-LEITZEL; BENJAMIN ISQUITH; KAREN JAMES; ALEXIS JONES; CHELSEA KAUFMAN; ASHLEY KING; BLAIR KING; AMY KOLER; MICHELLE KOSCIELSKI; SAMUEL KRAEGEL; JANNIE KWOK; JENNIFER LAAKSO; AMY LARSEN; JUNO LAWRENCE JAFFER; SANG E. LEE; LEIGH JONES; CICELY LEWIS; JAMIE LEWIS; MICHELLE LINDER; ANDREW LUCAS; KATELIN MAHER; JERRY MARCUS; ROBERT MCKENNEY; MELODY | Civil Action No. 1:26-CV-950<br><br>DATE: March 18, 2026<br><br>**COMPLAINT** |

---

[1] *See* sealed notice concurrently filed herewith for additional information regarding Plaintiffs, as required by Local Civil Rule 5.1(c)(1).

MCNEIL; JEREMY MEADOWS; TIMOTHY )
MELVIN; STEPHEN P.MENARD; EVAN MEYER; )
KIRA MICKIE MITRE; PAMELA J. MORRIS; JAKE )
MUELLER; NYALAMBI DEREK MULWANDA; )
JULIA NENON; DANI NEWCOMB; MARK )
NEWTON; ADAM NORIKANE; JEANETTE )
NORMAND; JAIME OBERLANDER; CHRISTINE )
OBESTER; JEAN ROBERTS OLIVERAS; MARIKA )
ANNE OLSON; FOLASADE OWOLABI; CHRISTINE)
PAGEN; SIOBHAN PANGERL; CHONG HUN )
(JOHN) PARK; ANDREW PARKS; RONALD CLARK )
PEARSON; APRIL PEETZ; MEI MEI PENG; )
JENNIFER PIKE; ALEXIS POLOVINA; MONICA )
JOSEPHINE PONS; XAVIER PRECIADO; DAVID )
RATLIFF; KERRY REEVES; MICHAEL J.REILLY; )
WENDY RICH-ORLOFF; WILLIAM S.RODEN; )
KRISTOPHER L.ROWELL; COURTNEY ROY; )
TRISHA SAVAGE; BENJAMIN (BEN)SCHAPIRO; )
JOSEPH SCHEIBEL; ZACHARY (ZACH)SCHEID; )
JOSHUA SCHRAMM; NATHANIEL SCOTT; )
REBECCA SEMMES; ADMIR SERIFOVIC; GARY )
SHU; REENA SHUKLA; SUSAN E. B.SKOLNIK; )
JENNIFER SLOTNICK; KEVIN SMITH ; JESSIE )
SNAZA; ANDRE-GUY SOH; RACHEL SOREY; )
ADAM STEFAN; DAVID ISSAC STONEHILL; )
DAVID STRINE; SHANNON TAYLOR; DANIELLE )
TEDESCO; MARK TEGENFELDT; MICHAEL )
TESKE; YASMEEN THOMASON; KATHERINE )
TILOUT; ANNA TONESS; CRISTINA ELIZABETH )
VELEZ; ELIZABETH WAGER; KIMBERLY )
A.WALLER; STACY LYNNE WALLICK; EMILY )
WANN; CORINA WARFIELD; STACEY T.WARREN; )
MEGHAN WATERS; KATHLEEN (KATHY) WEBB; )
KERRY WEST; HEATHER WIRICK; BRIAN )
WITTNEBEL; KARL WURSTER; JEFFREY ZAHKA, )
; ASTA ZINBO; ALEXANDER ZVINAKIS; GHAZI )
MEHMOOD; JOHN SPEARS; JENNIFER HUYNH; )
DEBRA MOSEL; RYAN SHELBY; and CRYSTAL )
BYRD OGBADU, )
)
        Plaintiffs,
v.                                                  )
                                                    )

2

UNITED STATES AGENCY FOR INTERNATIONAL )
DEVELOPMENT,                            )
    1300 Pennsylvania Avenue, NW,        )
    Washington, DC 20504,               )
                                        )
UNITED STATES DEPARTMENT OF STATE,      )
    2201 C Street, NW                   )
    Washington, DC 20520,               )
                                        )
MARCO RUBIO, United States Secretary of State, )
    2201 C Street, NW                   )
    Washington, DC 20520,               )
                                        )
UNITED STATES OFFICE OF MANAGEMENT AND )
BUDGET,                                 )
    725 17th Street, NW                 )
    Washington, DC 20503,               )
                                        )
RUSSELL VOUGHT, Director, United States Office of )
Management and Budget and USAID Administrator, )
    725 17th Street, NW,                )
    Washington, DC 20503                )
                                        )
UNITED STATES OFFICE OF PERSONNEL       )
MANAGEMENT,                             )
    1900 E Street, NW                   )
    Washington, DC 20415,               )
                                        )
SCOTT KUPOR, Director, U.S. Office of Personnel )
Management,                             )
    1900 E Street, NW                   )
    Washington, DC 20415,               )
                                        )
UNITED STATES DOGE SERVICES,            )
    736 Jackson Place, NW               )
    Washington, DC 20503, and           )
                                        )
AMY GLEASON, Acting Administrator, DOGE Services )
    736 Jackson Place, NW               )
    Washington, DC 20503,               )
                                        )
    Defendants.                         )

3

**NATURE OF THE COMPLAINT**

1.      The Age Discrimination in Employment Act of 1967 ("ADEA") requires that any personnel decision made by the federal government is "made free from any discrimination based on age," prohibiting personnel decisions that are either directly influenced by age animus or disproportionately impact older employees regardless of their intent. *See* 29 U.S.C. § 623; 29 U.S.C. § 633a(a). Defendants in this case are in continued violation of ADEA, as they conducted a pretextual reduction in force ("RIF") of the United States' Agency for International Development ("USAID"), terminating the Plaintiffs, without individualized assessment of their performance, their length of service, their retirement benefits, or establishing a valid need for a RIF, and are now rehiring for the same positions they claimed were no longer being retained under the RIF. Instead, this RIF was primarily carried out to eject older legacy employees from the Agency, under the false and unlawful assertion that the employees put in charge of terminating Plaintiffs were younger, more energetic, more tech-savvy, and therefore could improve the Federal Government's functions by replacing Plaintiffs with a younger workforce. Defendants used seniority and experience, as a proxy for age discrimination, terminating those they deemed and labeled as older legacy employees at USAID, all while dismantling or jeopardizing the decades of institutional knowledge and expertise the Plaintiffs had amassed.

2.      To justify this unlawful attack, Defendants orchestrated a messaging campaign to convince the public to put premium on the youth and vigor of the officials behind the terminations, as juxtaposed to the claimed age-related lethargy of the employees they were terminating. As part of this age-related truncation of workers, the persons responsible routinely peddled in code words indicative of age discrimination, including transition towards a more tech-savvy federal workforce, closely associated with youth. In fact, some of the decision making in terminating these employees

appear to have been carried out by neophytes to federal service in their twenties. The messaging and conduct employed was intended to, and did, create intolerable working conditions for older workers, replete with specific efforts to force them into resignation or early retirement.

3.      The Defendants' discriminatory intent is evident through a knowing and reckless disregard of many age-related legal and regulatory pre-termination safeguards for older employees, including failure to comply with mandatory age disclosures, failing to properly maintain and disclose a retention roster,  not providing adequate retirement-benefits counseling prior to termination and even suspending and interfering with  the statutorily required promotion process applicable to federal employees, negating the terminated employees' abilities to secure enhanced retirement and other benefits, the opportunity to return to the federal workforce in the future, or their ability to find other suitable employment.

4.      Moreover, after terminating the older employees on a pretextual RIF—based on the assertion that Plaintiffs' positions were not being retained—the Defendants have sought, and continue to seek, new, younger employees to conduct the same or similar functions as Plaintiffs. This has been done at the Department of State through a discriminatory job screening pattern and practice, that disproportionately disqualifies older employees and is intended to exclude Plaintiffs from returning to work for the federal government. The Department of State's ongoing recruitment for the same and similar positions from which Plaintiffs were terminated solidifies the pretextual nature of the RIF that upended Plaintiffs' lives and unlawfully destroyed their retirement plans and benefits. It is a ruse to replace older established workers with greater salary and benefits with younger cheaper counterparts. This is *sine qua non* of age discrimination.

5.      Beyond evidence of direct and intentional age discrimination, the pretextual RIF at USAID also undoubtedly disparately impacted older employees in the foreign service—who by

all available estimates made up more than sixty percent of the foreign service workforce prior to the RIF.

6. Despite knowing that most of the workforce subjected to the planned RIF was 40 years or older, the Defendants failed to assess the adverse impact of an abrupt, arbitrary, and pretextual RIF on this older workforce and failed to take any meaningful steps to mitigate the harmful impact of the RIF on older workers. Defendants ensured that older workers such as Plaintiffs were severely and disproportionately harmed by the RIF by failing to comply with applicable regulations, including, among others, failing to adequately prepare retention registers, disregarding the mandatory age-related disclosure requirements that apply to offering exit incentives to older employees, and suspending the Agency's promotion process.

7. Collectively, Defendants' actions constituted both forms of illegal age bias, intentional discrimination resulting in disparate treatment and implementation of seemingly age-neutral policies and practices that nonetheless had an unjustified adverse effect on Plaintiffs as older workers, a form of unlawful disparate impact.

8. As Justice Thurgood Marshall put: "Even if the right to earn a living does not include the right to work for the government, it is settled that because of the importance of the interest involved," the courts must "always carefully look[] at the reasons asserted for depriving a government employee of his job." *Ma. Bd. of Retirement v. Murgia*, 427 U.S. 307, 323 (1976) (Marshall, J., dissenting). It remains true that "[w]hile depriving any government employee of his job is a significant deprivation, it is particularly burdensome when the person deprived is an older citizen[,]" because for the older employees, "[t]he lack of work is not only economically damaging, but emotionally and physically draining. Deprived of his status in the community and of the opportunity for meaningful activity, fearful of becoming dependent on others for his support, and

lonely in his new-found isolation, the involuntarily retired person is susceptible to physical and emotional ailments as a direct consequence of his enforced idleness…an older person deprived of his job by the government loses not only his right to earn a living, but, too often, his health as well, in sad contradiction of Browning's promise: 'The best is yet to be,/The last of life, for which the first was made.'" *Id.* (citing to R. Browning, Rabbi Ben Ezra, stanza). Congress enacted ADEA to protect against such societal harm.

9.      Plaintiffs, a group of talented and dedicated older workers that had committed their lives to honorably serving in the foreign service, represent an indispensable source of productivity and experience which the foreign service is ill-afford to lose. Plaintiffs have spent critical years of their lives serving the American people domestically and overseas, choosing to be away from their loved ones, abandoning alternative and more lucrative careers, and the comforts of life in America, to work in fragile and war-torn areas, in the name of public service.

10.      The campaign to exclude Plaintiffs from federal service because of their age and by publicly disparaging their age, with no fair and full consideration of their merits, as well as the Defendants' ongoing discriminatory rehiring practice have not only financially harmed Plaintiffs as current and future employees but are intended to permanently tarnish Plaintiffs' careers, and the Court must end this unlawful practice.

## **BACKGROUND**

11.      The Federal Government is prohibited from discriminating in the terms and conditions of federal employment based on the fact that an employee is over the age of 40 years old.

12. USAID is an independent agency, led by an administrator serving under the guidance of the Secretary of State. *See* 22 U.S.C. §§ 2384, 6592, and subject to the same requirement.

13. Since 1961, USAID employees have carried out statutory and program-specific congressional mandates under eleven presidential administrations of both political parties.

14. USAID programs supported United States' interests by providing assistance to countries suffering from disease, famine, natural disasters, poverty, or other humanitarian needs.

15. To carry out this mission, USAID has relied on its foreign service workforce which is primarily made up of workers over the age of 40, by some estimates, more than 89 percent.

16. On February 23, 2025, Defendants, through USAID's website, informed Plaintiffs, and all other USAID employees that they are placed on involuntary administrative leave while USAID implements a reduction in force.[2]

17. In March 2025, USAID terminated its foreign service officers *en masse*, with neither an individualized assessment of their performance nor taking any meaningful steps to ensure the RIF did not disparately impact older workers.

18. Defendants used seniority as a proxy for age discrimination, mislabeled older workers, including Plaintiffs', work as criminally wasteful and performed only in the service of the previous Democratic administrations, to justify terminating senior employees who tended to be older.

---

[2] Placing a mass of workers on involuntary administrative leave with pay, appears antithetical to a valid RIF or to any concept of efficiency or cost savings. And it harms elder workers the most. In the instant case, months of administrative leave impaired older workers' job skills and their potential marketability. The Agency has never justified this conduct, which cost taxpayers millions of dollars. It appears that the conduct, as it related to older workers was specifically designed to induce their quitting, and as noted, the Agency coupled it with a fictitious buyout, the so called "Fork in the Road," that asked employees to agree to resign and yet be paid for services they were not performing for months.

19.     The RIF was targeted at employees whose work experience and seniority could have been traced to collaboration with previous administrations—stretching back decades—and as such, operated as the functional equivalent of an overt age-based decision itself.

20.     The Defendants' discriminatory intent and behavior to target older employees is exhibited in public statements that were designed to convince the public that a younger workforce for the Federal Government meant a better workforce.

21.     The Defendants' discriminatory intent is also exhibited in willful and reckless disregard for complying with pre-termination legal safeguard for older workers, safeguards that would have ensured older workers such as Plaintiffs were not severely harmed.

22.     Plaintiffs seek to remedy that harm by seeking all damages that are available under the Age Discrimination in Employment Act of 1967, as codified, 29 U.S.C. §§ 621-634 (amended in 1984, 1990, and by the Age Discrimination in Employment Amendments of 1986, Pub. L. No. 92-592, the Civil Rights Act of 1991, Pub. L. No. 102-166).

## **JURISDICTION**

23.     This Court exercises subject matter jurisdiction pursuant to 29 U.S. Code § 633a(c), *Nondiscrimination on account of age in Federal Government employment*, 28 U.S.C. § 1331, *Federal question*; 28 U.S.C. §§ 2201-02, the Declaratory Judgment Act; 5 U.S.C. § 551 *et seq.*, the Administrative Procedure Act; and 28 U.S.C. § 1361, *Action to compel an officer of the United States to perform his duty*.

24.     All Plaintiffs notified the U.S. Equal Employment Opportunity Commission (EEOC) on October 21, 2025, of their intent to bypass the administrative claim process at the EEOC and exercise their right to directly file a lawsuit under ADEA.

25.    On December 16, 2025, EEOC confirmed receipt of Plaintiffs' Notice of Intent to Sue and notified Plaintiffs that they may file under the ADEA at any time after thirty days from the date of filing the notice of intent to sue.

26.    Permissive joinder of Plaintiffs is appropriate pursuant to Fed. R. Civ. P. 20(a)(1) as Plaintiffs jointly assert rights to relief, with respect to the same series of occurrences, because questions of law and fact arising in this action are common to all Plaintiffs.

**VENUE**

27.    Venue is proper in this Court under 28 U.S.C. § 1391(b) and (c), *Venue generally*.

**THE PARTIES**[3]

28.    Plaintiffs were USAID employees.

29.    Defendant USAID employed Plaintiffs as employees after appointing them to foreign service.

30.    Plaintiff Bradley is currently 54 years old and residing in Minneapolis, Minnesota. At the time of the relevant events, Plaintiff Bradley worked as a Foreign Service Agricultural Development Backstop Coordinator in USAID's Bureau for Resilience, Environment, and Food Security. Plaintiff Bradley first joined USAID in 2003 as a United States Personal Services Contractor, then joined the Foreign Service in 2009 and worked at USAID until his termination through a pretextual RIF in 2025. Plaintiff Bradley's responsibilities included being the technical lead for foreign service agriculture officer staffing, professional development, assignments, and new employee orientation for Backstop 10, among others. During his tenure with USAID, Plaintiff Bradley received numerous awards, and Plaintiff Bradley's performance appraisals for the last

---

[3] Substantive discussion of allegations common to all Plaintiffs begins at page 88, after brief statements about each named Plaintiff.

year were satisfactory. USAID placed Plaintiff Bradley on administrative leave on February 23, 2025, and terminated Plaintiff Bradley from USAID on July 2, 2025.

31.     Plaintiff Tegenfeldt is currently 53 years old and residing in Barboursville, Virginia. At the time of the relevant events, Plaintiff Tegenfeldt worked as the Director of USAID's General Development Office (GDO) in New Delhi, India. Plaintiff Tegenfeldt joined USAID in 2009 and worked as a Foreign Service Officer at USAID until his termination through a pretextual RIF in 2025. Plaintiff Tegenfeldt's responsibilities in his included directing all operations for an office of 16 people and an annual budget of over $30 million; representing USAID in negotiations with Indian government counterparts at national and sub-national levels, providing strategic guidance on technical areas represented by GDO (Environmental Conservation, Water and Sanitation, Education, and Tibetan Refugees), among others. During his tenure with USAID, Plaintiff Tegenfeldt received numerous meritorious/superior honor awards, and Plaintiff Tegenfeldt's performance appraisals for the last year were satisfactory. USAID placed Plaintiff Tegenfeldt on administrative leave on February 23, 2025, and terminated Plaintiff Tegenfeldt from USAID on July 1, 2025.

32.     Plaintiff Capellan is currently 44 years old and residing in Haymarket, Virginia. At the time of the relevant events, Plaintiff Capellan worked as a Supervisory Contracting and Agreement Officer in USAID's Office of Acquisition and Assistance in USAID/Mexico. Plaintiff Capellan joined USAID in 2012 and worked at USAID until her termination through a pretextual RIF in 2025. Plaintiff Capellan's responsibilities included managing and overseeing $260M of contract and grant mechanisms delivering foreign assistance activities. During her tenure with USAID, Plaintiff Capellan received numerous awards, and Plaintiff Capellan's performance appraisals for the last year were satisfactory. USAID placed Plaintiff Capellan on administrative

11

leave from February 3 to 14, 2025, and terminated Plaintiff Capellan from USAID on September 2, 2025.

33.    Plaintiff McKenney is currently 52 years old and residing in Media, Pennsylvania. At the time of the relevant events, Plaintiff McKenney worked as a Democracy and Governance Officer in USAID's Office of Latin America and Caribbean in Washington D.C. Plaintiff McKenney joined USAID in 2013 and worked at USAID until his termination through a pretextual RIF in 2025. Plaintiff McKenney's responsibilities included overseeing development programs in education, health, and economic growth. During his tenure with USAID, Plaintiff McKenney received several merit-based awards for outstanding contributions to international aid initiatives, and Plaintiff McKenney's performance appraisals for the last year were satisfactory. USAID placed Plaintiff McKenney on administrative leave in January 2025 and terminated Plaintiff McKenney from USAID on July 1, 2025.

34.    Plaintiff Mehmood is currently 53 years old and residing in Richardson, Texas. At the time of the relevant events, Plaintiff Mehmood was attending French language training at the Department of State's Foreign Service Institute for his onward posting as a Controller in USAID's Office of Financial Management in Rabat, Morocco. Plaintiff Mehmood joined USAID in 2009 and worked at USAID until his termination through a pretextual RIF in 2025. Plaintiff Mehmood's responsibilities included overseeing the Accounting, Payments, and Financial Analysis sections in the Office of Financial Management. During his tenure with USAID, Plaintiff Mehmood received numerous merit-based, and Plaintiff Mehmood's performance appraisals for the last year were satisfactory. USAID placed Plaintiff Mehmood on administrative leave on February 23, 205, and terminated Plaintiff Mehmood from USAID on September 2, 2025.[4]

---

[4] USAID notified Plaintiff Mehmood that he was an essential employee more than ten calendar days after USAID placed Plaintiff Mehmood on administrative leave.

35. Plaintiff Meyer is currently 53 years old and residing in Washington D.C. At the time of the relevant events, Plaintiff Meyer worked as the Environment Officer Director, oversaw USAID/Pacific Islands' efforts to advance USG environment objectives and USAID's Environment Strategy in nine Pacific Island countries. Plaintiff Meyer joined USAID in 2011 and worked at USAID until his termination through a pretextual RIF in 2025. During his tenure with USAID, Plaintiff Meyer received numerous honor awards and Plaintiff Meyer's performance appraisals for the last year were satisfactory. USAID placed Plaintiff Meyer on administrative on February 23, 2025, and terminated Plaintiff Meyer from USAID on September 2, 2025.

36. Plaintiff Linder is currently 51 years old and residing in Waldorf, Maryland. At the time of the relevant events, Plaintiff Linder worked as a Supervisory Democracy Officer and Atrocity Prevention expert in USAID's Office of Conflict & Violence Prevention (CVP) in Washington, D.C. Plaintiff Linder joined USAID in 2006 and worked at USAID until her termination through a pretextual RIF in 2025. During her tenure with USAID, Plaintiff Linder received more than a dozen merit-based awards and Plaintiff Linder's performance appraisals for the last year were Satisfactory. USAID placed Plaintiff Linder on administrative leave on February 7, 2025, and terminated Plaintiff Linder from USAID on July 1, 2025.

37. Plaintiff Norikane is currently 50 years old and residing in Bainbridge Island, Washington. At the time of the relevant events, Plaintiff Adam Norikane worked as a Supervisory General Development Officer in USAID's Office of General Development in Albania. Plaintiff Norikane joined USAID in 2010 and worked at USAID until his termination through a pretextual RIF in 2025. Plaintiff Norikane's responsibilities included managing all grants and contracts, serving as the principal technical advisor to the USAID Country Representative, providing technical advice to government counterparts. During his tenure with USAID, Plaintiff Norikane

received numerous honor awards and Plaintiff Norikane's performance appraisals for the last year were satisfactory. USAID placed Plaintiff Norikane on administrative leave on February 23, 2025, and terminated Plaintiff Norikane from USAID on September 2, 2025.

38.    Plaintiff Normand is currently 47 years old and residing in Dayton, Ohio. At the time of the relevant events, Plaintiff Normand worked as a Regional Environment Adviser in USAID's overseas regional mission in El Salvador. Plaintiff Normand joined USAID in 2012 and worked at USAID until her termination through a pretextual RIF in 2025. Plaintiff Normand's responsibilities included overseeing the legal application of USAID's legal requirements related to environmental and social safeguards, for each of the over 300 USAID-funded programs throughout the Central America and Mexico region). During her tenure with USAID, Plaintiff Normand received numerous merit-based awards for her outstanding performance, and Plaintiff Normand performance appraisals for the last year were satisfactory. USAID placed Plaintiff Normand on administrative leave first on February 7, then again on February 23, 2025, and terminated Plaintiff Normand from USAID on September 2, 2025.

39.    Plaintiff Oberlander is currently 44 years old and residing in Tumwater, Washington. At the time of the relevant events, Plaintiff Oberlander worked as a Supervisory Humanitarian Assistance Officer in USAID's Office of Humanitarian Assistance in Ethiopia. Plaintiff Oberlander joined USAID in 2015 and worked at USAID until her termination through a pretextual RIF in 2025. Plaintiff Oberlander's responsibilities included overseeing the provision of life-saving humanitarian assistance and coordinating assistance to ensure alignment with U.S. foreign policy interests and other donor contributions to reduce chronic need. During her tenure with USAID, Plaintiff Oberlander received numerous honor awards, and Plaintiff Oberlander performance appraisals for the last year were satisfactory. USAID placed Plaintiff Oberlander on

administrative leave on February 21, 2025, and terminated Plaintiff Oberlander from USAID on July 1, 2025.

40. Plaintiff Obester is currently 55 years old and residing in Palm Springs, CA. At the time of the relevant events, Plaintiff Obester worked as Supervisory Program Officer for Staff Care Services in USAID's Office of Human Capital and Talent Management in Washington D.C. Plaintiff Obester joined USAID in 2008 and worked at USAID until her termination through a pretextual RIF in 2025. Plaintiff Obester's responsibilities included, among others, overseeing and managing USAID's contracted health and wellness services to support all 14,000 Agency staff and their families in over 80 countries worldwide. During her tenure with USAID, Plaintiff Obester received numerous merit-based awards and promotions and Plaintiff Obester's performance appraisals for the last year were satisfactory. USAID placed Plaintiff Obester on administrative leave on February 23, 2025, and terminated Plaintiff Obester from USAID on July 1, 2025.

41. Plaintiff Owolabi is currently 52 years old and residing in Atlanta, Georgia. At the time of the relevant events, Plaintiff Owolabi worked as a Congressional Liaison Officer in USAID's Office of Legislative Affairs in USAID/Washington. Plaintiff Owolabi joined USAID in 2011 and worked at USAID until her termination through a pretextual RIF in 2025. Plaintiff Owolabi's responsibilities included integrating USAID policy goals with organizational priorities, cultivating relationships with elected officials, and advancing the Agency's positions through hearings, briefings, and coalition-building. During her tenure with USAID, Plaintiff Owolabi received numerous merit and performance-based awards and Plaintiff Owolabi's performance appraisals for the last years were satisfactory. USAID placed Plaintiff Owolabi on administrative leave on February 1, 2025, and terminated Plaintiff Owolabi from USAID on July 1, 2025.

42.     Plaintiff Park is currently 44 years old and residing in Monroe Township, New Jersey. At the time of the relevant events, Plaintiff Park worked as a Contracting Officer in USAID's Office of Acquisition and Assistance (OAA) in Uganda. Plaintiff Park joined USAID in 2020 and worked at USAID until his termination through a pretextual RIF in 2025. Plaintiff Parks' responsibilities included overseeing approximately $1 billion in global health programs and funding for the Health Office in Uganda. During his tenure with USAID, Plaintiff Park received multiple mission and performance awards, and Plaintiff Park's performance appraisals for the last year were satisfactory. USAID placed Plaintiff Park on administrative leave on February 23, 2025, and terminated Plaintiff Park from USAID on September 2, 2025

43.     Plaintiff Pearson is currently 46 years old and residing in Green Cove Springs, Florida. At the time of the relevant events, Plaintiff Pearson worked as a Supervisory Contracting Officer in USAID's Ukraine Mission in Kyiv, Ukraine. Plaintiff Pearson joined USAID in 2010 and worked at USAID until his termination through a pretextual RIF in 2025. Plaintiff Pearson's responsibilities included, among others, having overall responsibility for managing Ukraine's portfolio of contracts and grants valued at approximately $4.3 billion and acting as the Mission's subject matter expert on all contractual issues. During his tenure with USAID, Plaintiff Pearson received numerous awards, and Plaintiff Pearson's performance appraisals for the last year were satisfactory. USAID never placed Plaintiff Pearson on administrative leave but terminated Plaintiff Pearson from USAID on September 2, 2025.

44.     Plaintiff Stonehill is currently 45 years old and residing in Silver Spring, MD. At the time of the relevant events, Plaintiff Stonehill worked as a Supervisory Natural Resources Officer at USAID's Regional Development Mission for Asia (RDMA) in Bangkok, Thailand. Plaintiff Stonehill joined USAID in 2009 and worked at USAID until his termination through a

16

pretextual RIF in 2025. Plaintiff Stonehill's responsibilities included, among others, directing U.S. contributions to regional power trade initiatives such as the ASEAN Power Grid and representing the U.S. Government in cultivating and maintaining strategic relationships with ASEAN institutions. During his tenure with USAID, Plaintiff Stonehill received numerous merit-based awards, and Plaintiff Stonehill's performance appraisal for the last year was satisfactory. USAID placed Plaintiff Stonehill on administrative leave on February 23, 2025, and terminated Plaintiff Stonehill from USAID on September 2, 2025.

45.     Plaintiff Strine is currently 59 years old and residing in Reno, Nevada. At the time of the relevant events, Plaintiff Strine worked as a Deputy Regional Executive Officer in USAID's Executive Office in Tbilisi, Georgia. Plaintiff Strine joined USAID in 2010 and worked at USAID until his termination through a pretextual RIF in 2025. Plaintiff Strine's responsibilities included advising the Mission Directors of three USAID Missions on administrative matters. During his tenure with USAID, Plaintiff Strine received numerous awards, and Plaintiff Strine's performance appraisals for the last year were satisfactory. USAID placed Plaintiff Strine on administrative leave on February 24, 2025, and terminated Plaintiff Strine from USAID on September 2, 2025.

46.     Plaintiff Taylor is currently 46 years old and residing in Mount Pleasant, South Carolina. At the time of the relevant events, Plaintiff Taylor worked as the Director of Education at USAID/Zambia Mission in Lusaka, Zambia. Plaintiff Taylor joined USAID in 2010 and worked at USAID until her termination through a pretextual RIF in 2025. Plaintiff Taylor's responsibilities included leading oversight of USG strategic education investments in Zambia and representing the USG to the Government of Zambia. During her tenure with USAID, Plaintiff Taylor received numerous performance awards and Plaintiff Taylor's performance appraisals for the last year were

satisfactory. USAID placed Plaintiff Taylor on administrative leave on February 25, 2025, and terminated Plaintiff Taylor from USAID on September 2, 2025.

47.    Plaintiff Teske is currently 55 years old and residing in Orlando, Florida. At the time of the relevant events, Plaintiff Teske worked as the Supervisory Executive Officer in USAID's Executive Office in Nigeria. Plaintiff Teske joined USAID in 2009 and worked at USAID until his termination through a pretextual RIF in 2025. Plaintiff Teske's responsibilities included supervising a 44-person Office that provided operations support and mission-critical services for more than 215 staff exercising Contracting Officer authority. During his tenure with USAID, Plaintiff Teske received numerous awards, and Plaintiff Teske's performance appraisals for the last year were satisfactory. USAID identified Plaintiff Teske as core/essential staff in Nigeria and, with his repatriation to the United States on July 8, 2025, placed him on administrative leave, and terminated Plaintiff Teske from USAID on September 2, 2025.

48.    Plaintiff Melvin is currently 49 years old and residing in Newtown, Pennsylvania. At the time of the relevant events, Plaintiff Melvin worked as a Deputy Program Director in USAID's Program Office in USAID/Sri Lanka and Maldives. Plaintiff Melvin joined USAID in 2011 and worked at USAID until his termination through a pretextual RIF in 2025. Plaintiff Melvin's responsibilities included managing program officers which oversaw the strategy development, program budgets, outreach and communications, project design, donor coordination, monitoring, and evaluation. During his tenure with USAID, Plaintiff Melvin received numerous merit-based awards, and Plaintiff Melvins' performance appraisals for the last year were satisfactory. USAID placed Plaintiff Melvin on administrative leave in February 2025 and terminated Plaintiff Melvin from USAID on September 2, 2026.

49.     Plaintiff Wann is currently 45 years old and residing in Phoenix, Arizona. At the time of the relevant events, Plaintiff Wann worked as a supervisory democracy officer/foreign service officer in USAID's governance, human rights, and citizen security office in Mexico. Plaintiff Wann joined USAID in 2010 and worked at USAID until her termination through a pretextual RIF in 2025. Plaintiff Wann's responsibilities included leading a $150 million justice and security portfolio and coordinating U.S.-Mexico security and human rights policy. During her tenure with USAID, Plaintiff Wann received numerous awards, and Plaintiff Wann's performance appraisals for the last year were satisfactory. USAID placed Plaintiff Wann on administrative on February, 7 2025 and terminated Plaintiff Wann from USAID on September 2, 2026.

50.     Plaintiff Warfield is currently 49 years old and residing in Felton, CA. At the time of the relevant events, Plaintiff Warfield worked as a Program Unit Lead in USAID's Bureau for Global Health, Office of Infectious Diseases, Emerging Threats Division. Plaintiff Warfield joined USAID in 2008 and worked at USAID until her termination through a pretextual RIF in 2025. Plaintiff Warfield's responsibilities included directly supervising seven employees and leading the Division's Budget, Data Analysis, and Monitoring and Evaluation functions for USAID's Global Health Security Program. During her tenure with USAID, Plaintiff Warfield received numerous awards, and Plaintiff Warfield's performance appraisals for the last year were satisfactory. USAID placed Plaintiff Warfield on administrative leave on February 23, 2025, and terminated Plaintiff Warfield from USAID on July 1, 2025.

51.     Plaintiff Warren is currently 58 years old and residing in Fredericksburg, Virginia. At the time of the relevant events, Plaintiff Warren worked as a Supervisory Program Office Director in USAID's Mali Program Office. Plaintiff Warren joined USAID in 2008 and worked at USAID until her termination through a pretextual RIF in 2025. Plaintiff Warrens' responsibilities

19

included oversight of USAID development programs and advising on program policy, budgeting formulation and reporting, congressional inquiries, and statutory compliance. During her tenure with USAID, Plaintiff Warren received several awards, and Plaintiff Warren's performance appraisals for the last year satisfactory. USAID placed Plaintiff Warren on administrative leave on March 28, 2025, and terminated Plaintiff Warren from USAID on July 1, 2025.

52.    Plaintiff Webb is currently 52 years old and residing in Saginaw, Michigan. At the time of the relevant events, Plaintiff Webb worked as the Health Team Lead based at the U.S. Consulate General Cape Town as part of USAID's Bilateral Health Office at the USAID/Southern Africa Mission. Plaintiff Webb joined USAID in 2014 and worked at USAID until her termination through a pretextual RIF in 2025. Plaintiff Webb's responsibilities included, among others, representing USAID in engagements with South Africa's Western and Eastern Cape Provinces, and leading the Cape Town team and overseeing all health activities in the Consulate's area of responsibility. During her tenure with USAID, Plaintiff Webb received numerous merit-based awards, and Plaintiff Webb's performance appraisals for the last year were satisfactory. USAID placed Plaintiff Webb on administrative leave on February 24, 2025, and terminated Plaintiff Webb from USAID on September 2, 2025.

53.    Plaintiff Rich-Orloff is currently 53 years old and residing in Atlantic City, New Jersey. At the time of the relevant events, Plaintiff Rich-Orloff worked as a Deputy Education Office Director in USAID's Office of Education in Mission USAID/Liberia. Plaintiff Rich-Orloff joined USAID in August 2020 and worked at USAID until her termination through a pretextual RIF in 2025. Plaintiff Rich-Orloff's responsibilities included, among others, working as the contracting Officer Representative (COR) of a $23M Education Systems Strengthening Activity (ESSA) in partnership with Liberian Ministry of Education and directing multi-stakeholder efforts

20

to improve education management information systems (EMIS), data analysis and accessibility, championing inclusive policy integration for early childhood and children with. During her tenure with USAID, Plaintiff Rich-Orloff received numerous awards, and Plaintiff Rich-Orloff's performance appraisals for the last year were satisfactory. USAID placed Plaintiff Rich-Orloff on administrative leave on February 23, 2025, and terminated Plaintiff Rich-Orloff from USAID on September 2, 2025.

54.     Plaintiff West is currently 48 years old and residing in Chicago, Illinois. At the time of the relevant events, Plaintiff West worked as a Supervisory Contracting Officer in USAID's Regional Office of Acquisition and Assistance in USAID/Southern Africa. Plaintiff West joined USAID in 2009 and worked at USAID until her termination through a pretextual RIF in 2025. Plaintiff West's responsibilities included serving as the deputy office director for the Regional Office of Acquisition and Assistance team. During her tenure with USAID, Plaintiff West received numerous honor awards, and Plaintiff West's performance appraisals for the last year were satisfactory. USAID placed Plaintiff West on administrative leave on February 24, 2025, and terminated Plaintiff West from USAID on July 1, 2025.

55.     Plaintiff King is currently 47 years old and residing in Seattle, Washington. At the time of the relevant events, Plaintiff King worked as Deputy Director in USAID's Office of Water Resources and Environment in USAID/Jordan. Plaintiff King joined USAID in 2010 and worked at USAID until her resignation in lieu of a pretextual RIF in 2025. Plaintiff King responsibilities included managing $120 million in annual funding spent to strengthen water infrastructure in Jordan. During her tenure with USAID, Plaintiff King received numerous awards, and Plaintiff King's performance appraisals for the last year were satisfactory. USAID placed Plaintiff King on

administrative leave on February 24, 2025, and Plaintiff King resigned in response to the RIF decision on June 28, 2025.

56.     Plaintiff Reeves is currently 52 years old and residing in Madison, Wisconsin. At the time of the relevant events, Plaintiff Reeves worked as a Deputy Office Director in USAID's Office of Environment in the Kenya and East Africa Mission. Plaintiff Reeves joined USAID in 2009 and worked at USAID until his termination through a pretextual RIF in 2025. Plaintiff Reeves responsibilities included leading the development and implementation of USAID's East Africa environment program and representing USAID in regional environmental organizations. During his tenure with USAID, Plaintiff Reeves received multiple awards for meritorious service and performance awards, and Plaintiff Reeves performance appraisals for the last year were satisfactory. USAID placed Plaintiff Reeves on administrative leave on January 23, 2025, and terminated Plaintiff Reeves from USAID on July 2nd, 2025.

57.     Plaintiff McNeil is currently 48 years old and residing in San Antonio, Texas. At the time of the relevant events, Plaintiff McNeil was preparing for her new assignment as the Director of USAID's Amazon Regional and Peru Bilateral Environment Office in USAID/Peru. Plaintiff McNeil joined USAID in 2009 and worked at USAID until her termination through a pretextual RIF in 2025. During her tenure with USAID, Plaintiff McNeil received multiple awards, and Plaintiff McNeil's performance appraisals for the last year were satisfactory. USAID placed Plaintiff McNeil on administrative leave February 23, 2025, and terminated Plaintiff McNeil from USAID on July 1, 2025.

58.     Plaintiff Slotnick is currently 49 years old and residing in Alexandria, Virginia. At the time of the relevant events, Plaintiff Slotnick worked as a Health Officer and Senior Advisor in USAID's Office of Health and Education in Guatemala. Plaintiff Slotnick joined USAID in

22

2008 and worked at USAID until her termination through a pretextual RIF in 2025. Plaintiff Slotnick's responsibilities included leading technical and operational initiatives and guiding human resource, procurement, program design, budget processes, and strategic planning. During her tenure with USAID, Plaintiff Slotnick received numerous awards, and Plaintiff Slotnick's performance appraisals for the last year were satisfactory. USAID placed Plaintiff Slotnick on administrative leave on February 23, 2025 and terminated Plaintiff Slotnick from USAID on July 1, 2025.

59.     Plaintiff Serifovic is currently 53 years old and residing in El Paso, Texas. At the time of the relevant events, Plaintiff Serifovic worked as a Supervisory Contracting Officer/Director of the Office of Acquisition and Assistance in USAID Mission to Sri Lanka and Maldives. Plaintiff Serifovic joined USAID in 2013 and worked as a Foreign Service Officer at USAID until his termination through a pretextual RIF in 2025. Plaintiff Serifovic's responsibilities included oversight of the mission's acquisition and assistance portfolio, ensuring legally sound, timely, and accountable contracting that supports development programs while managing risk, compliance, and staff performance. During his tenure with USAID, Plaintiff Serifovic received numerous awards, and Plaintiff Serifovic's performance appraisals for the last year were satisfactory. USAID placed Plaintiff Serifovic on administrative leave on February 4, 2025, and terminated Plaintiff Serifovic from USAID on September 2, 2025.

60.     Plaintiff Zvinakis is currently 44 years old and residing in La Jolla, California. At the time of the relevant events, Plaintiff Zvinakis worked as the Deputy Director of USAID's Economic Growth Office in Senegal. Plaintiff Zvinakis joined USAID in 2012 and worked as a Foreign Service Office at USAID until his termination through a pretextual RIF in 2025. Plaintiff Zvinakis' responsibilities included oversight of a $200 million Economic Growth Office portfolio

covering water resources, biodiversity, agriculture, and climate resilience across Senegal. During his tenure with USAID, Plaintiff Zvinakis received numerous awards, and Plaintiff Zvinakis' performance appraisals for the last year were satisfactory. USAID terminated Plaintiff Zvinakis from USAID on September 2, 2025.

61.    Plaintiff Thomason is currently 51 years old and residing in Goodyear, Arizona. At the time of the relevant events, Plaintiff Thomason worked as a Supervisory Program Officer in USAID's Office of Program in Conakry, Guinea. Plaintiff Thomason joined USAID in 2009 and worked at USAID until her termination through a pretextual RIF in 2025. Plaintiff Thomason's responsibilities included supervising the program office staff, managing the USAID Mission's budget, and overseeing the development and outreach unit, among others.  During her tenure with USAID, Plaintiff Thomason received numerous awards, and Plaintiff Thomason's performance appraisals for the last year were satisfactory. USAID placed Plaintiff Thomason on administrative leave on February 23, 2025, and terminated Plaintiff Thomason from USAID on September 2, 2025.

62.    Plaintiff Tilout is currently 46 years old and residing in Rochester, New York. At the time of the relevant events, Plaintiff Tilout worked as a Deputy Health Director in USAID's Bilateral Health Office in Pretoria, South Africa. Plaintiff Tilout joined USAID in 2011 and worked at USAID until her termination through a pretextual RIF in 2025. Plaintiff Tilout's responsibilities included support in the oversight and management of the $256 million annual portfolio, and leading the Health Systems Strengthening teams. During her tenure with USAID, Plaintiff Tilout received multiple awards, and Plaintiff Tilout's performance appraisals for the last year were satisfactory. USAID placed Plaintiff Tilout on administrative leave on February 7, 2025, and terminated Plaintiff Tilout from USAID on September 2, 2025.

63.     Plaintiff Velez is currently 49 years old and residing in Brookeville, Maryland. At the time of the relevant events, Plaintiff Velez worked as Deputy Lead for the Green Cities Division within USAID/Washington's Bureau for Resilience, Environment and Food Security. Plaintiff Velez joined USAID in 2009 and worked at USAID until her termination through a pretextual RIF in 2025. Plaintiff Velez responsibilities included expanding Agency programming for sustainable urban development in alignment with congressional appropriations and legislative priorities, focusing on reducing ocean plastic pollution and improving air quality. During her tenure with USAID, Plaintiff Velez received numerous awards, and Plaintiff Velez's performance appraisals for the last year were satisfactory. USAID placed Plaintiff Velez on administrative leave from February 7, 2025, until April 7, 2025, and terminated Plaintiff Velez from USAID on July 1, 2025.

64.     Plaintiff Wallick is currently 49 years old and residing in Arlington, Virginia. At the time of the relevant events, Plaintiff Wallick worked as a Health Development Officer in USAID's Office of Public Health and Education in the USAID Cambodia Mission. Plaintiff Wallick joined USAID in 2013 and worked at USAID until her termination through a pretextual RIF in 2025. Plaintiff Wallick's responsibilities included overseeing USAID's health and social sector programs, managing staff, and representing USAID with host government officials.  During her time with U.S. Embassy Cambodia, Plaintiff Wallick received several awards, and Plaintiff Wallick's performance appraisals for the last year were satisfactory. USAID placed Plaintiff Wallick on administrative leave on February 23, 2025, and terminated Plaintiff Wallick from USAID on September 2, 2025.

65.     Plaintiff Larsen is currently 56 years old and residing in Arvada, Colorado. At the time of the relevant events, Plaintiff Larsen worked as a Regional Contracting and Agreement

Officer in USAID's Kosovo Regional Office of Acquisition and Assistance in Pristina, Kosovo. Plaintiff Larsen joined USAID in 2015 and worked at USAID until her termination through a pretextual RIF in 2025. Plaintiff Larsen's responsibilities include portfolio management for more than 30 active development programs and providing advisory support to the Mission Director as well as regional leadership to ensure compliance with applicable U.S. laws, regulations, and administration policies. Plaintiff Larsen's performance appraisals for the last year were satisfactory. USAID placed Plaintiff Larsen on administrative leave on February 25, 2025, and terminated Plaintiff Larsen from USAID on September 2, 2025.

66.    Plaintiff Wittnebel is currently 61 years old and residing in Burnt Hills, New York. At the time of the relevant events, Plaintiff Wittnebel worked as a Deputy Economic Growth Office Director in USAID's Office of Economic Growth in Pristina, Kosovo. Plaintiff Wittnebel joined USAID in 2009 and worked at USAID until his termination through a pretextual RIF in 2025. Plaintiff Wittnebel's responsibilities included leading the Cyber Security and Energy Team, managing office communications with USAID/Washington, and representing the U.S. government at high level events. During his tenure with USAID, Plaintiff Wittnebel received numerous awards, and Plaintiff Wittnebel's performance appraisals for the last year were satisfactory. USAID placed Plaintiff Wittnebel on administrative leave on February 25, 2025, and terminated Plaintiff Wittnebel from USAID on September 2, 2025.

67.    Plaintiff Andre-Guy Soh is currently 54 years old and residing in Chapel Hill, North Carolina. At the time of the relevant events, Plaintiff Andre-Guy Soh worked as a Contracting Officer in USAID's Office of Acquisition and Assistance in Guatemala. Plaintiff Soh joined USAID in 2011 and worked as at USAID until his termination through a pretextual RIF in 2025. Plaintiff Soh's responsibilities included preparing solicitations for the provision of services and

technical projects on behalf of USAID, led proposal evaluations, negotiated and drafted final contracts for the provision of services and administered already signed contracts. During his tenure with USAID, Plaintiff Soh received numerous awards, and Plaintiff Soh performance appraisals for the last year were satisfactory. USAID placed Plaintiff Soh on administrative leave on February 10, 2025, and terminated Plaintiff Soh from USAID on September 2, 2025.

68.	Plaintiff Jeffrey Zahka is currently 54 years old and residing in Brooklyn, New York. At the time of the relevant events, Plaintiff Jeffrey Zahka worked as a Deputy Office Director in USAID's Office of Economic Growth in USAID/Bangladesh. Plaintiff Zahka joined USAID in 2008 and worked at USAID until his termination through a pretextual RIF in 2025. Plaintiff Zahka's responsibilities included supervising the administration of activities designed to improve the standard of living among Bangladeshis and facilitate economic growth throughout the country. During his tenure with USAID, Plaintiff Zahka received several awards, and Plaintiff Zahka's performance appraisals for the last year were satisfactory. USAID placed Plaintiff Zahka on administrative leave on February 23, 2025, and terminated Plaintiff Zahka from USAID on September 2, 2025.

69.	Plaintiff Andrew Parks is currently 48 years old and residing in Oak Park, Illinois. At the time of the relevant events, Plaintiff Parks worked as a Congressional Liaison Officer in USAID's Office of Legislative Affairs in Washington. Plaintiff Parks joined USAID in 2013 and worked at USAID until his termination through a pretextual RIF in 2025. Plaintiff Parks' responsibilities included representing USAID to members of Congress and working closely with Congress and senior leaders across the interagency to fulfill USAID's legislative and budgetary objectives. During his tenure with USAID, Plaintiff Parks received numerous awards, and Plaintiff Parks' performance appraisals for the last year were satisfactory. USAID placed Plaintiff Parks on

administrative leave on February 4, 2025, and terminated Plaintiff Parks from USAID on July 1, 2025.

70.    Plaintiff Toness is currently 55 years old and resides in Kensington, Maryland. At the time of the relevant events, Plaintiff Toness served as a Supervisory General Development Officer, assigned as Division Chief for Resilient Livelihoods and Markets in USAID's Center for Resilience, within the Bureau for Resilience, Environment and Food Security, based in Washington, D.C. Plaintiff Toness joined USAID in 2010 and worked at USAID until her termination through a pretextual RIF on July 1, 2025. Plaintiff Toness's responsibilities included leading Agency-wide efforts to institutionalize resilience in policy, programming, measurement, and providing strategic leadership. During her tenure with USAID, Plaintiff Toness received numerous awards, and Plaintiff Toness's performance appraisals for the last year were satisfactory. USAID placed Plaintiff Toness on administrative leave on February 23, 2025, and formally terminated her from the Agency on July 1, 2025.

71.    Plaintiff Gonzalez is currently 44 years old and residing in Mahopac, New York. At the time of the relevant events, Plaintiff Gonzalez worked as the Director of USAID's Office of Sustainable Environment and Economic Development in the Dominican Republic and the Caribbean. Plaintiff Gonzalez joined USAID in 2016 and worked as at USAID until his termination through a pretextual RIF in 2025. Plaintiff Gonzalez's responsibilities included managing an extended international team of 25 people and representing the US Government in bilateral meetings with the Government of the Dominican Republic. During his tenure with USAID, Plaintiff Gonzalez received numerous awards, and Plaintiff Gonzalez's performance appraisals for the last year were satisfactory. USAID placed Plaintiff Gonzalez on administrative leave on February 7, 2025, and terminated Plaintiff Gonzalez from USAID on September 2, 2025.

28

72.     Plaintiff Zinbo is currently 57 years old and residing in Washington, D.C. At the time of the relevant events, Plaintiff Zinbo worked as the Director of the Office of Governance and Vulnerable Populations in USAID's Sri Lanka and Maldives Mission. Plaintiff Zinbo joined USAID in 2008 and worked as at USAID until her termination through a pretextual RIF in 2025. Plaintiff Zinbo's responsibilities included leading governance, elections, anti-corruption, justice, civil society, media, and peacebuilding programming and advising USAID Mission and U.S. Embassy Front Offices. During her tenure with USAID, Plaintiff Zinbo received numerous awards, and Plaintiff Zinbo's performance appraisals for the last year were satisfactory. USAID placed Plaintiff Zinbo on administrative leave on February 25, 2025, and terminated Plaintiff Zinbo from USAID on July 1, 2025.

73.     Plaintiff Baqai is currently 42 years old and residing in Jacksonville, Florida. At the time of the relevant events, Plaintiff Baqai worked as Director of Economic Growth in USAID's Office of Tunis, Tunisia. Plaintiff Baqai joined USAID in 2012 and worked as a Foreign Service Officer at USAID until her termination through a pretextual RIF in 2025. Plaintiff Baqai's responsibilities included leadership and oversight of a $75 million economic growth portfolio and representing USAID in high-level engagements with host government ministries and international donors. During her tenure with USAID, Plaintiff Baqai received numerous awards, and Plaintiff Baqai's performance appraisals were satisfactory. USAID placed Plaintiff Baqai on administrative leave on February 23, 2025, and terminated Plaintiff Baqai from USAID effective September 2, 2025.

74.     Plaintiff Andrews Bashan is currently 46 years old and residing in Kealakekua, Hawaii. At the time of the relevant events, Plaintiff Andrews Bashan had last served as the Deputy Director in USAID's Democracy, Rights, and Governance Office in Amman, Jordan. Plaintiff

Andrews Bashan joined USAID in 2009 and worked at USAID until her termination through a pretextual RIF in 2025. Plaintiff Andrews Bashan responsibilities included strategic oversight of a $270 million portfolio focused on democracy, human rights, and governance. During her tenure with USAID, Plaintiff Andrews Bashan received two numerous awards, and Plaintiff Andrews Bashan's performance appraisals for the last year were satisfactory. USAID placed Plaintiff Andrews Bashan on administrative leave on April 20, 2025, and terminated Plaintiff Andrews Bashan from USAID on July 1, 2026.

75.     Plaintiff Bash is currently 49 years old and residing in Fort Wayne, Indiana. At the time of the relevant events, Plaintiff Bash worked as a Controller/Director of Financial Management at USAID/Bangladesh. Plaintiff Bash joined USAID in 2012 and worked at USAID until her termination through a pretextual RIF in 2025. Plaintiff Bash's responsibilities included providing strategic and operational oversight of $400 million annually in U.S. Government resources and overseeing risk-based financial processes that support foreign policy objectives and ensure compliance with U.S. regulations. During her tenure with USAID, Plaintiff Bash received numerous awards, and Plaintiff Bash's performance appraisals for the last year were satisfactory. USAID placed Plaintiff Bash on administrative leave between from February 7, 2025, until March 6, 2025, and terminated Plaintiff Bash from USAID on September 2, 2025.

76.     Plaintiff Benjamin J. Schapiro is currently 43 years old and residing in Hilo, Hawaii. At the time of the relevant events, Plaintiff Schapiro worked as an Environment Officer and Office Director in USAID's Office of Sustainable Environment, Energy and Economic Development in Quito, Ecuador. Plaintiff Schapiro joined USAID in 2013 and worked at USAID until his termination through a pretextual RIF in 2025. Plaintiff Schapiro responsibilities included overseeing a $90 million portfolio of environment, renewable energy, and economic development

30

programs across Ecuador. During his tenure with USAID, Plaintiff Schapiro received numerous awards, and Plaintiff Schapiro's performance appraisals for the last year were satisfactory. USAID placed Plaintiff Schapiro on administrative leave on February 23rd and terminated Plaintiff Schapiro from USAID on September 2, 2025.

77. Plaintiff Beckman is currently 49 years old and residing in Salt Lake City, UT. At the time of the relevant events, Plaintiff Beckman worked as a Deputy Health Office Director in USAID's Bangladesh Mission. Plaintiff Beckman joined USAID in 2012 and worked at USAID until her termination through a pretextual RIF in 2025. Plaintiff Beckman's responsibilities included representing USAID/Bangladesh's health efforts with Bangladesh's Ministry of Health and coordinating with other bilateral and multilateral development partners working in health, among others. During her tenure with USAID, Plaintiff Beckman received numerous awards, and Plaintiff Beckman's performance appraisals for the last year were satisfactory. USAID placed Plaintiff Beckman on administrative leave on February 23, 2025, until March 29, 2025, and terminated Plaintiff Beckman from USAID on July 1, 2025.

78. Plaintiff Borger is currently 54 years old and residing in Delray Beach, Florida. At the time of the relevant events, Plaintiff Borger worked as the Office Director in USAID's Office of Climate and Sustainable Growth in USAID/Pakistan. Plaintiff Borger joined USAID in 2010 and worked at USAID until his termination through a pretextual RIF in 2025. Plaintiff Borger's responsibilities included overseeing USAID Pakistan's work in climate, renewable energy, water, private sector growth, and women's empowerment. During his tenure with USAID, Plaintiff Borger received numerous awards, and Plaintiff Borger's performance appraisals for the last year were satisfactory. USAID placed Plaintiff Borger on administrative leave on February 23, 2025, and terminated Plaintiff Borger from USAID on September 2, 2025.

79. Plaintiff Boccanera is currently 47 years old and residing in Arlington, VA. At the time of the relevant events, Plaintiff Boccanera worked as the Policy Formulation & Implementation Team Leader in USAID's Policy, Implementation and Analytics Office in the Policy, Learning and Resource Management Bureau in Washington. Plaintiff Boccanera joined USAID in 2009 and worked at USAID until her termination through a pretextual RIF in 2025. Plaintiff Boccanera's responsibilities included overseeing the development and approval process for USAID policies worldwide and supporting Agency senior leadership in the Policy Advisory Committee to review and approve new policies, among others. During her tenure with USAID, Plaintiff Boccanera received numerous awards, and Plaintiff Boccanera's performance appraisals for the last year were satisfactory. USAID placed Plaintiff Boccanera on administrative leave on the global administrative leave date of February 23, 2025, and terminated Plaintiff Boccanera from USAID on July 1, 2025.

80. Plaintiff Fenley is currently 43 years old and residing in Vienna, Virginia. At the time of the relevant events, Plaintiff Fenley worked as a Private Sector Team Lead in USAID's Office of Economic Development and Energy in USAID's Mission in Amman, Jordan. Plaintiff Fenley joined USAID in 2010 and worked at USAID until his termination through a pretextual RIF in 2025. Plaintiff Fenley responsibilities included overseeing a portfolio of economic growth projects and serving as the alternate manager for four other programs. During his tenure with USAID, Plaintiff Fenley received numerous awards, and Plaintiff Fenley performance appraisals for the last year were satisfactory. USAID placed Plaintiff Fenley on administrative leave on February 23, 2025, and terminated Plaintiff Fenley from USAID on September 2, 2025.

81. Plaintiff Cardenas is currently 48 years old and residing in Amherst, Massachusetts. At the time of the relevant events, Plaintiff Cardenas worked as a Senior Policy Advisor to

32

USAID's Chief Diversity Officer in the Office of the Administrator in Washington, D.C. Plaintiff Cardenas joined USAID in June 2008 and worked at USAID until her termination through a pretextual RIF in 2025. Plaintiff Cardenas responsibilities included serving as the Senior Policy Advisor and alter ego to the Chief Diversity Officer (CDO) in the Office of the Administrator, overseeing functions in the DEIA Office. During her tenure with USAID, Plaintiff Cardenas received numerous awards, and Plaintiff Cardenas performance appraisals for the last year were satisfactory. USAID placed Plaintiff Cardenas on administrative leave on February 23, 2025, and terminated Plaintiff Cardenas from USAID on July 1, 2025.

82.     Plaintiff Lucas is currently 51 years old and residing in Kinshasa, Democratic Republic of Congo. At the time of the relevant events, Plaintiff Lucas worked as the Office Director for Humanitarian Assistance in USAID's Office of Humanitarian Assistance in Kinshasa, Democratic Republic of Congo. Plaintiff Lucas joined USAID in 2017 and worked at USAID until his termination through a pretextual RIF in 2025. Plaintiff Lucas' responsibilities included overseeing USAID humanitarian assistance programming in the Democratic Republic of Congo and supervising the humanitarian assistance team. Plaintiff Lucas' performance appraisals for the last year were satisfactory. USAID slated Plaintiff Lucas for RIF termination on September 2, 2025, and shortly before his termination on September 2, Plaintiff Lucas was hired into a Limited Non-Career Appointment (LNA) position as Regional Humanitarian Advisor in Kinshasa and has since been reinstated into the State Department Foreign Service as of December 28, 2025.

83.     Plaintiff Jessica Carlson is currently 45 years old and residing in Reston, Virginia. At the time of the relevant events, Plaintiff Carlson worked as the Deputy Director in USAID's Office of Acquisition and Assistance in Kyiv, Ukraine. Plaintiff Carlson joined USAID in 2011 and worked at USAID until her termination through a pretextual RIF in 2025. Plaintiff Carlson's

responsibilities included management of the procurement, implementation, and compliance of USAID/Ukraine's Health and Democracy, Human Rights, and Governance award portfolios. During her tenure with USAID, Plaintiff Carlson received numerous awards, and Plaintiff Carlson's performance appraisals for the last year were satisfactory. USAID placed Plaintiff Carlson on administrative leave on February 23, 2025, and terminated Plaintiff Carlson from USAID on September 2, 2025.

84.     Plaintiff Colburn is currently 60 years old and residing in Santa Barbara, California. At the time of the relevant events, Plaintiff Colburn worked as a Senior Policy Advisor in USAID's Bureau of Democracy, Human Rights, and Governance based in Washington D.C. Plaintiff Colburn joined USAID in 2007 and worked at USAID until his termination through a pretextual RIF in 2025. Plaintiff Colburn's responsibilities included overseeing the development and implementation of an Agency-wide policy, working across bureaus, overseas missions and the interagency.  During his tenure with USAID, Plaintiff Colburn multiple awards, and Plaintiff Colburn's performance appraisals for the last year were satisfactory. USAID placed Plaintiff Colburn on administrative leave on February 2025 and terminated Plaintiff Colburn from USAID on July 2, 2025.

85.     Plaintiff Byrd Ogbadu is currently 44 years old and residing in Baltimore, Maryland. At the time of the relevant events, Plaintiff Byrd Ogbadu worked as a Deputy Officer Director in USAID's Office of Economic Growth in Zimbabwe. Plaintiff Byrd Ogbadu joined USAID in 2009 and worked at USAID termination through a pretextual RIF in 2025. Plaintiff Byrd Ogbadu responsibilities included directing multi-sector programs in agriculture, biodiversity, and youth entrepreneurship. During her tenure with USAID, Plaintiff Byrd Ogbadu received Superior Honor Group award(s) and performance cash awards, and Plaintiff Byrd Ogbadu's

performance appraisals for the last year were satisfactory. USAID placed Plaintiff Byrd Ogbadu on administrative leave on February 25, 2025, and terminated Plaintiff Byrd Ogbadu from USAID on September 2, 2025.

86. Plaintiff Daly is currently 45 years old and residing in Chicago, Illinois. At the time of the relevant events, Plaintiff Daly worked as a Supervisory Executive Officer for USAID/Caucasus. Plaintiff Daly joined USAID in 2010 and worked as a Foreign/Civil Service Officer at USAID until his termination through a pretextual RIF in 2025. Plaintiff Daly's responsibilities included directing the administrative management functions and managing the $22 million operational budget for the missions in Georgia, Armenia, and Azerbaijan. During his tenure with USAID, Plaintiff Daly received numerous awards, and Plaintiff Daly's performance appraisals for the last year were satisfactory. USAID designated Plaintiff Daly as essential staff on February 8, 2025, and February 24, 2025, and terminated Plaintiff Daly from USAID on September 2, 2025.

87. Plaintiff Dani Newcomb is currently 43 years old and residing in Portland, Oregon. At the time of the relevant events, Plaintiff Newcomb worked as a Humanitarian Assistance Officer in USAID's Office of Humanitarian Assistance in Dakar, Senegal. Plaintiff Newcomb joined USAID in 2011 and worked at USAID until her termination through a pretextual RIF in 2025. Plaintiff Newcomb's responsibilities included overseeing humanitarian assistance and disaster risk-reduction programming across West Africa. During her tenure with USAID, Plaintiff Newcomb received numerous merit-based awards, and Plaintiff Newcomb performance appraisals for the last year were satisfactory. USAID placed Plaintiff Newcomb on administrative leave on February 23, 2025, and terminated Plaintiff Newcomb from USAID on September 2, 2025.

88.    Plaintiff Tedesco is currently 54 years old and residing in Kernersville, North Carolina. At the time of the relevant events, Plaintiff Tedesco was preparing for her new role as the USAID Brazil Environment Director. Until September 2024, she worked as a Program Director in USAID's Office of Sustainable Ecosystems and Economic Development in Colombia. Plaintiff Tedesco joined USAID in 2009 and worked at USAID until her termination through a pretextual RIF in 2025. Plaintiff Tedesco responsibilities included direction and management of a $200 million portfolio that strengthened U.S. and Colombia security cooperation to reduce transnational organized crime for regional stability. During her tenure with USAID, Plaintiff Tedesco received numerous awards, and Plaintiff Tedesco's performance appraisal for the last year were satisfactory. USAID placed Plaintiff Tedesco on administrative leave on February 23, 2025, and terminated Plaintiff Tedesco from USAID on July 1, 2025.

89.    Plaintiff Ratliff is currently 48 years old and residing in South Windsor, Connecticut. At the time of the relevant events, Plaintiff Ratliff worked as a Program Office Director in USAID's Program Office in USAID/Nepal. Plaintiff Ratliff joined USAID in 2008 and worked at USAID until his termination through a pretextual RIF in 2025. Plaintiff Ratliff responsibilities included managing multiple USAID offices, and planning, programming, and managing resources averaging $120 million a year. During his/her tenure with USAID, Plaintiff Ratliff received numerous awards, and Plaintiff Ratliff's performance appraisals for the last year were satisfactory. USAID placed Plaintiff Ratliff on administrative leave on February 23, 2025, and terminated Plaintiff Ratliff from USAID on July 2, 2025.

90.    Plaintiff Dubinsky is currently 43 years old and residing in San Salvador, El Salvador. At the time of the relevant events, Plaintiff Dubinsky worked as a Private Sector Team Lead in USAID's Office of Economic Growth in USAID/Guatemala. Plaintiff Dubinsky joined

36

USAID in 2010 and worked as a Foreign Service Officer at USAID until her termination through a pretextual RIF in 2025. Plaintiff Dubinsky responsibilities included overseeing the management of projects valued at $200 million, maintaining strategic private sector relationships, sustaining high-level government relationships with key stakeholders. During her tenure with USAID, Plaintiff Dubinsky received numerous awards, and Plaintiff Dubinsky's performance appraisals for the last year were Satisfactory. USAID placed Plaintiff Dubinsky on administrative leave on February 23, 2025, and terminated Plaintiff Dubinsky from USAID on September 2, 2025.

91.    Plaintiff Ekpe is currently 49 years old and residing in Houston, Texas. At the time of the relevant events, Plaintiff Ekpe worked as a Contracting & Agreement Officer in USAID's Office of Acquisition and Assistance in Washington. Plaintiff Ekpe joined USAID in 2011and worked at USAID until her termination through a pretextual RIF in 2025. Plaintiff Ekpe's responsibilities included negotiating and awarding contracts, grants, and cooperative agreements on behalf of USAID. During her tenure with USAID, Plaintiff Bolanle Ekpe received multiple awards, and Plaintiff Ekpe's performance appraisals for the last year were satisfactory. USAID terminated Plaintiff Ekpe from USAID on December 12, 2025.

92.    Plaintiff Wager is currently 48 years old and residing in Washington, D.C. At the time of the relevant events, Plaintiff Wager worked as a Democracy Officer in USAID's Guatemala Mission. Plaintiff Wager joined USAID in 2011 and worked at USAID until her termination through a pretextual RIF in 2025. Plaintiff Wager's responsibilities included managing the anti-corruption, citizen security, and migration portfolio in Guatemala. During her tenure with USAID, Plaintiff Wager received numerous awards, and Plaintiff Wager's performance appraisals for the last year were satisfactory. USAID placed Plaintiff Wager on administrative leave on

January 22, 2025, and once again on February 23, 2025, and terminated from USAID on September 2, 2025.

93.     Plaintiff Callender is currently 50 years old and residing in Springfield, Virginia. At the time of the relevant events, Plaintiff Callender worked as a Learning and Development Team Leader in USAID's Office of Democracy, Human Rights, and Governance in Washington, D.C. Plaintiff Callender joined USAID in 2004 and worked at USAID until her termination through a pretextual RIF in 2025. Plaintiff Callender's responsibilities included overseeing professional development and training for over 220 Foreign Service Officers as well as the global community of Crisis and Stabilization officers. During her tenure with USAID, Plaintiff Callender received numerous awards, and Plaintiff Callender's performance appraisals for the last year were satisfactory. USAID placed Plaintiff Callender on administrative leave on February 23, 2025, and terminated Plaintiff Callender from USAID on July 1, 2025.

94.     Plaintiff Erdahl is currently 54 years old and residing in Mankato, Minnesota. At the time of the relevant events, Plaintiff Erdahl worked as a Director of Health and Governance in USAID's Laos Country Office based in Bangkok, Thailand. Plaintiff Erdahl joined USAID in 2014 and worked as at USAID until her termination through a pretextual RIF in 2025. Plaintiff Erdahl's responsibilities included strategic planning, leadership, portfolio oversight, and accountability for programs in Laos, among others. During her tenure with USAID, Plaintiff Erdahl received numerous awards, and Plaintiff Erdahl's performance appraisals for the last year were satisfactory. USAID placed Plaintiff Erdahl on administrative leave on February 24, 2025, until March 28, 2025. Plaintiff Erdahl was then terminated from USAID on July 1, 2025.

95.     Plaintiff Espinosa is currently 49 years old and residing in Marriottsville, Maryland. At the time of the relevant events, Plaintiff Espinosa worked as a Foreign Service Contracting

38

Office in USAID's Office of M/OAA/Foreign Opps in Washington. Plaintiff Espinosa joined USAID in 2012 and worked at USAID until his termination through a pretextual RIF in 2025. Plaintiff Espinosa's responsibilities included supporting overseas missions during surge periods or operational interruptions and strategic coordination with senior leadership, capacity building through procurement training, and oversight of financial compliance. During his tenure with USAID, Plaintiff Espinosa received numerous awards, and Plaintiff Espinosa performance appraisals for the last year were satisfactory. USAID placed Plaintiff Espinosa on administrative leave on February 23, 2025, and terminated Plaintiff Espinosa from USAID on July 1, 2025

96.     Plaintiff Foster is currently 59 years old and residing in Woodbridge, Virginia. At the time of the relevant events, Plaintiff Foster worked as the Deputy Director in USAID's Office of Health in Kyiv, Ukraine. Plaintiff Foster joined USAID in 2014 and worked as at USAID until her termination through a pretextual RIF in 2025. Plaintiff Foster's responsibilities included managing and overseeing health programs, oversight for a staff of 20 and a portfolio of $500 million, ensuring compliance, and representing USAID internally and externally. During her tenure with USAID, Plaintiff Foster received numerous awards, and Plaintiff Foster's performance appraisals for the last year were satisfactory. USAID placed Plaintiff Foster on administrative leave on February 24, 2025, until March 24, 2025, and terminated Plaintiff Foster from USAID on July 1, 2025.

97.     Plaintiff Geiser is currently 50 years old and residing in Concord, NH. At the time of the relevant events, Plaintiff Geiser worked as a Supervisory Program Officer / Program Office Director in USAID's Dominican Republic Mission. Plaintiff Geiser joined USAID in 2010 and worked at USAID until his termination through a pretextual RIF in 2025. Plaintiff Geiser's responsibilities included leading the Program Office, overseeing strategy, program planning,

budgeting, monitoring, evaluation and learning (MEL), economic analysis, donor coordination, and intergovernmental engagement. During his tenure with USAID, Plaintiff Geiser received numerous awards, and Plaintiff Geiser's performance appraisals for the last year were satisfactory. USAID placed Plaintiff Geiser on administrative leave on February 7, 2025, and terminated Plaintiff Geiser from USAID on September 2, 2025.

98. Plaintiff Gunnoe is currently 44 years old and residing in Fairfax, Virginia. At the time of the relevant events, Plaintiff Gunnoe worked as a Contracting Officer in the Office of Acquisition at USAID/Jordan in Amman, Jordan. Plaintiff Gunnoe joined USAID in 2012 and worked at USAID until his termination through a pretextual RIF in 2025. Plaintiff Gunnoe's responsibilities included overseeing USAID's programs in Syria, leading the consolidation of the $186 Million portfolio across five international locations, among others. During his tenure with USAID, Plaintiff Gunnoe received numerous awards, and Plaintiff Gunnoe's performance appraisals for the last year were satisfactory. USAID placed Plaintiff Gunnoe on administrative leave on February 23, 2025, until March 31, 2025. Plaintiff Gunnoe was then terminated from USAID on September 2, 2025.

99. Plaintiff Hain is currently 50 years old and residing in Falls Church, Virginia. At the time of the relevant events, Plaintiff Hain worked as a General Development Officer serving as a Senior Advisor in USAID's Office of Digital Technology in Washington, D.C. Plaintiff Hain joined USAID in January 2010 and worked at USAID until her termination through a pretextual RIF in July 2025. Plaintiff Hain's responsibilities included overseeing the establishment of a new office, implementation of a 2024 digital policy, coordination of interagency, overseeing agency wide training, recruitment, skills analysis on AI and digital skills, and management of a portfolio project. During her tenure with USAID, Plaintiff numerous awards, and Plaintiff Hain performance

appraisals for the last year were satisfactory. USAID placed Plaintiff Hain on administrative leave on February 23, 2025, and terminated Plaintiff Hain from USAID on July 1, 2025.

100. Plaintiff Haines is currently 57 years old and residing in Tacoma, Washington. At the time of the relevant events, Plaintiff Haines worked as a Deputy Office Director in USAID's Office of Governance and Vulnerable Populations at USAID Sri Lanka and Maldives. Plaintiff Haines joined USAID in 2010 and worked as at USAID until his termination through a pretextual RIF in 2025. Plaintiff Haines's responsibilities included overseeing portfolio of programmatic initiatives while representing the strategic interest of the United States in Sri Lanka and Maldives. During his tenure with USAID, Plaintiff Haines received numerous awards, and Plaintiff Haines performance appraisals for the last year were satisfactory. USAID placed Plaintiff Haines on administrative leave on February 25, 2025, and terminated Plaintiff Haines from USAID on September 2, 2025.

101. Plaintiff Hancock is currently 45 years old and residing in Delray Beach, Florida. At the time of the relevant events, Plaintiff Hancock worked as a General Development Officer in USAID's Office of Civilian Military Coordination, in the Bureau of Conflict Prevention and Stabilization in Washington, D.C. Plaintiff Hancock joined USAID in 2009 and at USAID until his termination through a pretextual RIF in 2025. Plaintiff Hancock's responsibilities included overseeing liaison efforts with the Department of Defense at the U.S. Southern Command to harmonize each agency's programming in the Latin America region. During his tenure with USAID, Plaintiff Hancock received several awards, and Plaintiff Hancock's performance appraisals for the last year were satisfactory. USAID placed Plaintiff Hancock on administrative leave on February 23, 2025, and terminated Plaintiff Hancock from USAID on July 01, 2025.

102.     Plaintiff Hanna is currently 52 years old and residing in Stevensville, Maryland. At the time of the relevant events, Plaintiff Hanna worked as a Deputy Office Director in USAID's Office of Economic Growth in Guatemala. Plaintiff Hanna joined USAID in 2010 and worked at USAID until his termination through a pretextual RIF in 2026. Plaintiff Hanna's responsibilities included the day-to-day co-management of USAID/Guatemala's Economic Growth programs, procurements, and personnel, including the direct supervision of the Environment Team Lead, the Private Sector Team Lead, and the Mission Environmental Compliance Officer. During his tenure with USAID, Plaintiff Hanna received numerous awards, and Plaintiff Hanna's performance appraisal for the last year was satisfactory. USAID placed Plaintiff Hanna on administrative leave on February 23, 2025, and terminated Plaintiff Hanna from USAID on February 19, 2026.

103.     Plaintiff Hansen is currently 60 years old and residing in Helena, Montanna. At the time of the relevant events, Plaintiff Hansen worked as Director of Private Sector Engagement and as Acting Partnerships Office Director for USAID's Power Africa Office in USAID's Africa Bureau. Plaintiff Hansen joined USAID in 2001 and worked at USAID until his termination through a pretextual RIF in 2025. Plaintiff Hansen's responsibilities included leading mobilization of public and private investment in Africa's energy sector. Plaintiff Hansen received numerous awards over his tenure with USAID, and Plaintiff Hansen's performance appraisals for the last year were satisfactory. USAID placed Plaintiff Hansen on administrative leave on February 7, 2025, and terminated Plaintiff Hansen from USAID on July 2, 2025.

104.     Plaintiff John Harrison is currently 44 years old and residing in Oakland, California. At the time of the relevant events, Plaintiff Harrison worked as the Deputy Director in USAID's Office of Environment in Peru. Plaintiff Harrison joined USAID in 2013 and worked at USAID until her termination through a pretextual RIF in 2025. Harrison's responsibilities included

overseeing USAID Peru's $80 million Environment and Climate portfolio, providing strategic program leadership and portfolio management, and representing USAID with the Government of Peru. During her tenure with USAID, Plaintiff Harrison received numerous awards, and Plaintiff Harrison's performance appraisals for the last year were satisfactory. USAID placed Plaintiff Harrison on administrative leave on Feb 26, 2025, and terminated Plaintiff Harrison from USAID on July 1, 2025.

105. Plaintiff Sarah Jean Harrison is currently 44 years old and residing in Oakland, California. At the time of the relevant events, Plaintiff Harrison was slated to work as the Deputy Director in USAID's Office of Environment in Peru. Plaintiff Harrison joined USAID in 2013 and worked at USAID until her termination through a pretextual RIF in 2025. Plaintiff Harrison's responsibilities would have included overseeing USAID Peru's Environment and Climate portfolio, providing strategic program leadership and portfolio management, and representing USAID with the Government of Peru, Indigenous organizations, civil society, and international donors to advance biodiversity conservation, forest governance, and climate resilience objectives. During her tenure with USAID, Plaintiff Harrison received numerous awards, and Plaintiff Harrison's performance appraisals for the last 12 years were satisfactory. USAID placed Plaintiff Harrison on administrative leave on February 26, 2025, and terminated Plaintiff Harrison from USAID on July 1, 2025.

106. Plaintiff Wirick is currently 42 years old and residing in Maple Valley, WA. At the time of the relevant events, Plaintiff Wirick worked as a Team Lead and Contracting Officer in USAID's Office of Acquisition and Assistance in USAID/Southern Africa. Plaintiff Wirick joined USAID in 2015 and worked at USAID until her termination through a pretextual RIF in 2025. Plaintiff Wirick's responsibilities included overseeing approximately $2 billion in global health

programs and funding for the Bi-lateral Health Office in South Africa. During her tenure with USAID, Plaintiff Wirick received numerous awards, and Plaintiff Wirick's performance appraisals for the last year were satisfactory. USAID placed Plaintiff Wirick on administrative leave on February 7, 2025, and terminated Plaintiff Wirick from USAID on September 2, 2025.

107.    Plaintiff Hermosillo is currently 51 years old and residing in College City, California. At the time of the relevant events, Plaintiff Hermosillo worked as a Congressional Liaison Officer in USAID's Office of Legislative and Public Affairs in Washington, D.C. Plaintiff Hermosillo joined USAID in 2015 as a Foreign Service Officer and worked at USAID until her termination through a pretextual RIF in 2025. Plaintiff Hermosillo's responsibilities included representing USAID to members of Congress and working closely with Congress and senior leaders across the interagency to fulfill USAID's legislative and budgetary objective. During her tenure with USAID, Plaintiff Hermosillo received numerous awards, and Plaintiff Hermosillo performance appraisals for the last year were satisfactory. USAID placed Plaintiff Hermosillo on administrative leave on February 4, 2025, and terminated Plaintiff Hermosillo from USAID on July 1, 2025.

108.    Plaintiff Isquith is currently 48 years old and residing in Seattle, Washington. At the time of the relevant events, Plaintiff Isquith worked as a Supervisory Health and Population Development serving as the Deputy Director in USAID's Office of Public Health in Bangkok, Thailand at the USAID Regional Development Mission for Asia. Plaintiff Isquith joined USAID in June of 2013 and worked at USAID until his termination through a pretextual RIF in 2025. Plaintiff Isquith's responsibilities included providing strategic direction and oversight for RDMA's bilateral and regional programming, with a focus on the President's Malaria Initiative and the Global Health Security Agenda. During his tenure at USAID, Plaintiff Isquith received

44

numerous awards, and Plaintiff Isquith's performance appraisals for the last year were satisfactory. USAID placed Plaintiff Isquith on administrative leave on February 23, 2025, and terminated Plaintiff Isquith from USAID on September 9, 2025.

109.    Plaintiff Nenon is currently 61 years old and residing in Chatham, VA. At the time of the relevant events, Plaintiff Nenon worked as the acting Mission Director for USAID/Ukraine in Kyiv. Plaintiff Nenon joined USAID in 2008 and worked at USAID until her termination through a pretextual RIF in 2025. Plaintiff Nenon responsibilities included overseeing USAID's multi-billion-dollar portfolio for Ukraine and a staff of approximately 150 people. During her tenure with USAID, Plaintiff Nenon received numerous awards, and Plaintiff Nenon performance appraisals for the last year were satisfactory. USAID terminated Plaintiff Nenon on September 2, 2025.

110.    Plaintiff Olson is currently 44 years old and residing in Hoodsport, Washington. At the time of the relevant events, Plaintiff Olson worked as the Economic Growth Office Director in USAID's Libya External Office in Tunis, Tunisia. Plaintiff Olson joined USAID in 2010 and worked at USAID until her termination through a pretextual RIF in 2025. Plaintiff Olson responsibilities included leading a $70 million portfolio in a non-presence, conflict-affected environment and ensuring continuity of operations despite significant security and political constraints. She aligned economic programming with U.S. stabilization, counterterrorism, and counter-malign-influence priorities, providing senior interagency coordination with U.S. government partners, donors, and Libyan stakeholders while overseeing strategy, budgeting, and risk management, among others. During her tenure with USAID, Plaintiff Olson received numerous awards, and Plaintiff Olson's performance appraisals for the last year were Satisfactory.

USAID first placed Plaintiff Olson on administrative leave on February 25, 2025, and USAID terminated Plaintiff Olson from USAID on September 2, 2025.

111. Plaintiff Peng is currently 48 years old and residing in Irvine, California. At the time of the relevant events, Plaintiff Peng worked as in USAID's Human Capital and Talent Management. Plaintiff Peng joined USAID in 2004 and worked at USAID until her termination through a pretextual RIF in 2025. Plaintiff Peng's responsibilities included strategic planning, project design and management, financial management, development cooperation, performance monitoring and reporting, and outreach and communications for USAID missions and programs. During her tenure with USAID, Plaintiff Peng received numerous awards, and Plaintiff Peng's performance appraisals for the last year were satisfactory. USAID placed Plaintiff Peng on administrative leave on April 20, 2025, and terminated Plaintiff Peng from USAID on July 2, 2025.

112. Plaintiff Pike is currently 52 years old and residing in Baton Rouge, Louisiana. At the time of the relevant events, Plaintiff Pike worked as Director of the Humanitarian Assistance Office in USAID's Office of Humanitarian Assistance in Nigeria. Plaintiff Pike joined USAID in 2011 and worked at USAID until her termination through a pretextual RIF in 2025. Plaintiff Pike's responsibilities included overseeing the design, monitoring, and implementation of USAID's $453 million humanitarian assistance portfolio. During her tenure with USAID, Plaintiff Pike received numerous awards, and Plaintiff Pike's performance appraisals for the last year were satisfactory. USAID placed Plaintiff Pike on administrative leave on February 24, 2025, and terminated Plaintiff Pike from USAID on July 1, 2025.

113. Plaintiff James is currently 51 years old and residing in Henderson, Nevada. At the time of the relevant events, Plaintiff James worked as the Deputy Country Representative (Democracy and Governance Foreign Service Officer) in USAID's Mission to Belarus in Vilnius,

Lithuania. Plaintiff James joined USAID in March 2009 and worked at USAID until her termination through a pretextual RIF in 2025. Plaintiff James's responsibilities included serving as the Democracy portfolio lead supporting the Country Director in managing USAID/Belarus' $19.5 million portfolios across democracy, governance, private sector development, civil society development, and free journalism, among others. During her tenure with USAID, Plaintiff James received numerous awards, and Plaintiff James's performance appraisals for 2024, and every year of her employment, were Satisfactory. USAID placed Plaintiff James on administrative leave on February 7, 2025, and terminated Plaintiff James from USAID on September 2, 2025.

114. Plaintiff Roy is currently 49 years old and residing in Eaton, Colorando. At the time of the relevant events, Plaintiff Roy worked as the Director of the USAID Program Office in Uganda. Plaintiff Roy joined USAID in 2014 and worked at USAID until her termination through a pretextual RIF in 2025. Plaintiff Roy's responsibilities included oversight and management of Program Office staff (20) responsible for strategic planning, project design, monitoring, evaluation, and learning, as well as fiscal planning and execution, communications, public affairs, and stakeholder engagement across a $500 million annual development portfolio. During her tenure with USAID, Plaintiff Roy received numerous awards, and Plaintiff Roy's performance appraisals for the last year were satisfactory. USAID placed Plaintiff Roy on administrative leave on February 23, 2025, until March 27, 2025, and terminated Plaintiff Roy from USAID on July 1, 2025.

115. Plaintiff Mosel is currently 61 years old and residing in Wilmington, Delaware. At the time of the relevant events, Plaintiff Mosel worked as the Deputy Mission Director in USAID's Office of the Director in Hanoi, Vietnam. Plaintiff Mosel joined USAID in 2000 and worked at USAID until her termination through a pretextual RIF in 2025. Plaintiff Mosel's responsibilities

included overseeing all facets of USAID operations and programming in Vietnam, supervising all nine Mission Office Directors in Hanoi and Ho Chi Minh City and representing USAID within the U.S. Embassy at senior levels and externally with senior members of government, among others. During her tenure with USAID, Plaintiff Mosel received numerous awards, and Plaintiff Mosel's performance appraisals for the last year were satisfactory. USAID placed Plaintiff Mosel on administrative leave from February 23, 2025, until March 30, 2025, and Plaintiff Mosel was terminated from USAID on September 2, 2025.

116. Plaintiff Polovina is currently 42 years old and residing in Kailua, Hawaii. At the time of the relevant events, Plaintiff Polovina worked as the Feed the Future Coordinator in USAID's Office of Economic Growth in Dhaka, Bangladesh. Plaintiff Polovina joined USAID in 2016 and worked at USAID until her termination through a pretextual RIF in 2025. Plaintiff Polovina's responsibilities included serving as team leader for USAID's Feed the Future portfolio, overseeing 20 activities with a combined annual budget of $40 million, and directing day today portfolio operations, and serving as Contracting Officer's Representative for two major activities, among others. During her tenure with USAID, Plaintiff Polovina received numerous awards, and Plaintiff Polovina's performance appraisals for the last year were satisfactory. USAID placed Plaintiff Polovina on administrative leave on February 24, 2025, until April 3, 2025, and terminated Plaintiff Polovina from USAID on September 2, 2025.

117. Plaintiff Mueller is currently 48 years old and residing in Grand Rapids, Michigan. At the time of the relevant events, Plaintiff Mueller worked as the Regional Controller to USAID/Senegal. Plaintiff Mueller joined USAID in 2011 and worked as a Foreign Service Officer at USAID until his termination through a pretextual RIF in 2025. Plaintiff Mueller's responsibilities included managing all financial activities for the Senegal, Sahel Regional, Niger

Missions, and operating units in Burkina Faso, Mauritania, The Gambia, and Cape Verde. During his tenure with USAID, Plaintiff Mueller received Merit based awards, and Plaintiff Mueller's performance appraisals for the last year were satisfactory. USAID placed Plaintiff Mueller on administrative leave on February 7, 2025, and terminated Plaintiff Mueller from USAID on July 1, 2025.

118.    Plaintiff Jean Roberts Oliveras is currently 55 years old and residing in Oak Park, Illinois. At the time of the relevant events, Plaintiff Oliveras worked as a Regional Financial Management Center Director/Regional Controller in USAID/Bosnia and Herzegovina. Plaintiff Oliveras joined USAID in 2010 and worked at USAID until her termination through a pretextual RIF in 2025. Plaintiff Oliveras's responsibilities included ensuring proper financial management, accountability, risk management, and compliance of USAID operations and USAID-funded projects across multiple countries throughout her tenure. During her tenure with USAID, Plaintiff Oliveras received numerous awards, and Plaintiff Oliveras's performance appraisals for the last year were satisfactory. USAID briefly placed Plaintiff Oliveras on administrative leave in March 2025 for about two weeks and terminated Plaintiff Oliveras from USAID on September 2, 2025.

119.    Plaintiff Preciado is currently 46 years old and residing in Vancouver, Washington. At the time of the relevant events, Plaintiff Preciado worked as a Senior Agriculture Development Officer and Feed the Future Nigeria Country Coordinator in USAID's Nigeria Mission. Plaintiff Preciado joined USAID in 2011 and worked at USAID until his termination through a pretextual RIF in 2025. Plaintiff Preciado's responsibilities included providing senior technical and strategic leadership for agriculture, food security, and climate resilience programming, overseeing the Feed the Future Nigeria initiative, coordinating across technical offices, and representing USAID with host-government, donor, and implementing partners. During

his tenure with USAID, Plaintiff Preciado received merit-based awards, and Plaintiff Preciado's performance appraisals for the last year were satisfactory. USAID placed Plaintiff Preciado on administrative leave on February 4, 2025, and terminated Plaintiff Preciado from USAID on September 2, 2025.

120.    Plaintiff Pagen is currently 51 years old and residing in Upper Marlboro, Maryland. At the time of the relevant events, Plaintiff Pagen worked as Acting Deputy Mission Director in USAID's Mission in Iraq. Plaintiff Pagen joined USAID in 2010 and worked at USAID until her termination through a pretextual RIF in 2025. Plaintiff Pagen's responsibilities included serving as the alter-ego to the Mission Director overseeing all aspects of leadership and management over the USAID/Iraq $900 million portfolio. During her tenure with USAID, Plaintiff Pagen received numerous awards, and all performance appraisals during her career were satisfactory. USAID notified Plaintiff Pagen on February 27, 2025, that she was essential staff and thus not put on administrative leave. USAID shifted her July 1, 2025 termination date to September 2, 2025. Plaintiff Pagen resigned effective June 25, 2025.

121.    Plaintiff Peetz is currently 50 years old and residing in Green Cove Springs, Florida. At the time of the relevant events, Plaintiff Peetz worked as Director of USAID's Office of Health in Tajikistan. Plaintiff Peetz joined USAID in 2016 and worked at USAID until her termination through a pretextual RIF in 2025. Plaintiff Peetz's responsibilities included overseeing a $25 million/year integrated health portfolio in HIV, TB, Global Health Security, Nutrition, and Maternal Child Health. During her tenure with USAID, Plaintiff Peetz received numerous awards, and Plaintiff Peetz's performance appraisals for the last year were satisfactory. USAID placed Plaintiff Peetz on administrative leave on February 7, 2025, until March 27, 2025, and terminated Plaintiff Peetz from USAID on September 2, 2025.

122. Plaintiff Laakso is currently 48 years old and residing in Altoona, Wisconsin. At the time of the relevant events, Plaintiff Laakso worked as Deputy Office Director in USAID's Program Office in Jordan. Plaintiff Laakso joined USAID in 2010 and worked at USAID until her termination through a pretextual RIF in 2025. Plaintiff Laakso's responsibilities included leading an 18-person office and overseeing budget, strategic planning, communications, activity/program design, monitoring and evaluation, government and donor coordination, and private sector engagement for the USAID/Jordan portfolio. During her tenure with USAID, Plaintiff Laakso received multiple awards, and Plaintiff Laakso's performance appraisals for the last year were satisfactory. USAID placed Plaintiff Laakso on administrative leave on February 23, 2025, and terminated Plaintiff Laakso from USAID on September 2, 2025.

123. Plaintiff Snaza is currently 50 years old and residing in Reno, Nevada. At the time of the relevant events, Plaintiff Snaza worked as Deputy Office Director in USAID's Office of Economic Growth in the Kigali and served as Feed the Future Coordinator in the Rwanda Mission. Plaintiff Snaza joined USAID in 2011 and worked at USAID until her termination through a pretextual RIF in 2025. Plaintiff Snaza's responsibilities included oversight of USAID Rwanda's $198 million agriculture portfolio. During her tenure with USAID, Plaintiff Snaza received several awards, and Plaintiff Snaza's performance appraisals for the last year were satisfactory. USAID placed Plaintiff Snaza on administrative leave on March 21, 2025, and terminated Plaintiff Snaza from USAID on September 2, 2025.

124. Plaintiff Leigh H. Jones is currently 51 years old and residing in Alexandria, Virginia. At the time of the relevant events, Plaintiff Jones worked as a Program Officer assigned to USAID's Office of Programs and Strategy in Guatemala City, Guatemala. Plaintiff Jones joined USAID in 2010 and worked at USAID until his termination through a pretextual RIF in 2025.

Plaintiff Jones' responsibilities included managing and supervising a multi-sector portfolio budget totaling over $960 million and an annual budget of $160 million, providing strategic leadership in the planning and implementation of humanitarian assistance and health and public services, among others. During his tenure with USAID, Plaintiff Jones received numerous awards, and Plaintiff Jones performance appraisals for the last year were satisfactory. USAID placed Plaintiff Jones on administrative leave on February 23, 2025, and terminated Plaintiff Jones from USAID on September 2, 2025.

125. Plaintiff Alexis Jones is currently 47 years old and residing in Arlington, Virginia. At the time of the relevant events, Plaintiff Jones worked as a Humanitarian Assistance Team Leader in USAID's Office of Sustainable Economic Growth in Lilongwe, Malawi. Plaintiff Jones joined USAID in 2010 and worked at USAID until her termination through a pretextual RIF in 2025. Plaintiff Jones's responsibilities included overseeing approximately $55 million in humanitarian assistance programming in Malawi, including food assistance, refugee assistance, and livelihoods recovery programs, among others. During her tenure with USAID, Plaintiff Jones received numerous awards, and Plaintiff Jones' performance appraisals for the last year were satisfactory. USAID placed Plaintiff Jones on administrative leave from February 24, 2025, to March 27, 2025, and terminated Plaintiff Jones from USAID on September 2, 2025.

126. Plaintiff Kaufman is currently 44 years old and residing in Arlington, Virginia. At the time of the relevant events, Plaintiff Kaufman worked as a Program Officer in USAID's Mozambique Mission. Plaintiff Kaufman joined USAID in 2010 and worked at USAID until her termination through a pretextual RIF in 2025. Plaintiff Kaufman's responsibilities included leading organizational strategy and strategic communications for a large, multi-sector USAID country portfolio; advising Mission leadership on strategy, risk, and stakeholder engagement; and

52

strengthening systems, teams, and processes to improve program effectiveness and impact. During her tenure with USAID, Plaintiff Kaufman received numerous awards, and Plaintiff Kaufman's performance appraisals for the last year and every year of her employment were satisfactory. USAID placed Plaintiff Kaufman on administrative leave on February 23, 2025, and terminated Plaintiff Kaufman from USAID on September 2, 2025.

127.    Plaintiff Scheibel is currently 42 years old and residing in Vienna, Virginia. At the time of the relevant events, Plaintiff Scheibel worked as a Senior Governance Advisor in USAID's Middle East Bureau, splitting his time between the USAID-West Bank and Gaza Mission in Jerusalem and USAID HQ in Washington D.C. Plaintiff Scheibel joined USAID in 2015 and worked at USAID until his termination through a pretextual RIF in 2025. Plaintiff Scheibel's responsibilities included providing program design, procurement, management, and oversight services of Congressionally-approved governance-strengthening programs in the Middle East valued over $100 million and representing USAID in Arabic to governmental counterparts. During his tenure with USAID, Plaintiff Scheibel received numerous awards, and Plaintiff Scheibel's performance appraisals for the last year were satisfactory. USAID placed Plaintiff Scheibel on administrative leave on February 23, 2025, and terminated Plaintiff Scheibel from USAID on July 2, 2025.

128.    Plaintiff Beard is currently 52 years old and residing in Atlanta, Georgia. At the time of the relevant events, Plaintiff Beard worked as a Supervisory Program Officer in USAID's Mission in Egypt. Plaintiff Beard joined USAID in 2009 and worked at USAID until her termination through a pretextual RIF in 2025. Plaintiff Beard's responsibilities included coordinating across the 17-person Program Office team to guide short and long-term program planning and strategy development for the Mission's $525 million portfolio and advance

53

development and implementation of Mission programming, policies, and priorities. During her tenure with USAID, Plaintiff Beard numerous awards, and Plaintiff Beard performance appraisals for the last year were satisfactory. USAID placed Plaintiff Beard on administrative leave on February 25, 2025, and terminated Plaintiff Beard from USAID on September 2, 2025.

129. Plaintiff Wurster is currently 47 years old and residing in Spokane, Washington. At the time of the relevant events, Plaintiff Wurster worked as Head of the Digital Unit in USAID's Mission to Ukraine. Plaintiff Wurster joined USAID in 2008 and worked at USAID until his termination through a pretextual RIF in 2025. Plaintiff Wurster's responsibilities included leading USAID's digital development and cybersecurity portfolio in Ukraine, overseeing large-scale digital transformation initiatives, coordinating interagency and international partners, and managing relationships with host-country institutions and U.S. technology providers. During his tenure with USAID, Plaintiff Wurster received multiple awards, and Plaintiff Wurster's performance appraisals for the last year were satisfactory. USAID placed Plaintiff Wurster on administrative leave on February 7, 2025, and terminated Plaintiff Wurster from USAID on September 2, 2025.

130. Plaintiff Ashley King is currently 47 years old and residing in Seattle, Washington. At the time of the relevant events, Plaintiff King worked as Deputy Director in USAID's Office of Water Resources and Environment in USAID/Jordan. Plaintiff King joined USAID in 2010 and worked at USAID until her resignation in lieu of a pretextual RIF in 2025. Plaintiff King's responsibilities included managing $120 million in annual funding spent to strengthen water infrastructure in Jordan. During her tenure with USAID, Plaintiff King received several awards, and Plaintiff King's performance appraisals for the last year were satisfactory. USAID placed

Plaintiff King on administrative leave on February 24, 2025, and Plaintiff King resigned on June 28, 2025.

131.    Plaintiff Blair King is currently 59 years old and residing in Rockville, Maryland. At the time of the relevant events, Plaintiff King worked as the Deputy Director in USAID's Office of Democracy, Human Rights, and Governance in USAID/Bangladesh. Plaintiff King joined USAID in 2006 and worked as a Foreign Service Officer at USAID until his termination through a pretextual RIF in 2025. Plaintiff King's responsibilities in this particular assignment included working with the USAID/Bangladesh DRG Office Director to manage a portfolio of about 20 DRG programs valued at $174 million. During his tenure with USAID, Plaintiff King received numerous awards for various professional achievements, and Plaintiff King's performance appraisals for the last year were satisfactory. USAID placed Plaintiff King on administrative leave from February 7, 2025, to April 6, 2025, and USAID terminated Plaintiff King on July 1, 2025.

132.    Plaintiff Begeal is currently 53 years old and residing in Guatemala City, Guatemala. At the time of the relevant events, Plaintiff Begeal worked as an Agricultural Officer, Feed Future Coordinator in USAID's Office of Economic Growth in Guatemala. Plaintiff Begeal joined USAID in 2011 and worked at USAID until her termination through a pretextual RIF in 2025. Plaintiff Begeal's responsibilities included oversight, strategic planning, and management of the food security unit, including two staff, a portfolio of five awards, and approximately $20 million in annual funds. During her tenure with USAID, Plaintiff Begeal received numerous awards, and Plaintiff Begeal's performance appraisals for the last year were satisfactory or unsatisfactory. USAID sent Plaintiff Begeal a RIF notice on March 27, 2025, with a separation date of September 2, 2025. Plaintiff Begeal submitted an involuntary separation request on June 28, 2025, to begin a position at the State Department.

133.    Plaintiff Smith is currently 60 years old and residing in Chino Hills, California. At the time of the relevant events, Plaintiff Smith worked as a Supervisory Program Officer in USAID's Office of Programs in Laos. Plaintiff Smith joined USAID in 2004 and worked at USAID until his termination through a pretextual RIF in 2025. Plaintiff Smith's responsibilities included overseeing the overall strategic planning, budgeting, monitoring, evaluating, and reporting on the USAID/Laos portfolio. During his tenure with USAID, Plaintiff Smith received several awards, and Plaintiff Smith's performance appraisals for the last year were satisfactory. USAID placed Plaintiff Smith on administrative leave on February 23, 2025, and terminated Plaintiff Smith from USAID on September 2, 2025.

134.    Plaintiff Mitre is currently 49 years old and residing in Fairfax, Virginia. At the time of the relevant events, Plaintiff Mitre worked as a Deputy Director in USAID's Latin America and Caribbean Bureau's Office of Regional Sustainable Development in Washington. Plaintiff Mitre joined USAID in May 2008 and worked at USAID until her termination through a pretextual RIF in 2025. Plaintiff Mitre's responsibilities included overseeing a 35-person technical team providing technical services to USAID's Latin America and Caribbean Mission Offices on economic growth, health, education, democracy, and governance, environment, and education services.  During her tenure with USAID, Plaintiff Mitre received numerous awards, and Plaintiff Mitre's performance appraisals for the last year were satisfactory. USAID placed Plaintiff Mitre on administrative leave on February 23, 2025, and terminated Plaintiff Mitre from USAID on July 1, 2025.

135.    Plaintiff Koler is currently 46 years old and residing in Eugene, Oregon. At the time of the relevant events, Plaintiff Koler worked as a Program Officer in USAID's Office of Learning, Evaluation, and Research in Washington, D.C. Plaintiff Koler joined USAID in 2007 and worked

at USAID until her termination through a pretextual RIF in 2025. Plaintiff Koler's responsibilities included designing, delivering, and supporting capacity building activities for USAID staff and partners to advance Program Cycle processes in Washington and in missions worldwide. During her tenure with USAID, Plaintiff Koler received numerous awards, and Plaintiff Koler's performance appraisals for the last year were satisfactory. USAID placed Plaintiff Koler on administrative leave on February 3, 2025, and terminated Plaintiff Koler from USAID on September 2, 2025.

136. Plaintiff Kraegel is currently 46 years old and residing in Waunakee, Wisconsin. At the time of the relevant events, Plaintiff Kraegel worked as a Contracting and Agreement Officer in USAID's Regional Contracting Office in Tbilisi, Georgia. Plaintiff Kraegel joined USAID in 2009 and worked at USAID until his termination through a pretextual RIF in 2025. Plaintiff Kraegel's responsibilities included negotiation, award of contracts and grants on behalf of USAID as well as day-to-day management and oversight of program implementation. During his tenure with USAID, Plaintiff Kraegel received numerous awards, and Plaintiff Kraegel's performance appraisals for the last year were satisfactory. USAID placed Plaintiff Kraegel on administrative leave on July 19, 2025, and terminated Plaintiff Kraegel from USAID on September 2, 2025.

137. Plaintiff Koscielski is currently 44 years old and residing in Chicago, Illinois. At the time of the relevant events, Plaintiff Koscielski worked as the Supervisory Private Enterprise Officer in USAID's Mission in Georgia (USAID/Caucasus). Plaintiff Koscielski joined USAID in 2010 and worked at USAID until her termination through a pretextual RIF in 2025. Plaintiff Koscielski's responsibilities included overseeing USAID's regional economic growth portfolio for the Caucasus, encompassing private-sector development, trade, agriculture, economic governance,

and peacebuilding programs, among others. During her tenure with USAID, Plaintiff Koscielski received numerous awards, and Plaintiff Koscielski's performance appraisal for the last year was satisfactory. USAID placed Plaintiff Koscielski on administrative leave on February 25, 2025, and terminated Plaintiff Koscielski from USAID on September 2, 2025.

138.    Plaintiff Kwok is currently 45 years old and residing in Bethesda, Maryland. At the time of the relevant events, Plaintiff Kwok was in French language training, preparing for her assignment to work as the Supervisory General Development Officer in USAID's Office of Integrated Development and Emergency Assistance in Madagascar. Plaintiff Kwok joined USAID in 2010 and worked at USAID until her termination through a pretextual RIF in 2025. In her expected overseas assignment, Plaintiff Kwok's responsibilities included overseeing more than $135 million in governance, food security, education, and humanitarian assistance for Madagascar and Comoros. During her tenure with USAID, Plaintiff Kwok received numerous awards, and Plaintiff Kwok's performance appraisals for the last year were satisfactory. USAID placed Plaintiff Kwok on administrative leave on February 23, 2025, and terminated Plaintiff Kwok from USAID on July 1, 2025.

139.    Plaintiff Waller is currently 55 years old and residing in Salem, Massachusetts. At the time of the relevant events, Plaintiff Waller worked as a Health Officer in USAID/ Nepal's Mission. Plaintiff Waller served USAID from 2002 to 2012, and rejoined in 2022, working at USAID until her termination through a pretextual RIF in 2025. Plaintiff Waller's responsibilities included oversight of a $48 million annual budget and programming for USAID Nepal's health portfolio, including representation at high-level Government meetings, and advising the Embassy on epidemic risks. During her tenure with USAID, Plaintiff Waller received numerous awards, and Plaintiff Waller's performance appraisals for the last year were satisfactory. USAID placed

Plaintiff Waller on administrative leave on February 7, 2025, and terminated Plaintiff Waller from USAID on September 2, 2025.

140. Plaintiff Lawrence Jaffer is currently 42 years old and residing in Arlington, Virginia. At the time of the relevant events, Plaintiff Lawrence Jaffer worked as the Office Director for Ho Chi Minh City in USAID's Vietnam Mission. Plaintiff Lawrence Jaffer joined USAID in 2009 and worked at USAID until her termination through a pretextual RIF in 2025. Plaintiff Jaffer's responsibilities included representing USAID Vietnam's portfolio in the South including programs in Health, Education, Economic Growth and Governance, Climate Change, Energy, and Environment, and Reconciliation and Inclusive Development. During her tenure with USAID, Plaintiff Lawrence Jaffer received numerous awards, and Plaintiff Lawrence Jaffer's performance appraisals for the last year were fully satisfactory. USAID placed Plaintiff Lawrence Jaffer on administrative leave on February 23, 2025, and terminated Plaintiff Lawrence Jaffer from USAID on September 2, 2025.

141. Plaintiff Chang is currently 47 years old and residing in Germantown, MD. At the time of the relevant events, Plaintiff Chang worked as a Private Enterprise Foreign Service Officer and Senior Advisor in USAID's Prosper Africa Secretariat in Johannesburg, South Africa. Plaintiff Chang joined USAID in 2008 and worked at USAID until her termination through a pretextual RIF in 2025. In her final role, Plaintiff Chang was responsible for generating partnerships and liaising with 17 USG Agencies, investors, and philanthropists and African institutions across 49 countries to de-risk private sector investment and facilitate US-Africa trade. During her tenure with USAID, Plaintiff Chang received numerous awards, and Plaintiff Chang's performance appraisals for the last two years were satisfactory. USAID placed Plaintiff Chang on administrative leave on February 23, 2025, and terminated Plaintiff Chang from USAID on September 2, 2025.

142. Plaintiff Childerhose is currently 44 years old and residing in Mount Morris, MI. At the time of the relevant events, Plaintiff Childerhose worked as a Program Officer Director in USAID's Bilateral Program Office in Senegal. Plaintiff Childerhose joined USAID in 2009 and worked at USAID until his termination through a pretextual RIF in 2025. Plaintiff Childerhose's responsibilities included managing a 16-person unit across six teams (strategy; design; budget; communications; external relations; monitoring, evaluation, & learning) for USAID/Senegal's bilateral portfolio valued over $600 million. During his tenure with USAID, Plaintiff Childerhose received multiple awards, and Plaintiff Childerhose's performance appraisals for the last year were satisfactory. USAID placed Plaintiff Childerhose on administrative leave on February 7, 2025, and ultimately terminated Plaintiff Childerhose from USAID on September 2, 2025.

143. Plaintiff Colarik is currently 42 years old and residing in Washington, D.C. At the time of the relevant events, Plaintiff Colarik worked as a Supervisory Contracting Officer in USAID's Office of Acquisition and Assistance in South Sudan. Plaintiff Colarik joined USAID in 2010 and worked at USAID until her termination through a pretextual RIF in 2025. Plaintiff Colarik's responsibilities included managing acquisition and assistance mechanisms in economic growth, education, health, and democracy and governance. During her tenure with USAID, Plaintiff Colarik received numerous awards, and Plaintiff Colarik's performance appraisals for the last year were satisfactory. USAID placed Plaintiff Colarik on administrative leave on February 7, 2025, until March 7, 2025, and USAID will terminate Plaintiff Colarik from USAID on September 30, 2026.

144. Plaintiff Jamie Lewis is currently 45 years old and residing in Washington, D.C. At the time of the relevant events, Plaintiff Lewis worked as a Deputy Office Director and Contracting Officer in USAID's Office of Acquisition and Assistance in the USAID Mission in Kinshasa, the

Democratic Republic of Congo. Plaintiff Lewis joined USAID in 2020 and worked at USAID until her termination through a pretextual RIF in 2025. Plaintiff Lewis's responsibilities included overseeing USAID's procurement and contracting work and ensuring that contracts and grants were in compliance with law and regulation. During her tenure with USAID, Plaintiff Lewis received numerous awards. Plaintiff Lewis' performance appraisals for the last year were satisfactory. USAID placed Plaintiff Lewis on administrative leave on February 7, 2025, and terminated Plaintiff Lewis from USAID effective September 2, 2025.

145. Plaintiff Cicely Lewis is currently 43 years old and residing in Fairfax, Virginia. At the time of the relevant events, Plaintiff Lewis worked as an Executive Officer in USAID/Zambia. Plaintiff Lewis joined USAID in 2016 and worked at USAID until her termination through a pretextual RIF in 2025. Plaintiff Lewis' responsibilities as a USAID Executive Officer (EXO) included leading the Executive Office, overseeing administrative, HR, financial, logistical, and contracting functions for a mission or bureau, managing organizational changes, and ensuring the effective and efficient delivery of USAID's management and support services to achieve mission objectives. During her tenure with USAID, Plaintiff Lewis received numerous awards. Plaintiff Lewis's performance appraisals for the last year were Satisfactory. USAID placed Plaintiff Lewis on administrative leave overseas on February 2, 2025, until March 2025, and terminated Plaintiff Lewis from USAID on September 2, 2025.

146. Plaintiff Maher is currently 45 years old and residing in Buffalo, New York. At the time of the relevant events, Plaintiff Maher worked as the Democracy and Governance Office Director in USAID/Tunisia. Plaintiff Maher joined USAID in 2010 and worked at USAID until her termination through a pretextual RIF in 2025. Plaintiff Maher's responsibilities included most recently, providing strategic vision for and overseeing the $200 million USAID/Tunisia

Democracy and Governance portfolio while representing USAID to relevant host government officials, donors, civil society leaders, and within the Interagency. During her tenure with USAID, Plaintiff Maher received numerous awards, and Plaintiff Maher's performance appraisals for the last year were Satisfactory. USAID placed Plaintiff Maher on administrative leave on February 23, 2025, and terminated Plaintiff Maher from USAID on September 2, 2025.

147. Plaintiff Benjamin is currently 46 years old and residing in Washington, D.C. At the time of the relevant events, Plaintiff Benjamin worked as the Office director in USAID's Office of Health in USAID/Botswana. Plaintiff Benjamin joined USAID in 2010 and worked at USAID until her termination through a pretextual RIF in 2025. Plaintiff Benjamin responsibilities included, among others, overseeing all USAID's health sector engagements with the Government of Botswana, the U.S. Government President's Emergency Plan for AIDS Relief (PEPFAR) Interagency, and all external stakeholders (multilateral, bilateral, and national). During her tenure with USAID, Plaintiff Benjamin received numerous awards, and Plaintiff Benjamin performance appraisals for the last year were satisfactory. USAID placed Plaintiff Benjamin on administrative leave on February 7, 2025, until March 21, 2025, and terminated Plaintiff Benjamin from USAID on September 2, 2025.

148. Plaintiff Ahmed is currently 44 years old and residing in Fullerton, CA. At the time of the relevant events, Plaintiff Ahmed worked as a Program Officer in USAID's Office of Small and Disadvantaged Business Utilization in Washington. Plaintiff Ahmed joined USAID in 2009 and worked at USAID until her termination through a pretextual RIF in 2025. Plaintiff Ahmed's responsibilities included advising teams across 20 Asia Missions and Country Offices, the Asia Bureau, and the Global Health Bureau to diversify partnerships through identifying small business contracting opportunities and monitor progress towards mandated small business goals. During

her tenure with USAID, Plaintiff Ahmed received numerous awards, and Plaintiff Ahmed's performance appraisals for the last year were satisfactory. USAID placed Plaintiff Ahmed on administrative leave on February 23, 2025, and terminated Plaintiff Ahmed on July 1, 2025.

149.    Plaintiff Sorey is currently 44 years old and residing in Fredericksburg, Virginia. At the time of the relevant events, Plaintiff Sorey worked as a Democracy Officer in USAID's Middle East Bureau in Washington. Plaintiff Sorey joined USAID in 2010 and worked at USAID until her termination through a pretextual RIF in 2025. Plaintiff Sorey's responsibilities included supporting a regional portfolio that addressed effective democratic governance, civil society strengthening, and respect for human rights as a foundation for long-term peace and prosperity in the Middle East. During her tenure with USAID, Plaintiff Sorey received numerous awards, and Plaintiff Sorey's performance appraisals for the last year were satisfactory. USAID placed Plaintiff Sorey on administrative leave on February 23, 2025, and terminated Plaintiff Sorey from USAID on July 1, 2025.

150.    Plaintiff Baran is currently 45 years old and residing in San Antonio, Texas. At the time of the relevant events, Plaintiff Baran worked as a Supervisory Program Officer in USAID's Program Office in USAID'S Mission in Mexico. Plaintiff Baran joined USAID in 2011 and worked at USAID until her termination through a pretextual RIF in 2025. Plaintiff Baran's responsibilities included overseeing $280 million in U.S. foreign assistance, directing strategy, budgeting, program design, monitoring and evaluation, and leading donor coordination, among others. During her tenure with USAID, Plaintiff Baran received numerous awards, and Plaintiff BARAN'S performance appraisals for the last year were Satisfactory. USAID placed Plaintiff Baran on administrative leave on February 23, 2025, and terminated Plaintiff Baran from USAID on September 2, 2025.

151.    Plaintiff Semmes is currently 43 years old and residing in Reston, Virginia. At the time of the relevant events, Plaintiff Semmes was Division Chief for Agriculture and Livelihoods in USAID's Bureau for Humanitarian Assistance in Washington, D.C. Plaintiff Semmes joined USAID in 2009 and worked at USAID until her termination through a pretextual RIF in 2025. Plaintiff responsibilities as Division Chief included overseeing all technical inputs and advice related to agriculture and livelihoods in the design and oversight of humanitarian programs and representing the Bureau for Humanitarian Assistance to the interagency and externally on agriculture and livelihoods matters. USAID placed Plaintiff Semmes on administrative leave on February 24, 2025, and terminated Plaintiff Semmes from USAID on July 1, 2025.

152.    Plaintiff Lee is currently 49 years old and residing in La Jolla, California. At the time of the relevant events, Plaintiff Lee worked as a Deputy Director in USAID's Office of East Asia and the Pacific in the Bureau for Asia in Washington, D.C. Plaintiff Lee joined USAID in 2011 and worked at USAID until her termination through a pretextual RIF in 2025. Plaintiff Lee's responsibilities included representing USAID in congressional staff briefings concerning the 22 countries across the region, coordinating with the Department of State on foreign policy matters, supporting senior management in National Security Council meetings, and representing in select National Security Council Meetings. During her tenure with USAID, Plaintiff Lee received numerous awards, and Plaintiff Lee's performance appraisals for the last year were satisfactory. USAID terminated Plaintiff Lee on July 1, 2025.

153.    Plaintiff Savage is currently 49 years old and residing in Bend, Oregon. At the time of the relevant events, Plaintiff Savage worked as a Program Officer in USAID's Office for Strategic Program and Planning in Washington D.C. Plaintiff Savage joined USAID in 2009 and worked at USAID until her termination through a pretextual RIF in 2025. Plaintiff Savage's

responsibilities included creating program and project manager training modules, developing a strong career path for Agency project managers, and supporting Agency initiatives such as localization. During her tenure with USAID, Plaintiff Savage received numerous awards and Plaintiff Savage's performance appraisals for the last year were satisfactory. USAID placed Plaintiff Savage on administrative leave on February 23, 2025, and terminated Plaintiff Savage from USAID on July 1, 2025.

154. Plaintiff Scheid is currently 44 years old and residing in Fort Myers, Florida. At the time of the relevant events, Plaintiff Scheid worked as a Program Officer in USAID's Mission in Egypt. Plaintiff Scheid joined USAID in 2016 and worked at USAID until his termination through a pretextual RIF in 2025. Plaintiff Scheid oversaw strategic program design and portfolio planning for a $500 million portfolio, ensuring mission-wide execution of Presidential, Congressional, and Agency directives advancing U.S. national security and foreign policy objectives and served as Mission Disaster Relief Officer and Civilian-Military Liaison Officer, among others. During his tenure with USAID, Plaintiff Scheid received performance awards, and Plaintiff Scheid's performance appraisals for the last year were satisfactory. USAID placed Plaintiff Scheid on administrative leave on February 25, 2025, and terminated Plaintiff Scheid from USAID on July 01, 2025.

155. Plaintiff Schramm is currently 46 years old and residing in Washington, D.C. At the time of the relevant events, Plaintiff Schramm worked as a Contracting and Agreements Officer in USAID's Office of Foreign Operations. Plaintiff Schramm joined USAID in 2012 and worked at USAID until his termination through a pretextual RIF in 2025. Plaintiff Schramm's responsibilities included managing cradle-to-grave multimillion dollar contracts and grants for foreign assistance, including negotiating contract modifications, terminations, and closeouts.

During his/her tenure with USAID, Plaintiff Schramm received [insert any info regarding merit-based awards and performance, if any], and Plaintiff Schramm performance appraisals for the last completed performance evaluation were satisfactory. USAID placed Plaintiff Schramm on administrative leave on February 23, 2025, and terminated Plaintiff Schramm from USAID on July 1, 2025.

156.   Plaintiff Bagga-Taves is currently 46 years old and residing in Bloomfield Hills, MI. At the time of the relevant events, Plaintiff Bagga-Taves worked as a Senior Government Affairs and Legislative Strategy Executive / Congressional Liaison in USAID's Bureau for Legislative and Public Affairs, Office of Legislative Affairs in Washington, D.C. Plaintiff Bagga-Taves joined USAID on September 14, 2008, and worked at USAID until her termination through a pretextual Reduction in Force in 2025. Plaintiff Bagga-Taves' responsibilities included implementing large-scale public health programs, providing technical guidance to field staff and foreign governments on health programs, leading congressional engagement on global health and development priorities, advising senior agency leadership, and representing USAID before stakeholders. During her tenure with USAID, Plaintiff Bagga-Taves received merit-based recognition and performance-based monetary awards, and her performance appraisals for the most recent evaluation period were satisfactory. USAID placed Plaintiff Bagga-Taves on administrative leave in February of 2025 and terminated Plaintiff Bagga-Taves on July 1, 2025.

157.   Plaintiff Ryan Shelby is currently 41 years old and resides in Capitol Heights, Maryland. At the time of the relevant events, Plaintiff Shelby worked as a Congressional Liaison Officer in USAID's Office of Legislative and Public Affairs in Washington, D.C. Plaintiff Shelby joined USAID in 2015 as a Foreign Service Officer and worked at USAID until his termination through a pretextual RIF in 2025. Plaintiff Shelby's responsibilities included representing USAID

in internal and external meetings with Members of Congress, Congressional staff, and constituent groups, among others. During his tenure with USAID, Plaintiff Shelby received numerous awards, and Plaintiff Shelby's performance appraisals for the last year were satisfactory. USAID placed Plaintiff Shelby on administrative leave on February 4, 2025, and terminated Plaintiff Shelby from USAID on July 1, 2025.

158. Plaintiff Shukla is currently 44 years old and residing in Washington D.C. At the time of the relevant events, Shukla worked as a Supervisor Health Officer as the Latin America and Caribbean Health Director in USAID's Office of Regional Sustainable Development in the Latin America and Caribbean Bureau at USAID/Washington. Plaintiff Shukla joined USAID in May 2006 and worked at USAID until her termination through a pretextual RIF in 2025. Plaintiff Shukla led a team of technical experts to manage a $200 million regional portfolio and advise LAC leadership on the region's biggest health challenges, among others. During her tenure with USAID, Plaintiff Shukla received awards for her work, and Plaintiff Shukla's performance appraisals for the last year were satisfactory. USAID placed Plaintiff Shukla on administrative leave in February of 2025 and terminated Ms. Shukla from USAID on July 1, 2025.

159. Plaintiff Pangerl is currently 40 years old and residing in New Buffalo, Michigan. At the time of the relevant events, Plaintiff Pangerl worked as the Responsible Minerals Trade Lead in USAID's Office of Economic Growth in Kinshasa, DRC. Plaintiff Pangerl joined USAID in 2020 and worked at USAID until her termination through a pretextual RIF in 2025. Plaintiff Pangerl's responsibilities included leading U.S. Government critical minerals and responsible sourcing engagement in the DRC, coordinating policy, donor, and private-sector stakeholders to strengthen supply chain governance and environmental and social compliance. During her tenure with USAID, Plaintiff Pangerl received numerous awards, and Plaintiff Pangerl's performance

67

appraisals for the last year were satisfactory. USAID placed Plaintiff Pangerl on administrative leave on February 4, 2025, and terminated Plaintiff Pangerl from USAID on September 2, 2025.

160.    Plaintiff Skolnik is currently 45 years old and residing in Minneapolis, Minnesota. At the time of the relevant events, Plaintiff Skolnik worked as a Deputy Program Officer in USAID's Program Office in Madagascar. Plaintiff Skolnik joined USAID in 2016 and worked at USAID until her termination through a pretextual RIF in 2025. Plaintiff Skolnik's responsibilities included managing the Mission's budget, design, evaluation, and communications teams. During her tenure with USAID, Plaintiff Skolnik received multiple merit-based awards, and Plaintiff Skolnik's performance appraisals for the last year were satisfactory. USAID placed Plaintiff Skolnik on administrative leave on Feb 24, 2025, and terminated Plaintiff Skolnik from USAID on September 2, 2025.

161.    Plaintiff Spears is currently 48 years old and residing in Takoma Park, Maryland. At the time of the relevant events, Plaintiff Spears worked as the Program and Budget Division Chief in USAID's Office of Conflict and Violence Prevention in Washington. Plaintiff Spears joined USAID in 2015 and worked at USAID until his termination through a pretextual RIF in 2025. Plaintiff Spears' responsibilities included overseeing a 10-person team responsible for administration of $100 million in annual conflict prevention funds, strengthening internal controls, and coordinating budget planning and execution with USAID budget officials, Congress, and the State Department. During his tenure with USAID, Plaintiff Spears received numerous awards, and Plaintiff Spears' performance appraisals for the last year were satisfactory. USAID placed Plaintiff Spears on administrative leave on February 4, 2025, and terminated Plaintiff Spears from USAID on July 1, 2025.

162.    Plaintiff Morris is currently 63 years old and residing in Attleboro, Massachusetts. At the time of the relevant events, Plaintiff Morris worked as a Project Development Officer in USAID's Regional Program Office at the USAID's Regional Mission in Accra, Ghana. Plaintiff joined USAID in 1999 and worked at USAID until her termination through a pretextual RIF in 2025. Plaintiff Morris's work responsibilities included assisting technical officers with project design, serving as a COR for high profile youth leadership initiative, also serving as Regional Gender Advisor, helping technical teams monitor their projects, conducting joint site visits, helping mission staff with yearly reporting to Congress and portfolio reviews. During her tenure at USAID, Ms. Morris received numerous awards, and Plaintiff Morris's performance appraisals for the last year were satisfactory. USAID placed Plaintiff Morris on administrative leave on March 29, 2025, and terminated Plaintiff Morris on September 2, 2025.

163.    Plaintiff Berlinguette is currently 55 years old and residing in Bremerton, Washington. At the time of the relevant events, Plaintiff Berlinguette worked as a Director in USAID's General Development Office in Rabat, Morocco. Plaintiff Berlinguette joined USAID in 2010 and worked at USAID until his termination through a pretextual RIF in 2025. Plaintiff Berlinguette's USAID/Morocco responsibilities included overseeing a $115 million foreign assistance portfolio spanning economic growth, education, and governance; managing a team of 11 Moroccan and American staff; and coordinating strategic alignment with both the U.S. Government interagency and Moroccan government counterparts. During his tenure with USAID, Plaintiff Berlinguette received numerous awards, and Plaintiff Berlinguette's performance appraisals for the last year were satisfactory. USAID placed Plaintiff Berlinguette on administrative leave on February 23, 2025, and terminated Plaintiff Berlinguette from USAID on September 2, 2025.

164.    Plaintiff Waters is currently 42 years old and residing in Denver, Colorado. At the time of the relevant events, Plaintiff Waters worked as a Contracting Officer in USAID's Office of Acquisition and Assistance in Uganda. Plaintiff Waters joined USAID in 2018 and worked at USAID until her termination through a pretextual RIF in 2025. Plaintiff Waters's responsibilities included managing the procurement process by awarding, administering, and overseeing contracts and agreements with implementing partners while ensuring compliance with federal acquisition regulations and agency policies. During her tenure with USAID, Plaintiff Waters received numerous awards, and Plaintiff Waters's performance appraisals for the last year were satisfactory. USAID terminated Plaintiff Waters on December 30, 2025.

165.    Plaintiff Jeremy Meadows is currently 55 years old and resides in Arlington, Virginia. At the time of the relevant events, Plaintiff Meadows worked as the Deputy Director in Office of Democracy & Governance in USAID's West Bank/Gaza Mission. Plaintiff Meadows joined USAID in December 2008 and worked at USAID until his termination through a pretextual RIF in 2025. Plaintiff Meadows's responsibilities included overseeing the Peacebuilding Team, designing programs under the Middle East Partnership for Peace Act, and strategizing for MEPPA and possible USAID work in post-war Gaza. During his tenure with USAID, Plaintiff Meadows received numerous awards, and Plaintiff Meadows's performance appraisals for the last three years were satisfactory. USAID placed Plaintiff Meadows on administrative leave on February 23, 2025, and terminated Plaintiff Meadows on September 2, 2025.

166.    Plaintiff Nichole Graber is currently 48 years old and residing in Monument, Colorado.  At the time of the relevant events, Plaintiff Graber worked as an Office Director in USAID's Office of Humanitarian Assistance in San Salvador, El Salvador. Plaintiff Graber joined USAID in 2008 and worked at USAID until her termination through a pretextual RIF in 2025.

70

Plaintiff Graber's responsibilities included overseeing and monitoring a portfolio of $65 million in humanitarian assistance grants and representing USAID's Bureau of Humanitarian Assistance in El Salvador. During her tenure with USAID, Plaintiff Graber received numerous awards, and Plaintiff Graber's performance appraisals for the last year were satisfactory. USAID placed Plaintiff Graber on administrative leave on February 23, 2025, and terminated Plaintiff Graber from USAID on September 2, 2025.

167. Plaintiff Shu is currently 43 years old and residing in Fairbanks, Alaska. At the time of the relevant events, Plaintiff Shu worked as an Energy Division Chief in USAID's Bureau for Resilience, Environment, and Food Security's Center for Energy, Infrastructure and Cities in Washington, D.C. while stationed overseas in Tegucigalpa, Honduras. Plaintiff Shu joined USAID in 2010 and worked at USAID until his termination through a pretextual RIF in 2025. Plaintiff Shu's responsibilities included technical leadership in worldwide energy assistance, and coordination with the interagency on energy foreign assistance. During his tenure with USAID, Plaintiff Shu recently received numerous awards, and Plaintiff Shu's performance appraisals for the last year were satisfactory. USAID placed Plaintiff Shu on administrative leave on February 4, 2025, and terminated Plaintiff Shu from USAID on July 1, 2025.

168. Plaintiff Mulwanda is currently 47 years old and residing in Lithia, Florida. At the time of the relevant events, Plaintiff Mulwanda worked as a Controller in USAID's Office of Financial Management in the Guinea and Sierra Leone Mission. Plaintiff Mulwanda joined USAID in 2013 and worked at USAID until his termination through a pretextual RIF in 2025. Plaintiff Mulwanda oversaw USAID financial management and budget execution for the Guinea and Sierra Leone Mission serving as the senior financial advisor on fiscal policy, compliance, and resource allocation and representing USAID with Embassy leadership and auditors. During his tenure,

71

Plaintiff Mulwanda received numerous awards, and Plaintiff Mulwanda's performance appraisals for the last year were satisfactory. USAID placed Plaintiff Mulwanda on administrative leave on August 18, 2025, and terminated Plaintiff Mulwanda from USAID on September 2, 2025.

169. Plaintiff Cady is currently 42 years old and residing in Deerfield, MA. At the time of the relevant events, Plaintiff Cady worked as a Supervisory Private Enterprise Officer in USAID's Bureau for Africa Power Africa initiative for the Washington office. Plaintiff Cady joined USAID in 2011 and worked at USAID until July 2, 2025, termination through a pretextual RIF in 2025. Plaintiff Cady's responsibilities included overseeing the Health Electrification and Telecommunications Alliance. During her tenure with USAID, Plaintiff Cady received numerous awards, and Plaintiff Cady performance appraisals for the last year were satisfactory. USAID placed Plaintiff Cady on administrative leave on March 28, 2025, and terminated Plaintiff Cady from USAID on July 2, 2025.

170. Plaintiff Newton is currently 59 years old and residing in Reston, Virginia. At the time of the relevant events, Plaintiff Newton worked as a Deputy Director in USAID's Office of Environment in the Indonesia Mission. Plaintiff Newton joined USAID in 2012 and worked at USAID until his termination through a pretextual RIF in 2025. Plaintiff Newton's responsibilities included managing a team of 18 specialists who implemented the U.S. Government's foreign policy priorities in sustainable economic growth and environmental security through a five-year $300 million portfolio in cooperation with the host country and local governments and the private sector. During his tenure with USAID, Plaintiff Newton received numerous awards, and Plaintiff Newton's performance appraisals for all years were satisfactory. USAID placed Plaintiff Newton on administrative leave on February 5, 2025, and terminated Plaintiff Newton from USAID on March 27, 2025.

171.    Plaintiff Aaron is currently 53 years old and residing in Orlando, Florida. At the time of the relevant events, Plaintiff Aaron worked as a Supervisory Contracting Officer in USAID's Office of Acquisition and Assistance in USAID/Bangladesh. Plaintiff Aaron joined USAID in 2004 and worked at USAID until his termination through a pretextual RIF in 2025. Plaintiff Aaron's responsibilities included managing the USAID/Bangladesh Office of Acquisition and Assistance. During his tenure with USAID, Plaintiff Aaron received numerous awards, and Plaintiff Aaron's performance appraisals for the last year were satisfactory. USAID placed Plaintiff Aaron on administrative leave on June 9, 2025, and terminated Plaintiff Aaron from USAID on July 1, 2025.

172.    Plaintiff Kyle Abbattista is currently 44 years old and residing in Marietta, New York. At the time of the relevant events, Plaintiff Abbattista worked as a Program Officer in USAID's Office of Economic Growth in Ukraine. Plaintiff Abbattista joined USAID in 2016 and worked at USAID until her termination through a pretextual RIF in 2025. Plaintiff Abbattista's responsibilities included project design of economic growth awards, strategic planning for the office, monitoring and evaluation and ensuring reporting requirements for USAID DC and Congress were fulfilled. During her tenure with USAID, Plaintiff Abbattista received numerous awards, and Plaintiff Abbattista performance appraisals for the last year were satisfactory. USAID placed Plaintiff Abbattista on administrative leave on February 7, 2025, and terminated Plaintiff Abbattista from USAID on July 1, 2025.

173.    Plaintiff Abera is currently 51 years old and residing in Springfield, Virginia. At the time of the relevant events, Plaintiff Abera worked as a Contracting Officer and Deputy Office Director (and subsequently Director) of the Office of Acquisition and Assistance of USAID/Egypt. Plaintiff Abera joined USAID in 2016 and worked at USAID until his termination through a

pretextual RIF in 2025. As the cognizant Contracting/Agreement Officer at USAID/Egypt, Plaintiff Abera managed portfolios of over $640M supporting education and health programs. During his tenure with USAID, Plaintiff Abera received numerous awards, and Plaintiff Abera's performance appraisals for every year were satisfactory. USAID placed Plaintiff Abera on administrative leave on or about February 23, 2025, and terminated Plaintiff Abera from USAID on September 2, 2025.

174. Plaintiff Adelman is currently 44 years old and residing in Seattle, Washington. At the time of the relevant events, Plaintiff Adelman worked as a Health Officer in USAID's Office of Infectious Diseases/Global Health Bureau in Washington. Plaintiff Adelman joined USAID in 2010 and worked at USAID until her termination through a pretextual RIF in 2025. Plaintiff Adelman's responsibilities included overseeing a global USAID award focused on malaria control and representing USAID in partnership meetings with multilateral and private donors. During her tenure with USAID, Plaintiff Adelman received numerous awards, and Plaintiff Adelman's performance appraisals for the last year were satisfactory. USAID placed Plaintiff Adelman on administrative leave on February 7, 2025, and terminated Plaintiff Adelman from USAID on July 1, 2025.

175. Plaintiff Babcock is currently 44 years old and residing in Chautauqua, New York. At the time of the relevant events, Plaintiff Babcock worked as a Student at the U.S. Army War College in Carlisle, PA as part of USAID's Long Term Training program through the Office of Civil Military Coordination in Washington. Plaintiff Babcock joined USAID in 2010 and worked at USAID until her termination through a pretextual RIF in 2025. Plaintiff Babcock's responsibilities included representing USAID at the US Army War College, and serving as Program Office Director in Moldova, Education and Youth Deputy Director and Program Officer

in Jordan, Monitoring and Evaluation Specialist in Liberia, and Program Officer in the Democratic Republic of Congo and Washington DC. During her tenure with USAID, Plaintiff Babcock received numerous awards, and Plaintiff Babcock's performance appraisals for the last year were satisfactory. USAID placed Plaintiff Babcock on administrative leave on February 23, 2025, and terminated Plaintiff Babcock from USAID on September 2, 2025.

176.    Plaintiff Eugene Cooper is currently 53 years old and residing in Oakland, California. At the time of the relevant events, Plaintiff Cooper worked as a Senior Strategy Coordinator in USAID's Office of the Mission Director in the Democratic Republic of Congo. Plaintiff Cooper joined USAID in 2010 and worked at USAID until his termination through a pretextual RIF in 2025. Plaintiff Cooper's responsibilities included developing and implementing solutions for achieving Mission priority operational and cross-cutting programmatic objectives, as well as resolving core challenges, such as domestic travel, recruitment, and staff development. During his tenure with USAID, Plaintiff Cooper received numerous awards, and Plaintiff Cooper's performance appraisals for the last year were satisfactory. USAID placed Plaintiff Cooper on administrative leave on February 23, 2025, and terminated Plaintiff Cooper from USAID on September 2, 2025.

177.    Plaintiff Sarah Cooper is currently 47 years old and residing in Chico, California. At the time of the relevant events, Plaintiff Cooper worked as a Program Officer in USAID's Office of Programs in Dhaka, Bangladesh. Plaintiff Cooper joined USAID in 2017 and worked at USAID until her termination through a pretextual RIF in 2025. Plaintiff Cooper's responsibilities included overseeing performance monitoring, policy implementation, and partner coordination across a multi-sector development portfolio to strengthen accountability, inclusion, and program impact. During her tenure with USAID, Plaintiff Cooper received several awards, and Plaintiff

75

Cooper's performance appraisals for the last year were satisfactory. USAID placed Plaintiff Cooper on administrative leave on February 23, 2025, and terminated Plaintiff Cooper from USAID on September 2, 2025.

178.    Plaintiff Curtis is currently 50 years old and residing in Sebastopol, California. At the time of the relevant events, Plaintiff Curtis worked as the Director of the Economic Growth, Education and Energy Office until March 2025 after which he became USAID/Laos' Acting Country Representative. Plaintiff Curtis joined USAID in 2012 and worked at USAID until his termination through a pretextual RIF in 2025. Plaintiff Curtis's responsibilities included the planning, procurement, and execution of sector programming, supervision of office staff, coordination of programs with U.S. Embassy and donor partners, and consulting with relevant government counterparts. During his tenure with USAID, Plaintiff Curtis received numerous awards, and Plaintiff Curtis's performance appraisals for the last year were satisfactory. USAID placed Plaintiff Curtis on administrative leave on February 7, 2025, before identifying Plaintiff Curtis as essential on March 27, 2025, and terminating Plaintiff Curtis from USAID on September 2, 2025.

179.    Plaintiff Harris is currently 54 years old and residing in Cornelius, Oregon. At the time of the relevant events, Plaintiff Harris worked as Deputy Director in USAID's Office of Climate Change, Energy and Environment at USAID/Vietnam. Plaintiff Harris joined USAID in 2015 and worked at USAID until his termination through a pretextual RIF in 2025. Plaintiff Harris' responsibilities included directing environmental programs, managing a staff of 12, representing the U.S. Government in multilateral energy discussions, and leading the U.S. Government's disaster response efforts in Vietnam. During his tenure with USAID, Plaintiff Harris received numerous awards, and Plaintiff Harris' performance appraisals for the last year were satisfactory.

USAID placed Plaintiff Harris on administrative leave on February 7, 2025, and terminated Plaintiff Harris from USAID on September 2, 2025.

180. Plaintiff DaPra is currently 42 years old and residing in Arlington, Virginia. At the time of the relevant events, Plaintiff DaPra worked as a Division Chief for the Bureau of Humanitarian Assistance's Sudan and South Sudan Division in USAID's Office of Africa in. Plaintiff DaPra joined USAID in 2011 and worked at USAID until her termination through a pretextual RIF in 2025. Plaintiff DaPra's responsibilities included managing a $1 billion humanitarian assistance portfolio, leading and supervising multiple teams, and overseeing the planning, coordination, and delivery of humanitarian programs aligned with U.S. foreign policy and humanitarian principles. During her tenure with USAID, Plaintiff DaPra received multiple awards, and Plaintiff DaPra's performance appraisals for the last year were satisfactory. USAID placed Plaintiff DaPra on administrative leave on February 14, 2025, and terminated Plaintiff DaPra from USAID on September 2, 2025.

181. Plaintiff Davis is currently 47 years old and residing in Port Huron, Michigan. At the time of the relevant events, Plaintiff Davis worked as a Democracy, Human Rights and Governance Office Director in USAID's Office of Peace, Democracy and Governance in Mali. Plaintiff Davis joined USAID in 2008 and worked at USAID until her termination through a pretextual RIF in 2025. Plaintiff Davis's responsibilities included overseeing program implementation, coordinating with partners and stakeholders, and supporting political and institutional reform efforts in a complex, high-risk operating environment. During her tenure with USAID, Plaintiff Davis received numerous awards, and Plaintiff Davis's performance appraisals for the last year were satisfactory. USAID placed Plaintiff Davis on administrative leave on February 7, 2025, and terminated Plaintiff Davis from USAID on September 2, 2025.

182. Plaintiff Mary Edwards is currently 57 years old and residing in Germantown, Maryland. At the time of the relevant events, Plaintiff Edwards worked as a Deputy Regional Controller in USAID's West Africa Mission, Regional Office of Financial Management. Plaintiff Edwards joined USAID in 2012 and worked at USAID until her termination through a pretextual RIF in 2025. Plaintiff Edwards's responsibilities included leading fiscal operations for USAID/West Africa's $516 million portfolio across four countries and strengthening compliance and developing cross border financial systems that improved accountability and enabled high-impact program delivery. During her tenure with USAID, Plaintiff Edwards received awards, and Plaintiff Edwards's performance appraisals for the last year were satisfactory. USAID placed Plaintiff Edwards on administrative leave on February 7, 2025, until March 5, 2025, and terminated Plaintiff Edwards from USAID on September 2, 2025.

183. Plaintiff Paul E. Edwards is currently 58 years old and residing in Germantown, Maryland. At the time of the relevant events, Plaintiff Edwards worked as a Congressional Liaison Officer in USAID's Office of Legislative and Public Affairs in Washington. Plaintiff Edwards joined USAID in 2013 and worked at USAID until his termination through a pretextual RIF in 2025. Plaintiff Edwards's responsibilities included being one of the primary advisors to the Bureaus regarding relations with the Congress on USAID programs and policies and making recommendations for strategies to represent the Agency's position on issues before Congress. During his tenure with USAID, Plaintiff Edwards received numerous awards, and Plaintiff Edwards's performance appraisal for the last year was satisfactory. USAID placed Plaintiff Edwards on administrative leave on February 1, 2025, and terminated Plaintiff Edwards from USAID on July 1, 2025.

184.    Plaintiff Fox is currently 50 years old and residing in Shoreham, Vermont. At the time of the relevant events, Plaintiff Fox worked as the Director of the Amazon Regional Environment Program in USAID's Office of Environment in Lima, Peru. Plaintiff Fox joined USAID in 2009 and worked at USAID until his termination through a pretextual RIF in 2025. Plaintiff Fox's responsibilities included oversight of the South American Regional operating unit across six South American countries and concurrently serving as Deputy Director of the USAID/Peru Environmental office in Lima, Peru. During his tenure with USAID, Plaintiff Fox received several awards, and Plaintiff Fox's performance appraisal for the last year was satisfactory. USAID placed Plaintiff Fox on administrative leave on February 25, 2025, and terminated Plaintiff Fox from USAID on September 2, 2025.

185.    Plaintiff Gilpin is currently 47 years old and residing in Seattle, Washington. At the time of the relevant events, Plaintiff Gilpin worked as a Program Officer in USAID's Pacific Islands Mission. Plaintiff Gilpin joined USAID in 2010 and worked at USAID until his termination through a pretextual RIF in 2025. Plaintiff Gilpin's responsibilities included acting as Mission Director closing mission operations, and prior, led strategy, partnering, supervision of North Pacific projects and country coordinators. During his tenure with USAID, Plaintiff Gilpin received multiple awards, and Plaintiff Gilpin's performance appraisals for the last year were satisfactory. USAID placed Plaintiff Gilpin on administrative leave on February 27, 2025, and terminated Plaintiff Gilpin from USAID on September 2, 2025.

186.    Plaintiff Fraser is currently 49 years old and residing in Camarillo, California. At the time of the relevant events, Plaintiff Fraser worked as a Private Enterprise Officer of the Foreign Service in USAID's Office of Economic Growth, Agriculture, and Power in Nigeria. Plaintiff Fraser joined USAID in 2012 and worked at USAID until her termination through a

79

pretextual RIF in 2025. Plaintiff Fraser's responsibilities included leading the Private Sector Engagement and Power/Energy teams in Nigeria, promoting two-way trade with the United States, and improving electricity supply and access to Nigerians. During her tenure with USAID, Plaintiff Fraser received numerous awards, and Plaintiff Fraser's performance appraisals for the last year were satisfactory. USAID placed Plaintiff Fraser on administrative leave on February 7, 2025, and terminated Plaintiff Fraser from USAID on September 2, 2025.

187.    Plaintiff Globerson is currently 46 years old and residing in Yvoire, France. At the time of the relevant events, Plaintiff Globerson worked as a Supervisory General Development Officer in USAID's General Development Office at the Regional Development Mission for Asia (RDMA) in Bangkok, Thailand. Plaintiff Globerson joined USAID in 2007 and worked at USAID until his termination through a pretextual RIF in 2025. Plaintiff Globerson's responsibilities included overseeing a $126.7 million portfolio, on the Economic Growth, Vulnerable Populations, Engineering, and Program Management Teams. During his tenure with USAID, Plaintiff Globerson received numerous awards, and Plaintiff Globerson's performance appraisals for the last year were satisfactory. USAID placed Plaintiff Globerson on administrative leave on February 23, 2025, and terminated Plaintiff Globerson from USAID on July 1, 2025.

188.    Plaintiff Travis Ray Guymon is currently 49 years old and residing in Lenore, Idaho. At the time of the relevant events, Plaintiff Guymon worked as a Private Sector Engagement Officer in USAID's Power Africa Office, Private Sector Engagement Team in Washington. Plaintiff Guymon joined USAID in 2010 and worked at USAID until his termination through a pretextual RIF in 2025. Plaintiff Guymon's responsibilities included managing Power Africa's private-sector partnerships by overseeing a 200 plus company portfolio, advancing U.S. clean energy engagement in African power markets, and aligning private-sector, interagency, and

climate priorities across the initiative. During his tenure with USAID, Plaintiff Guymon received numerous awards, and Plaintiff Guymon's performance appraisals for the last year were satisfactory. USAID placed Plaintiff Guymon on administrative leave on February 7, 2025, and terminated Plaintiff Guymon from USAID on July 1, 2025.

189. Plaintiff Hall is currently 45 years old and is residing in Jacksonville, Florida. At the time of the relevant events, Plaintiff Hall worked as the Program Office Director at USAID Zambia. Plaintiff Hall joined USAID in 2012 and worked at USAID until her termination through a pretextual RIF. Plaintiff Hall's responsibilities included strategic direction; management and execution of a $367 million annual budget; monitoring, evaluation and learning for results; project design and management; and communications–including ad hoc and annual reporting to Congress, among others. During her tenure with USAID, Plaintiff Hall received multiple awards, and Plaintiff Hall's performance appraisals for the last year were satisfactory. USAID placed Plaintiff Hall on administrative leave on February 7, 2025, and terminated Plaintiff Hall from USAID on September 2, 2025.

190. Plaintiff Hieronimus is currently 55 years old and residing in Baltimore, Maryland. At the time of the relevant events, Plaintiff Hieronimus worked as a Deputy Office Director in USAID's Office of Economic Growth in USAID/Tanzania. Plaintiff Hieronimus joined USAID in 2016 and worked at USAID until his termination through a pretextual RIF in 2025. Plaintiff Hieronimus's responsibilities included supervising a staff of sixteen Americans and Tanzanians and designing and overseeing USAID/Tanzania's agriculture, water, energy, trade, finance, and natural resource programming representing an annual budget, among others. During his tenure with USAID, Plaintiff Hieronimus received numerous awards, and Plaintiff Hieronimus' performance appraisals for the last year were satisfactory. USAID placed Plaintiff Hieronimus on

81

administrative leave on February 23, 2025, and terminated Plaintiff Hieronimus from USAID on September 2, 2025.

191.    Plaintiff Hoffman is currently 50 years old and residing in Silver Spring, Maryland. At the time of the relevant events, Plaintiff Hoffman worked as the Office Director in USAID's Office of Public Health in Burma. Plaintiff Hoffman initially joined USAID in 2009, departed the Agency in 2014, and was reinstated as a foreign service officer in 2021. She then worked at USAID until her termination through a pretextual RIF in 2025. Plaintiff Hoffman's responsibilities included management and oversight of a $44 million health portfolio and team of 12 international and local professionals supporting HIV, TB, maternal and child health programs across Burma. During her tenure with USAID, Plaintiff Hoffman received numerous awards, and Plaintiff Hoffman's performance appraisals for the last year were satisfactory. USAID placed Plaintiff Hoffman on administrative leave on February 23, 2025, and terminated Plaintiff Hoffman from USAID on September 2, 2025.

192.    Plaintiff Huynh is currently 45 years old and residing in San Francisco, California. At the time of the relevant events, Plaintiff Huynh worked as the Director of the Program Office in USAID's Mission in Madagascar. Plaintiff Huynh joined USAID in 2008 and worked at USAID until his/her September 2, 2025, termination through a pretextual RIF in 2025. Plaintiff Huynh's responsibilities included supporting the Mission Director in overall strategy, operations, external engagement, and managing a $500 million foreign assistance portfolio. During her tenure with USAID, Plaintiff Huynh received numerous awards and Plaintiff Huynh performance appraisals for the last year were satisfactory. USAID placed Plaintiff Huynh on administrative leave on February 7, 2025, and terminated Plaintiff Huynh from USAID on September 2, 2025.

193.    Plaintiff Iceland-Leitzel is currently 46 years old and resides in Agoura Hills, California. At the time of the relevant events, Plaintiff Iceland-Leitzel worked as Deputy Director of the Executive Office of USAID's Regional Development Mission for Asia in Bangkok, Thailand. Plaintiff Iceland-Leitzel joined USAID in 2010 and worked at USAID until her termination through a pretextual RIF in 2025. Plaintiff Iceland-Leitzel's responsibilities included leading regional operations and business services for USAID in Thailand and its client missions, advising mission leadership, coordinating interagency engagement, and providing surge operational support across the agency. During her tenure with USAID, Plaintiff Iceland-Leitzel received numerous awards, and Plaintiff Iceland-Leitzel performance appraisals for the last year were satisfactory. USAID placed Plaintiff Iceland-Leitzel on administrative leave from February 7, 2025, through March 9, 2025 and terminated Plaintiff Iceland-Leitzel from USAID on September 2, 2025.

194.    Plaintiff Menard is currently 54 years old and residing in Saint Augustine, Florida. At the time of the relevant events, Plaintiff Menard worked as a Supervisory Program Officer for USAID Nigeria in Abuja, Nigeria. Plaintiff Menard joined USAID in 2009 and worked at USAID until his termination through a pretextual RIF in 2025. Plaintiff Menard led strategic program design, monitoring and evaluation, managed congressionally approved program budgets, and served as a primary liaison with government counterparts on USAID bilateral agreements while supporting technical teams overseeing U.S. foreign assistance programs. During his tenure with USAID, Plaintiff Menard received multiple numerous awards, and Plaintiff Menard's performance appraisals for the last year were all satisfactory. USAID placed Plaintiff Menard on administrative leave on February 4, 2025, and terminated Plaintiff Menard from USAID on September 2, 2025.

195.    Plaintiff Marcus is currently 54 years old and residing in Fort Collins, Colorado. At the time of the relevant events, Plaintiff Marcus worked as the director of USAID's Office of Economic Growth in Guatemala. Plaintiff Marcus joined USAID in 2008 and worked at USAID until his termination through a pretextual RIF in 2025. Plaintiff Marcus's responsibilities included managing economic growth programs at five overseas USAID missions, including most recently directing a team of 18 staff who managed an annual portfolio of $40 million. During his tenure with USAID, Plaintiff Marcus received numerous awards, and Plaintiff Marcus's performance appraisals for the last year were satisfactory. USAID placed Plaintiff Marcus on administrative leave on February 4, 2025, and terminated Plaintiff Marcus from USAID on September 2, 2025.

196.    Plaintiff Pons is currently 47 years old and is residing in Kenwood, California. At the time of the relevant events, Plaintiff Pons worked as a Director in USAID's Program Office in USAID/Indonesia. Plaintiff Pons joined USAID in 2010 and worked at USAID until her termination through a pretextual RIF in 2025. In her role as a Program Office Director, Plaintiff Pons' responsibilities included translating U.S. foreign policy and development priorities into effective, accountable programs. Specifically, she managed strategy, budgets, and results; ensured compliance with Congressional and Administration requirements; and coordinated with host governments, partners, and U.S. agencies to keep programs aligned, funded, and delivering impact. During her tenure with USAID, Plaintiff Pons received several awards, and Plaintiff Pons' performance appraisals for the last year were satisfactory. USAID placed Plaintiff Pons on administrative leave on February 7, 2025, and terminated Plaintiff Pons from USAID on September 2, 2025.

197.    Plaintiff Reilly is currently 54 years old and residing in Harpswell, Maine. At the time of the relevant events, Plaintiff Reilly worked as a Senior Advisor and Analyst in USAID's

GeoCenter in Washington, D.C. Plaintiff Reilly joined USAID in 2007 and worked at USAID until his termination through a pretextual RIF in 2025. Plaintiff Reilly's responsibilities in the GeoCenter included strategic planning, performance reporting, budget formulation, and coordinating geospatial support for USAID missions. During his tenure with USAID, Plaintiff Reilly received numerous awards, and Plaintiff Reilly's performance appraisal for the last year was satisfactory. USAID placed Plaintiff Reilly on administrative leave on February 23, 2025, and terminated Plaintiff Reilly from USAID on July 1, 2025.

198. Plaintiff Roden is currently 50 years old and residing in Birmingham, Alabama. At the time of the relevant events, Plaintiff Roden worked as a Senior Development Advisor to the J-5 in the US Africa Command, a joint military command of the U.S. Department of Defense responsible for planning and conducting military operations across Africa to achieve U.S. national security objectives. AFRICOM is in Stuttgart, Germany where he lived and worked. Plaintiff Roden joined USAID in 2009 and worked at USAID until his termination through a pretextual RIF in 2025. Plaintiff Roden responsibilities included providing direct counsel to senior military leaders on integrating development, humanitarian, and economic resilience considerations into theater strategy, among others. During his tenure with USAID, Plaintiff Roden received numerous awards, and Plaintiff Roden's performance appraisals for the last year were satisfactory. USAID placed Plaintiff Roden on administrative leave on February 7, 2025, and terminated Plaintiff Roden from USAID on June 1, 2025.

199. Plaintiff Rowell is currently 49 years old and residing in Waynesville, Missouri. At the time of the relevant events, Plaintiff Rowell worked as a Country Support Officer in USAID's Feed the Future Office of Country Implementation under the Bureau of Resilience, Environment, and Food Security in Washington, D.C. Plaintiff Rowell joined USAID in 2013 and worked at

USAID until his termination through a pretextual RIF in 2025. Plaintiff Rowell's responsibilities included providing technical assistance to USAID Missions across Africa, Asia, and Latin America in agriculture, environment, nutrition, and resilience, among others. During his tenure with USAID, Plaintiff Rowell received numerous awards, and Plaintiff Rowell's performance appraisals for the last year were satisfactory. USAID placed Plaintiff Rowell on administrative leave on February 23, 2025, and terminated Plaintiff Rowell from USAID on July 1, 2025.

200.    Plaintiff Scott is currently 47 years old and residing in Madison, Wisconsin. At the time of the relevant events, Plaintiff Scott worked as an Office Director in USAID's Sustainable Ecosystems and Economic Development Office in Bogota, Colombia. Plaintiff Scott joined USAID in 2009 and worked at USAID until his termination through a pretextual RIF in 2025. Plaintiff Scott's responsibilities included leading the largest technical USAID Office in LAC, working towards the successful implementation of the 2016 Colombian Peace Accord. During his tenure with USAID, Plaintiff Scott received multiple awards, and Plaintiff Scott's performance appraisals for the last year were satisfactory. USAID placed Plaintiff Scott on administrative leave on February 7, 2025, and terminated Plaintiff Scott from USAID on September 2, 2025.

201.    Plaintiff Stefan is currently 44 years old and residing in Portland, Oregon. At the time of the relevant events, Plaintiff Stefan worked as Team Lead for Democracy and Governance in USAID's Regional Education and Democracy Office in the Southern Africa Regional Mission. Plaintiff Stefan joined USAID in 2010 and worked at USAID until his termination through a pretextual RIF in 2025. Plaintiff Stefan's responsibilities included overseeing the design and management of a $63m portfolio of projects, managing a team of 4 professionals, and representing USAID with host governments in 7 countries. During his tenure with USAID, Plaintiff Stefan received multiple Distinguished Honor, Superior Honor, and Meritorious Honor Awards and three

Meritorious Step Increases in recognition of his performance. Plaintiff Stefan's performance appraisals for the last year were satisfactory. USAID placed Plaintiff Stefan on administrative leave on February 23, 2025, and terminated Plaintiff Stefan from USAID on September 2, 2025.

202.    At all material times, USAID employed the Plaintiffs at its principal place of business in Washington, D.C. All other agencies and departments named as defendants are headquartered in Washington, D.C.

203.    Defendant Department of Government Efficiency (DOGE) is a component of the Executive Office of the President established by Executive Order 14158, *Establishing and Implementing the President's "Department of Government Efficiency"* (Jan. 20, 2025) (quotation marks in original).

204.    Defendant Amy Gleason is Acting Administrator of DOGE. Plaintiffs sue Administrator Gleason in her official capacity.

205.    Defendant Scott Kupor is Director of Office of Personnel Management (OPM). Plaintiffs sue Director Kupor in his official capacity.

206.    Defendant Marco Rubio is Secretary of State. Defendant Rubio served as the Acting Administrator of USAID from February 3, 2025 to August 29, 2025. Plaintiffs sue Secretary Rubio in his official capacity.

207.    Defendant Russell Vought is Director of Office of Management and Budget (OMB). Director Vought currently serves as USAID's Acting Administrator. Plaintiffs sue Director Vought in his official capacity.

**ALLEGATIONS COMMON TO ALL CLAIMS**

### A. *Plaintiffs' Employment*

208. Defendant departments, agencies, and officers are responsible under the Constitution, statutes and regulations for establishing and administering personnel policies, and applying them to Plaintiffs, including all protections afforded by ADEA.

209. Plaintiffs are also entitled to Administrative Leave Act protections, which state that "during any calendar year, an agency may place an employee in administrative leave for a period of not more than a total of 10 work days." 5 U.S.C. § 6329a; *see also* 5 C.F.R. 630.1404, *Calendar year limitation*.

### B. *Defendants' Inaccurate and Denigrating Generalization about Age are an Essential Element to the Pretextual RIF and the Agency's Restructuring*

210. ADEA requires that "all personnel decisions affecting" federal employees or applicants for federal employment "be made free from any discrimination based on age." 29 U.S.C. § 633a(a).

211. Statements and actions that show age-based bias in employment actions serve as direct evidence of ADEA violation.

212. Defendants supported and promoted Plaintiffs' terminations from federal workforce through a public campaign that boasted about injecting young blood into the federal workforce to replace older employees.

213. Namely, DOGE officials, many of whom were advertised by Defendants to be qualified solely because they were in their twenties or thirties, directly oversaw Plaintiffs' terminations.

214. Senior government officials described the DOGE staff in charge of carrying out the RIF as "young gun management consultants coming in to take a critical look at how things are

88

run." Chris Megerian, *See Musk expands his power in Washington as he dodges scrutiny over DOGE actions*, PBS, (Feb. 9, 2025, at 1:21PM ET), https://www.pbs.org/newshour/politics/musk-expands-his-power-in-washington-as-he-dodges-scrutiny-over-doge-actions.

215.    Defendants' apparently engaged in a review of federal workers' social security data, which would have disclosed directly or indirectly their age, to carryout mass terminations and forced retirements. Indeed, President Trump explicitly stated that he was very proud of the job that "this group of young people," were doing to eliminate workers. *Young Aides Emerge as Enforcers in Musk's Broadside Against Government*, NYTIMES, (Feb. 7, 2025), https://www.nytimes.com/2025/02/07/us/politics/musk-doge-aides.html.

216.    President Trump also directly supported the DOGE's actions on the termination of employees because DOGE's head could be trusted, as "[h]e attracts a young, very smart type of person;" thus, the Executive branch and the President specifically made age related comments that endorsed DOGE's claims seeking to equate youth as having the skill and vigor to reshape and replace parts of the federal workforce. *Id*.

217.    As the Defendants' derogatory language towards older workers reverberated, other high-ranking officials adopted and endorsed the same age-based messaging to justify the terminations at USAID. Sources close to the administration boldly stated that: "[t]his is a Gen Z, millennial takeover of the federal government," adding that DOGE, by conducting mass firings, was addressing "the geriatric, the kind of nursing home regime that has been pushing the country into oblivion. Now the young guns are taking over the country for the better." Christine Fernando, *Republicans idolize DOGE's Gen Z techies: 'The young guns are taking over the country for the better,'* Fortune, (Feb. 25, 2025, at 4:43AM ET) https://fortune.com/2025/02/25/republicans-idolize-doge-gen-z-techies-young-guns-taking-over-country/.

218.   The Defendants also supported and advanced a public messaging campaign to cite the youth of the those terminating Plaintiffs as a generational battle.

219.   The Defendants promoted the work of DOGE staff that "helped dismantle [the] agency," by coordinating messaging that emphasized the age of the DOGE staff in charge of shutting down USAID, building a false narrative of "young man goes to Washington," and emphasizing the DOGE staff's computer and engineering skills as a proxy for age, to justify the firings to the public. *See e.g.*, Chris Bowling, *From UNL to DOGE: Nebraska prodigy's role in Musk overhaul shocks, pleases back home,* Flatwater Free Press, (Feb. 12, 2025) https://flatwaterfreepress.org/from-unl-to-doge-nebraska-prodigys-role-in-musk-overhaul-shocks-pleases-back-home/.

220.   This youth-based messaging permeated the DOGE team, creating the image that youth was replacing dotard and waste related conduct of older workers at USAID. Andrew Miller, *Meet the young team of software engineers slashing government waste at DOGE: report,* Fox News, (Feb. 4, 2025, at 6:29PM EST) https://www.foxnews.com/politics/meet-young-team-software-engineers-slashing-government-waste-doge-report.

221.   Collectively, Defendants relied upon an age-based narrative to promote the termination of the Plaintiffs, replete with ageist tropes and stereotypes, the exact evil that the ADEA was designed to eradicate.

222.   In furtherance of these efforts, experienced older workers were subject to denigrating pronouncements, the closure of their offices and the taunts of the DOGE staff, who were given unprecedented access to the personnel and Privacy Act protected files of USAID workers. Older workers were battered by attacks on their integrity and competence and were

90

constructively discharged by being given no duties or assignments for months on end. These conditions were coupled with public efforts to force the workers to quit the Agency itself.

223.    Further, the discriminatory actors knew and in fact intended to create a work environment so odious that no older worker could foresee a future at USAID in the federal government. This was shown by the manner in which the terminations, which were masked as reductions in force, were carried out.

224.    Workers were placed on involuntary administrative leave, recalled form assignments, denied access to agency systems, denied access to leadership positions, provided conflicting notices on their obligations, and were actively enticed to resign.

225.    Older workers, who faced far more limited external career opportunities, but who may have been short of retirement or who would lose retirement benefits were particularly at risk. Unlike younger employees, the lack of other federal opportunities combined with the reality that as older employees they would face greater hardships in the private sector. Their bargaining power, due to age, would be reduced and the loss of federal seniority and retirement benefits, the bedrock of the civil and foreign service competitiveness would be lost.

226.    Defendants openly referred to federal workers as "dinosaurs," a term that inherently refers to obsolescence and extinction, due to environmental change. No legitimate doubt can exist as to the motivations of the discriminatory actors who were arrogant and abusive in their disdain for older workers. *Young Aides Emerge as Enforcers in Musk's Broadside Against Government*, NYTIMES, (Feb. 7, 2025) https://www.nytimes.com/2025/02/07/us/politics/musk-doge-aides.html.

227.    Indeed, older workers were subjected to the spectacle of a 19-year-old Musk DOGE placed employee known as "Big Balls" taking on significant roles in their terminations, with the juvenile description being publicly lauded and promoted by the Defendants.

228.    Adolescent DOGE employees were placed in senior roles at State Department and the Department of Homeland Security, emphasizing the disregard for skills and tenure for youth. Faiz Siddiqui, John Hudson, Isaac Stanley-Becker, *19-year-old Musk surrogate takes on roles at State Department and DHS,* Wash. Post (Feb. 10, 2025) https://www.washingtonpost.com/business/2025/02/10/musk-doge-state-department-surrogate/.

229.    Indeed, Defendants let it be known that even if the workers remained, they would be under the tutelage of younger supervisors, who viewed their longevity not as an asset but an impediment.

230.    The EEOC has found that an agency's succession plan violates the ADEA when the decisionmaker simplistically develops the view that younger employees are better than older employees.

231.    The Defendants ignored the obligation to develop or implement requirements that take into account merit, longevity, and seniority to grant merit promotions that will deliver a healthy, lawful succession plan, and instead used a pretextual RIF that was unlawfully reduced to: younger employees are better than older employees.

### C. *Defendants' Statements Evince an Age-Related Discriminatory Animus.*

232.    Beginning its ascension to power on January 20, 2025, Trump Administration officials surmised that USAID's senior staff, based on age alone, was disloyal to the President and that they were engaged in meaningless work that wasted taxpayer money while supporting policies

that were criminal and immoral. While there was a political element to these attacks, the Administration fused age and federal tenure with criminality and sloth.

233. President Trump issued Executive Order 14210, *Implementing the President's "Department of Government Efficiency" Workforce Optimization Initiative* (Feb. 11, 2025). DOGE carried out its perceived mandate by using inexperienced young acolytes of Elon Musk to access personnel records and identify federal workers for removal.

234. The order instructed DOGE, OPM, OMB, and agency heads to "promptly undertake preparations to initiate large-scale reductions in force (RIFs)." *Id*.

235. Elon Musk, then leading DOGE, stated that "USAID is a criminal organization" and that it was time "for it to die." *See* (@elonmusk), X (Feb. 2, 2025, 12:20 PM), https://x.com/elonmusk/status/1886102414194835755?lang=en.

236. He further stated that he would work to feed the Agency "into the woodchipper." Elon Musk (@elonmusk), X (Feb. 3, 2025, 1:54 AM), https://x.com/elonmusk/status/1886307316804263979?s=46.

237. White House deputy chief of staff Stephen Miller specifically equated prolonged and career federal service with radical ideology. Thus, he equated time in the federal service with a statist ideology that opposed the Administration. Age and tenure meant opposition, echoing the "Deep State" ideology of the political right and the idea to terrorize and remove career employees and replace them with younger ideologues more conducive to a unified executive theory that replaced merit with patronage.

238. While such theories discussed partisanship, they equated age and career status to illegality.

239.    Mr. Miller stated: "Overwhelmingly, the *career federal service* in this country is far left, left-wing."  (emphasis supplied). *Jake Tapper left stunned as Stephen Miller explains why Trump ordered a surprise freeze on federal spending*, DAILY MAIL (Jan. 29, 2025), https://www.dailymail.co.uk/media/article-14336461/Jake-Tapper-Stephen-Miller-trump-freeze-fed-spending.html.

240.    Peter Marocco, USAID's Deputy Administrator, also equated longevity and age to partisan opposition.

241.    Mr. Marocco terminated Plaintiffs based on their seniority and longevity at USAID, a proxy for age.

242.    Defendants animated such public reports to make the work environment at USAID so objectively intolerable so as to compel any reasonable older worker to resign, as opposed to face prosecution for their longevity of work for USAID.

243.    Mr. Marocco oversaw Plaintiffs' forced placement on administrative leave and termination because he believed older workers who were responsible for the lineage of work at USAID should be punished for perceived misconduct and what amounted to criminal activity.

244.    So plain was the hostility to career employees that officials openly discussed creating objectively intolerable working conditions though "shock and awe," a term used in the Bush Administration's attacks on Iraq, that were designed to topple and remove its leadership. Anna Barry-Jester and Brett Murphey, *Trump Officials Celebrated With Cake After Slashing Aid. Then People Died of Cholera*, ProPublica (Dec. 15, 2025, at 5:30AM) https://www.propublica.org/article/usaid-cholera-deaths-trump-humanitarian-aid-cuts-south-sudan. Using war-based terminology against career workers could only be seen as an intentional effort to threaten, intimidate, and humiliate them.

245.    In their glee to terrorize the career workers at USAID, officials ignored legal protections, undoubtedly as an expression of their power and as part of an effort not to legitimately reorganize an agency, but to signal the abandonment of process for result.

246.    ADEA, 29 U.S.C. §623, makes it unlawful for any employer

(1) to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age;[or]

(2) to limit, segregate, or classify his employees in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's age…

247.    The Federal Government is subject to the specific mandate of 29 U.S.C. §633a, which provides:

All personnel actions affecting employees or applicants for employment who are at least 40 years of age (except personnel actions with regard to aliens employed outside the limits of the United States) in military departments as defined in section 102 of Title 5 *[5 U.S.C. § 102]*, in executive agencies as defined in section 105 of Title 5 *[5 U.S.C. § 105]* (including employees and applicants for employment who are paid from nonappropriated funds), in the United States Postal Service and the Postal Regulatory Commission, in those units in the government of the District of Columbia having positions in the competitive service, and in those units of the judicial branch of the Federal Government having positions in the competitive service, in the Smithsonian Institution, and in the Government Printing Office, the Government Accountability Office, and the Library of Congress shall be made free from any discrimination based on age. (emphasis supplied).

248.    Thus the ADEA prohibits the federal government from discriminating against its employees aged forty or older on the basis of age, 29 U.S.C. § 633a(a), and from retaliating against them for complaining about age discrimination, 29 U.S.C. § 623(d). *See Gomez–Perez v. Potter,* 553 U.S. 474, 479 (2008). ADEA's prohibition on age discrimination, moreover, takes two forms: it bars federal employers from taking age-based adverse employment actions against their employees, and it bars them from subjecting their employees "to 'discriminatory intimidation, ridicule, and insult' that is 'sufficiently severe or pervasive to alter the conditions of the victim's

employment and create an abusive working environment.' " *Baloch v. Kempthorne,* 550 F.3d 1191, 1201 (D.C. Cir. 2008) (citing *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)).

249.    To prevail on an ADEA discrimination claim, the plaintiffs must establish (1) that they "suffered an adverse employment action" and (2) that their employers took that action "because of" their age. *Brady v. Office of Sergeant at Arms,* 520 F.3d 490, 493 (D.C. Cir. 2008).

250.    In the instant action, several factors stand out. First, none of the Plaintiffs were removed from their positions for conduct or performance-based issues.

251.    Second, none of the Plaintiffs were provided with any coherent rationale for their termination by the Agency, which relied on specious and vague claims of the need to remove the Plaintiffs, which were often contradictory in nature or fostered by "departments" without identifying the person or persons who made the decisions.

252.    Third, to the extent the Plaintiffs were given an explanation it centered around a purported lack of work, although Plaintiffs learned that the U.S. State Department, was hiring younger workers to perform the roles that the Plaintiffs had been performing, and simultaneously, that these newly hired employees, were not being provided the seniority-based pay and benefits that the Plaintiffs possessed.

253.    While the Agency would contend that the removal of Plaintiffs was part of some sanctioned Reduction in Force, in reality the Agency was (in coordination with the U.S. Department of State and other Defendants) performing a sleight of hand, whereby, the claimed virtual abolition of USAID was really a ruse to replace senior career Foreign Service employees, who garnered additional pay, benefits and employment-based protections due to their longevity, with younger, non-career employees, who would lack the protections of being Foreign Service personnel.

254.    Combined with the actions cited in the remainder of the complaint, the sum and substance of the Defendants actions were to create a severe, pervasive, hostile work environment that followed the initial discriminatory acts of the campaign to demean, demoralize and drive from the ranks of federal employment older workers, including Plaintiffs, to replace them with younger workers with less benefits.

255.    Further, the entire effort to remove Plaintiffs was an act of discrimination, *ab initio*.

256.    Adding to this this debasement of employees based on age, has been the continuing violation expressed in the Defendants hiring of younger workers and the apparent advisement issued by the Defendants that former older  USAID employees, might be black-listed from being hired to wind down USAID or to serve in other federal agencies, although their skills and experience make them amply more qualified for such openings.

**D.    *The rollout of the Deferred Resignation Program ("DRP") illustrates that Age Discrimination was at play in the Defendants' Decision Making.***

257.    During the initial assault on USAID, which commenced almost immediately upon the inauguration of the new Administration, Defendants created a "Deferred Resignation Program", whose specific purpose was to induce federal workers, more specifically older workers to surrender their employment rights by resigning from the federal service.

258.    The DRP then did not correspond with the need to reduce employees based on any objective metric, other than to have such workers resign and thus create a voluntary resignation and avoid the protections such workers would possess to challenge any termination under the Civil Service Reform Act, the Civil Rights Acts or the Foreign Service Act.

259.    In other words, the DRP was specifically designed to foster the resignation of employees, who were being threatened at the outset of the new Administration with an employer-directed removal.

260.    The terms of the DRP were not based on a valid statutory authority nor did they serve the efficiency of the federal service.

261.    The DRP, instead, promised to place employees on paid administrative leave until September 30, 2025.

262.    The offer then sought to induce, at taxpayer expense and with no benefit to the federal government, employees to simply surrender their "for cause" rights to challenge their being removed from the federal service, in return for a promise to pay them to perform no duties of any kind.

263.    The DRP was oddly called the "Fork in the Road" offer, what fork in what road was never explained, but it was clearly designed to convey to workers that they could face removal before the September 30 date.

264.    The DRP was mass mailed to federal employees and claimed to offer federal employees the right to be placed on administrative leave with pay until September 30, 2025, if they agreed to unequivocally and irrevocably resign from the federal service, while surrendering their rights under the Civil Service Reform Act of 1978 and the Foreign Service Act.

265.    Investigative reporting left little doubt that the Fork in the Road letter was crafted by DOGE and mirrored its titular leader, Elon Musk's, strategy for dismantling the workforce at Twitter, when he purchased that company. *See*, David Dayen, *Elon Musk offers federal workers an unauthorized buyout*, Prospect, (Jan. 29, 2025) https://prospect.org/2025/01/29/2025-01-29-elon-musk-offers-federal-workers-unauthorized-buyout.

266.    The DRP was targeted toward and overwhelmingly affected older workers, with the vast majority of the 154,000 workers who accepted the offer being at or near retirement age. *See*, Meryl Kornfield, Hannah Natanson and Laura Meckler, *The federal government is paying*

98

*more than 154,000 people not to work,* Wash. Post, (July 31, 2025), https://www.washingtonpost.com/politics/2025/07/31/federal-workers-doge-buyout-paid/.

267.    On information and belief, the actual creation of the "Fork in the Road" offer was itself left to relative juveniles at DOGE, who used it to further implement a culture of youth and remove older employees. *See Shadows of Musk in the government's buyouts plan,* NYTimes (January 29, 2025) https://www.nytimes.com/2025/01/29/business/dealbook/musk-trump-federal-buyouts.html; Vittoria Elliot, *Elon Musk lackeys have taken over Office of Personnel Management,* Wired, (Jan. 28, 2025) https://www.wired.com/story/elon-musk-lackeys-office-personnel-management-opm-neuralink-x-boring-stalin/; Fortune, *Top hires in Trump's Office of Personnel Management reportedly include a 21-year-old and a freshly graduated high-schooler* (Jan. 29, 2025) https://fortune.com/2025/01/29/top-hires-donald-trump-office-of-personnel-management-high-school-graduate-gen-z-elon-musk/.

268.    The DRP was clearly an employment exit incentive that was part and parcel of a group termination.

269.    The DRP's ageist nature was further enhanced by the fact that it directly impacted retirement benefits because it was coupled with an OPM approved Voluntary Early Retirement Authority ("VERA") that applied only "as part of the deferred resignation program." Erich Wagner, *OPM will grant VERA authority to all agencies, as confusion around 'deferred resignation' program continues,* Government Executive, (Jan. 31, 2025) https://www.govexec.com/workforce/2025/01/opm-will-grant-vera-authority-all-agencies-confusion-around-deferred-resignation-program-continues/402662/.

*E.* ***Violations of the Older Workers Benefit Protection Act cement the fact that the Agency committed Age Discrimination***

270.    Congress enacted the Older Workers Benefit Protection Act ("OWBPA"), 29 U.S.C. § 626, to ensure older workers are fully informed of the conditions under which their employers are terminating them from employment. The Act was specifically designed to and does protect older workers from making a sudden decision to accept releases of their ADEA rights under pressure or misinformation from their employer, by requiring that all waivers and releases of age discrimination claims be knowing and voluntary.

271.    Thus, when an employer, including a federal agency terminates older employees in a "group" termination, the employer must, among other protections, provide the older workers with 45 days to consider any agreements.

272.    The employer must also provide the older employee with disclosures that expressly show the ages and the classification of each older worker that is terminated as part of the group termination and "the ages of all individuals in the same job classification or organizational unit who are not eligible or selected for the program." 29 U.S.C. § 626(f).

273.    The same requirements apply when a federal agency offers employees "an exit incentive program" under Section 7 of ADEA.

274.    The language of such agreements must be drafted in such a manner that it is calculated to be understood by an average employee with no legal training.

275.    Defendants offered Plaintiffs various exit incentives throughout the RIF process, including but not limited to, the DRP.

276.    DRP was an exit incentive offered as part of a group termination.

277.    DRP was an agency decision that directly impacted retirement benefits because USAID received OPM approval to offer VERA only "as part of the deferred resignation program."

278.    Defendants did not provide Plaintiffs with any of the disclosures required by the OWBPA, which are also required under EEOC regulations set forth at 29 C.F.R. § 1625.22, containing the agency-specific information, in carrying out the DRP program at USAID.

279.    Since the DRP was of questionable legal authority, its offering to older employees was invariably a violation of the ADEA.

280.    In fact, the Defendants never substantiated the legality of the DRP itself and made no assurances that an employee would in fact remain on paid administrative leave through September 30, 2025.

281.    Nor did the Defendants ensure employees would not be recalled during the period of their paid administrative leave.

282.    On information and belief some employees were recalled, thus the agreed upon benefit was illusory and any waiver invalid.

283.    In addition, the Defendants never cited any specific legal authority for the "Fork in the Road" to begin with.

284.    In fact, the most recent amendments to the Administrative Leave Act, and the corresponding OPM regulations enforcing them on January 16, 2025, limited use of administrative leave to no more than ten days in any calendar year. 5 U.S.C. §6329a.

285.    Congress declared, as part of its actual Congressional purpose, a desire to restrict the use of Administrative Leave to a specified period of ten days. Indeed, the Act which unequivocally stated that "[d]uring any calendar year, an agency may place an employee in administrative leave for a period of not more than a total of 10 work days" *See* 5 U.S.C. §6329a (b)(1).[5]

---

[5] Congress authorized OPM to merely enact regulations to carry out the intent to limit administrative leave. Subsection 6329a(c) states:

286.    Congressional intent seems to have been frustrated by the OPM policy on Administrative Leave. While Congress clearly sought to limit its use to ten days and placed no exceptions to that limitation. OPM "interpreted" the Act to state that: "Federal agencies have the discretion to grant paid administrative leave to employees to help manage their workforces when it is in their best interest to do so." *See* OPM, Administrative Leave, Investigative Leave, and Notice Leave, 89 Fed. Reg. 102256, 102285 (Dec. 17, 2024).

287.    The flexibility given to agencies in using paid administrative leave reflects the fact that heads of Executive agencies "have broad authority to manage their organizations, including the authority to grant administrative leave, unless prohibited by law." OPM Memorandum of January 20, 2025, *Guidance on Probationary Periods, Administrative Leave and Details,* revised March 4, 2025.

288.    OPM concluded that "[p]lacing an employee on paid administrative leave may be an appropriate action where the agency component in which the employee works is being eliminated or restructured, or where the agency weighs changes to the individual's role at the agency as part of a workforce realignment. It also may be appropriate when a new agency manager determines that the absence of the employee from the office 'is in the interest of the agency or of the Government as a whole.'" *Id*. (citing to 5 C.F.R. § 630.1403(a)(1)).

---

"Not later than 270 calendar days after the date of enactment of this section, the Director of the Office of Personnel Management shall-
(A) prescribe regulations to carry out this section; and
(B) prescribe regulations that provide guidance to agencies regarding-
    (i) acceptable agency uses of administrative leave; and
    (ii) the proper recording of-
(I) administrative leave; and
(II) other leave authorized by law."

OPM has used that language as a vehicle to simply gut Congress's explicit intent.

289.    The placement on administrative leave altered the workplace conditions of Plaintiffs, and while it reached other employees of USAID, it disproportionately impacted older workers. Senior career employees were given no meaningful work, and they were never notified why they were on administrative leave, what the duration would be, who made the decision, under what authority and for what specific purpose. Their skills languished and they were uncertain as to when they would actually be removed. Particularly for workers reaching or coming close to initial retirement eligibility, the application of administrative leave felt and was a coercive act designed to force them to quit the ranks.

290.    The use of paid administrative leave was really a constructive discharge as older workers were suddenly faced with the prospect that they would be discharged at some point in the future with a substantial loss of retirement and seniority-based benefits.

291.    Administrative leave would combine with an improper application of a reduction in force, to divest employees over 40 who had worked at USAID for decades from not only obtaining full retirement benefits, but from having prospects of other employment of any kind.

292.    Defendants made no effort to provide guidance, retraining, access to other opportunities or positions in the federal government, provision of positive employment reviews, access to matters the employees had worked on for their employer or even a chain of command for guidance or reference purposes.

293.    Instead, the Defendants used a combination of intimidation, harassment, removal of job assignment, bars to consideration to the federal employment and a denigration of the Plaintiffs to terrorize and abuse them. Unlike workers under 40, Plaintiffs would have severely reduced options for other employment at similar levels of pay, benefits, or responsibility, and all

employees who had not reached mandatory retirement age from the federal government would and did lose benefits.

294.    Further while on administrative leave, Defendants made no efforts to even discuss with older employees how to transition to other opportunities, how to ensure the least loss of benefits or have to address their uncertain futures. In fact, Plaintiffs were denied any human resources or Equal Opportunity guidance or avenues for significant periods because the Defendants shuttered those resources.

295.    Plaintiffs made no effort to comply with the ADEA or the OWBPAP, and they did not disclose to Plaintiffs the job titles and ages of all individuals eligible or selected for the DRP and other exit incentives, and the ages of all individuals in the same job classification or organizational unit who are not eligible or selected for such programs.

296.    The Defendants also ensured that Plaintiffs' waiver of rights and claims under ADEA were not "knowing and voluntary" by suspending retirement consultations that would have informed Plaintiffs of their full retirement rights, citing issues with "the current operational environment," even though any logistical challenges in providing such support and consultation was animated by the Agency's own decision to rush mass terminations.

297.    In fact, USAID's Human Capital and Talent Management ("HCTM") and USAID's Employee and Labor Relations ("ELR") offices largely ignored desperate requests for guidance from February 3, 2025, to the present.

298.    Older workers are entitled to rely on Agency responses even after separation and retirement.

299.    Yet during the DRP, the Administrative Leave, and then with Plaintiffs' subsequent removal under a claimed reduction in force, the Plaintiffs received no formal guidance or responses of any kind from the Agency.

300.    All agency managerial guidance, and department went dark, including those responsible for ensuring compliance with the ADEA and OWBPA, as well as those in the personnel area that could guide employees on how these actions were impacting their seniority and retirement benefits. Employees who wanted to determine other employment options were denied access to even their own records, with both offices responding to Plaintiffs' inquiries regarding their rights and benefits with automated messages that informed Plaintiffs that they are unlikely to receive an individualized response in time.

301.    Even more confusing to the Plaintiffs, after the Agency provided a notice that the Plaintiffs would be removed as part of a claimed reduction in force, Plaintiffs received "Go Forward Options," which purported to allow them the option to return to active employment to assist the "Agency's draw down staffing." At the same time, they were notified that the U.S. State Department would assume the responsibility for the administration of parts of their agency's life-saving and strategic aid programming after the draw down phase.

302.    The Agency's "Go Forward Options" also served as an exit incentive program offered as part of a group termination.

303.    Because the Go Forward exit incentive created the presumption, and a bleak glimmer of hope, that USAID staff slated for departure might be able to retain their jobs if they cooperate with the transition, Plaintiffs delayed focusing on their retirement options or pursuing other jobs; the Agency's failure to comply with OWBPA's requirements in offering such exit incentive also deprived Plaintiffs of their rights under ADEA.

304.    Like the DRP, the Go Forward Options also failed to comply with OWBPA's requirements regarding offering exit incentives during group layoffs because the Agency has failed to disclose statistical information about the age and job classification of those offered the option, has failed to ensure that the advantages and disadvantages of participating in that program were transparently disclosed, and failed to comply with OWBPA's 45-day notice to older workers to give them ample time to consider whether they would like to participate in the Go Forward Options.

305.    As to the reduction in force, Plaintiffs were notified that some workers would be released in July and some in September, adding to the confusion and to the sense of pretext that the Agency was acting without rhyme, reason, or justification and was more concerned with creating a climate of uncertainty than addressing its obligations, particularly to older workers.

306.    With respect to the reduction in force, the Defendants also deprived older workers of their employment rights when they disregarded the requirements for creating a valid and accurate retention register.

307.    Defendants distributed late retention registers, filled with substantive and material errors, including mislabeling many Plaintiffs' RIF dates, years of creditable service, and providing insufficient information on how final government service points were calculated.

308.    Because Defendants viewed seniority as a proxy for age, they refused to comply with the retention register requirements, knowing that compliance with those requirement would have meant that the older, most seasoned, and experienced staff would have been retained which would have undermined the Defendants' goal of reducing the older workforce at the Agency.

309. Defendants failed to create and distribute retention registers that adopt correct categorization or reflect a valid business judgment for the RIF, thereby creating a legitimate inference of pretext and discrimination.

310. Defendants' failure to comply with retention register requirements is an aggravating factor because Defendants did indeed retain Plaintiffs' positions after claiming that those positions were not being retained, as exhibited through Defendants' active and ongoing rehiring for the same positions but under different classifications.

311. After deciding to replace Plaintiffs with a younger workforce, the Agency also systematically and unlawfully suspended its statutory mandated, structured, and merit-based promotion process. *See* ADS Chapter 463; *see also* 22 U.S.C. §§ 3965–3966.

312. While USAID had initiated the 2025 promotion process in January of 2025 and could have concluded this process before the RIF termination dates, the Agency suspended the ongoing promotion process in April of 2025 to deprive Plaintiffs of the professional and financial benefits of promotion and hinder their future employability.

313. Promotions are directly linked to pay and benefits both in the federal service and for retirement purposes. The grade at which an employee retires, as well as the longevity of service directly impact retirement pay and other federal benefits.

314. Whether by gross negligence or through intentional design, the entire agency's wind-up process amounted to actionable discrimination against older workers.

315. Collectively, these pre-termination violations, (which, among others, include failure to comply with OWBPA's disclosure and timeliness requirements, failure to provide adequate retirement benefits consultations during the RIF, failure to adequately and correctly prepare a retention register, and failure to comply with the promotion requirements) establish that

Defendants intended to manufacture the circumstances under which Plaintiffs could not have been retained, opening the door for replacing them with younger employees.

316.    Defendants did not provide Plaintiffs with any supplemental notices to comply with the disclosures required by the OWBPA and the applicable EEOC regulations at 29 C.F.R. § 1625.22, containing the agency-specific information, in carrying out the DRP program at USAID.

317.    Plaintiffs did not disclose to Plaintiffs the job titles and ages of all individuals eligible or selected for the program, and the ages of all individuals in the same job classification or organizational unit who are not eligible or selected for the program.

318.    The Defendants' actions meant that no waiver of rights and claims under ADEA for any personnel action were "knowing and voluntary." Taken separately or as pattern of behavior, the Agency's actions deprived the Plaintiffs of their rights to determine whether any action or the acceptance of any action was based on reality or was merely a cynical effort to force mass terminations, which by design and impact affected older workers far more severely.

319.    The failure of the Agency to see its actions as "exit incentives" in nature is the sole responsibility of the Defendants. There can simply be no knowing and voluntary nature to any act of Plaintiffs when the Defendant denied them of facts to form knowledge and denied them of choice or access to information that might have rendered any potential decision voluntary.

320.    Glaringly, USAID's HCTM and ELR offices remained silent in the face of written requests, and the Agency made no effort to transfer the duties of these entities to another agency such as the State Department or OPM.

321.    When an employer forecloses access to essential information in its possession, it can hardly be heard to argue that such malfeasance is not evidence of discriminatory intent or animus.

322.    In this case, Plaintiffs' inquiries regarding their rights and benefits were met with automated nonresponsive messages. Their increasingly frantic requests for guidance on their rights and benefits were attended to by an empty call service.

323.    Whether this abrogation of responsibility was the result of ineptitude or was intentional, it conveyed to the Plaintiffs that the Defendants had only disdain for them. In short, the Agency's own conduct in ignoring its duties is proof not only of discriminatory animus and intent, but it displays a further desire to tell Plaintiffs that they have been effectively terminated, regardless of their paid-leave status.

324.    Such conduct was and is a constructive termination.

325.    Plaintiffs paid leave status was merely designed to avoid allowing them the right to directly challenge the Agency's actions as adverse.

326.    Nevertheless, the Plaintiffs understood that the Agency had completely abandoned them and was inflicting a type of psychological pressure designed to force those who could retire to retire and those who were older but had yet to retire to resign or face continued uncertainty.

327.    Indeed, as part of this harassment, the Agency notified Plaintiffs that they were being RIFed, then issued "Go Forward Options," which included the option to continue working for the Agency.

328.    The Defendants declared the Plaintiffs as surplusage and advised them they were being terminated due to a reorganization and transfer of function, while at the same time stating that the State Department would assume the responsibility for the administration of USAID's former functions. And the State Department has, on information and belief, assumed functions and hired employees to perform the same duties the Plaintiffs were performing.

329. On information and belief these new State Department positions are disproportionately staffed by younger workers or workers who lack seniority-based benefits and who are working for lower rates of pay than the Plaintiffs.

### F. Ongoing Post-termination Violations

330. Even after the decisions to terminate Plaintiffs, Defendants continue to use proxies to rehire a substantially younger staff at the Department of State and dissuade older workers like Plaintiffs from re-applying or re-joining the federal workforce.

331. On March 28, 2025, the Department of State announced that USAID's foreign assistance programs would be curtailed and moved to State. Dep't of State, *On Delivering an America First Foreign Assistance Program* (Mar. 28, 2025), https://www.state.gov/on-delivering-an-america-first-foreign-assistance-program/.

332. That day, Agency employees received a notice from Deputy Administrator Jeremy Lewin, "USAID's Transition to the State Department," stating that the Department "will seek to retire USAID's independent operation," and that the Department will assume responsibility for any Agency program not terminated in full. *See,* Dep't of State, USAID's Final Mission (Mar. 28, 2025, at 12:19PM), https://www.politico.com/f/?id=00000195-de57-dc25-a3b7-deffc6eb0000.

333. This notice of an upcoming RIF did not reassign Agency employees and instead informed them that the State Department would conduct its own "independent hiring process," only "available for eligible USAID employees." *Id*.

334. The State Department offered well more than three hundred Agency employees positions with State, but neither State Department nor USAID disclosed the transfer and hiring process for these transitioning employees, to establish compliance with required competitive hiring processes.

335. After terminating Plaintiffs under the guise that their work is no longer needed, the State Department now seeks to rehire and has rehired younger personnel with far less experience, to carry out the same work at State, establishing that Plaintiffs' skills and experience are still needed and therefore their termination was discriminatory.

336. Namely, the State Department has used and continues to use non-competitive and non-transparent mechanisms to rehire for the same positions but with different retirement incentives, including hiring institutional contractors, hiring through Schedule A Excepted Service Appointments, and Limited Non-Career Appointments ("LNA").

337. Defendants are using these mechanisms to rehire for positions that are same and similar to Plaintiffs which Defendants falsely claimed were being eliminated completely due to inefficiency and waste.

338. Applicants hired as LNAs perform the same work but are excluded from the Foreign Service Pension System ("FSPS").

339. Institutional contractors also do not receive the same retirement benefits while performing the same functions as Plaintiffs.

340. This systematic change in classification for the same jobs tends to disadvantage the employees who are less likely, solely due to their age, to apply and occupy the same role they previously had and therefore adversely affects them—the very definition of disparate impact.

341. Upon information and belief, after recruiting younger employees to perform the same functions as Plaintiffs under these classifications that are intentionally less attractive to older workers, the State Department is then converting the positions into direct hires.

342. The State Department has used this mechanism because its unique pension and retirement benefit classification discourages the older workers who were previously RIFed,

including Plaintiffs, from re-applying and to dissuade older workers re-applying from returning to work.

343.    USAID and the State Department have also adopted other specific screening processes to selectively exclude workers over the age of 40 from returning to the Agency in other capacities, including allowing Ambassadors and mission directors to offer positions to selective USAID employees with no transparency or adherence to normal competitive hiring processes or compliance with ADEA and OWBPA.

344.    Even though Plaintiffs possess extensive experience and qualifications in carrying out USAID's mission in a non-political manner, the Agency terminated them as punishment for their seniority and experience due to their age.

345.    Defendants are currently hiring for the same and similar services that Plaintiffs provided through job postings that explicitly preclude anyone with previous USAID experience.

346.    Defendant Department of State also updated its Foreign Service Test, in the aftermath of the RIF, to require future applicants to certify that they were not part of the USAID RIF, a clear indication of Defendants' intent to exclude Plaintiffs from future jobs.

347.    Defendants' continuing engagement in this illegal action is also exhibited through their attempts to rehire for Plaintiffs' positions but unlawfully narrowing candidates to exclude employees that were previously subject to the RIF, the majority of whom were over the age of 40.

348.    Defendants also excluded USAID employees from participating in career transition programs such as Career Transition Assistance Plan ("CTAP") and Interagency Career Transition Assistance Plan ("ICTAP") to ensure that targeted employees were ejected from public service altogether.

349.    The termination officers at USAID are continuing to circumvent competitive hiring by hiring institutional contractors to conduct the same work that was labeled as wasteful and inefficient when Plaintiffs' jobs were RIFed but explicitly barring anyone "with previous USAID experience" from being considered and justifying the decision by deploying classically ageist descriptor of looking for "a fresh workforce." Michael Igoe, *USAID bars its own experts from agency closeout jobs*, Devex, (Jan. 29 , 2026) https://www.devex.com/news/usaid-bars-its-own-experts-from-agency-closeout-jobs-111779.

350.    Defendants are excluding Plaintiffs from future employment opportunities because Plaintiffs were terminated due to their age and experience, and not because their positions were being eliminated (as the Defendants had claimed).

351.    These actions directly damaged the Plaintiffs' post termination job prospects and continue to harm them to this day.

352.    Defendants have treated Plaintiffs with intentional cruelty, denigrating their age and length of service, and subjecting them to a prolonged campaign of severe, pervasive, and hostile misconduct to dissuade from working for the federal government. OMB Director Vought set forth the strategy of targeted abuse when he stated that he wished employees such as Plaintiffs to be traumatized: "[W]e want them to not want to go to work because they are increasingly viewed as the villains." *See*, Stephen Engelberg, *The October Story That Outlined Exactly What the Trump Administration Would Do to the Federal Bureaucracy,* PROPUBLICA, (Mar. 20, 2025, at 7:00AM), https://www.propublica.org/article/propublica-russell-vought-prophetic-trump-second-term.

353.    Plaintiffs suffered harm as a result of terminations as a direct result of Defendants' undeniable animus and discrimination.

354. As Defendants' ongoing recruitment policies reflect, absent the Court's intervention, Plaintiffs will continue to suffer in their future employment as well.

355. Plaintiffs suffered harm as the foreseeable result of these unlawful acts, including back pay and benefits, lost wages and retirement credits, loss opportunities for promotion, costs of seeking reemployment and relocation, physical and emotional distress, and damage to personal and professional reputation.

## CLAIMS

### COUNT ONE
**Discrimination Based on Age in Violation of ADEA,  29 U.S.C. § 633a (Disparate Treatment- Pretextual RIF)**
**(Against all Defendants)**

356. Plaintiffs incorporate all preceding paragraphs.

357. All Plaintiffs are members of the protected class under ADEA.

358. ADEA protects federal employees against any adverse personnel decision that is tainted by age discrimination.

359. Plaintiffs suffered an adverse employment action in form of a forced administrative leave and a pretextual RIF that denied them their retirement benefits, ultimately causing their termination.

360. Defendants' antecedent decisions leading up to the RIF, including (1) determining which employees should be subject to the RIF, (2) the process for notifying Plaintiffs of the RIF and their age-related rights and benefits, and (3) Defendants' actions in finalizing Plaintiffs' terminations were tainted by age discrimination and violate ADEA.

361. These specific actions include, among others, failure to comply with OWBPA's disclosure requirements throughout the RIF process, failure to adequately prepare a correct retention roster with competitive criteria, improper suspension of the Agency's promotion cycle,

failure to provide adequate retirement benefits counseling throughout the RIF process, and adopting a nontransparent and selective system for rehiring, retaining, and reassigning employees.

362. Defendants failed to comply with established procedures or criteria for ensuring Plaintiffs' age-related rights and benefits remain secured because they intended to eliminate older workers from the Agency.

363. Defendants did not have any legitimate, nondiscriminatory reasons for the pretextual termination or failing to comply with the age-related legal safeguard prior to the RIF decision, because there was no decline in demand for Plaintiffs' work, as evidenced by Defendants' rehiring for the same positions but with fewer incentives for older workers to apply, and there was no valid emergency justifying the failure to comply with established ADEA-related procedures and criteria.

364. As a direct and proximate result of the discriminatory acts and Defendants' conduct, Plaintiffs have suffered and continue to suffer emotional and mental distress, anguish, humiliation, pain, anxiety, in addition to economic loss associated with loss of their employment and denial of future employment opportunities.

365. In addition, the Agency created a severe, pervasive, and hostile work environment which was tied to its discriminatory acts, animus, and intent.

366. Defendants knew that their conduct was prohibited by the ADEA and showed a reckless disregard for whether it was prohibited.

367. Because age was a factor in the following personnel decisions, Plaintiffs are entitled to all remedies under ADEA including reinstatement, backpay, and liquidated damages.

## COUNT TWO
## Discrimination Based on Age in Violation of ADEA, 29 U.S.C. § 633a (Disparate Impact-Pretextual RIF)
### (Against all Defendants)

368.    Plaintiffs incorporate all preceding paragraphs.

369.    All Plaintiffs are members of the protected class under ADEA.

370.    ADEA protects federal employees against employment practices that are facially neutral in their treatment of older workers if their impact, in fact, falls more harshly on older employees and the decision cannot be justified by business necessity.

371.    Plaintiffs suffered an adverse employment action in form of a pretextual RIF that caused their termination and adversely impacted older workers at the Agency.

372.    Defendants' antecedent decisions leading up to the RIF, including determining which employees should be subject to the RIF, the process for notifying Plaintiffs of the RIF and their age-related rights and benefits (including the incentives offered to exempt employees from termination), and finalizing their termination has caused statistical disparities harming older workers, including Plaintiffs, in favor of substantially younger workers.

373.    These specific actions which caused disparate impact include also failure to comply with OWBPA's disclosure requirements throughout the RIF process, failure to adequately prepare a correct retention roster with competitive criteria, improper suspension of the Agency's promotion cycle, failure to provide adequate retirement benefits counseling throughout the RIF process, and adopting a nontransparent and selective system for rehiring, retaining, and reassigning employees.

374.    Defendants' continuing policies of rehiring at the Department of State for positions identical or similar to Plaintiffs but through classifications that tend to disfavor older workers and through explicit demand to exclude workers with prior USAID experience also violated ADEA by causing disparate impact on Plaintiffs as older workers.

116

375.     As a direct and proximate result of the discriminatory acts and Defendants' conduct, Plaintiffs have suffered and continue to suffer emotional and mental distress, anguish, humiliation, pain, anxiety, in addition to economic loss associated with loss of their employment and denial of future employment opportunities.

376.     Defendants knew that their conduct was prohibited by the ADEA and showed a reckless disregard for whether it was prohibited.

377.     Plaintiffs are entitled to all remedies under ADEA including reinstatement, backpay, and liquidated damages.

## COUNT THREE
### Violation of the Older Worker Benefits
### Protection Act Amendments (OWBPA) to the ADEA, (Mandatory Disclosures in Group Layoffs (29 U.S.C. § 626(f)(1)(H))
### (Against Defendants USAID and DOS and their Acting Officials)

378.     Plaintiffs incorporate all preceding paragraphs.

379.     The OWBPA requires that employers take certain mandatory legal steps before engaging in a group termination of older workers, including making sure that any exit incentive provided during a group layoff does not discriminate against older workers.

380.     OWBPA also imposes mandatory disclosures that ensure older workers have the right to assess whether mass layoffs are disproportionately affecting them so they can timely protect their rights.

381.     When multiple employees are laid off or offered exit incentive packages, the employer must disclose the ages and job titles of both the individuals selected for such incentive packages and those who are not selected.

382.     Defendants knew that they were participating in a group termination of older workers protected by OWBPA but failed to comply with its requirements.

117

383.    Defendants' offer to participate in the Deferred Resignation Program is an exit incentive offered in the context of group layoff.

384.    Defendants' offer to Plaintiffs to continue working as a part of the draw-down staff, in lieu of focusing on finding alternative employment, while their RIF dates were pending is an exit incentive offered in the context of a group layoff.

385.    Defendants failed to comply with the OWBPA requirements in offering the exit incentives, including disclosing the mandatory statistical information about the age and job classifications of those being terminated and those retained and giving Plaintiffs adequate time to review each exit incentive offered.

386.    Defendants failed to comply with OWBPA's requirements because adequate disclosure would have shown that Defendant were engaging in a pattern and practice of age discrimination.

387.    Had the Defendants complied with OWBPA and Plaintiffs had known the true facts surrounding the Agency's termination and retention decisions, it would have impacted each Plaintiffs' decision-making.

388.    As a direct and proximate result of Defendants' conduct, Plaintiffs have suffered damages that entitles them to backpay, compensatory damages, and the equitable remedy of rescinding the termination.

## COUNT FOUR
**Discrimination Based on Age in Violation of ADEA, 29 U.S.C. § 623(a)(2) (Unlawful Classification)**
**(Against all Defendants)**

389.    Plaintiffs incorporate all preceding paragraphs.

390.    Under ADEA, it is unlawful for a federal agency employer to classify his employees in any way which would deprive or tend to deprive any individual of employment

opportunities or otherwise adversely affect their status as an employee, because of those employees' ages.

391.    USAID terminated its older employees under the guise that their positions were not being retained only to rehire for the same positions but under different classification that tend to discourage older workers from reapplying and therefore adversely impacting their status due to their age.

392.    Plaintiffs are continuing to suffer harm as a result of these actions, including loss of future employment opportunities and loss of retirement benefits as the result of pretextual termination of their positions under the false justification that positions were being eliminated.

### COUNT FIVE
**Discrimination Based on Age in Violation of ADEA, 29 U.S.C. § 623(a)(2) (Constructive Discharge through Intolerable Conditions)**
**(Against all Defendants)**

393.    Plaintiffs incorporate all preceding paragraphs.

394.    Plaintiffs are protected under ADEA against adverse actions that give rise to inference of discrimination based on age.

395.    Defendants constructively discharged Plaintiffs because of their age by deliberately making Plaintiffs' working conditions intolerable to force them to quit their job.

396.    Defendants deliberately promoted a public smear campaign to create a narrative that (1) Plaintiffs were among the class of older employees' whose work amounted to waste and (2) that Defendants' decision to terminate Plaintiffs was justified because the decisions were being made by a cadre of younger, more tech-savvy employees, who were charged with rejuvenating the federal workforce—the definition of unlawful ageist workforce planning.

397.    Defendant's public messaging campaign against the older workforce adopted and promoted ageist code words traditionally prohibited by the EEOC as in violation of ADEA.

398.    ADEA protects older federal employees against calculated efforts to pressure them into resignation through the imposition of unreasonably harsh conditions that are intended to convince older employees that they are no longer welcomed at the workplace.

399.    Defendants collectively created conditions around the RIF that were so unpleasant and difficult for older employees that a reasonable person in Plaintiffs' position would have felt compelled to leave the Agency.

400.    As a direct and proximate result of the discriminatory acts and Defendants' conduct, Plaintiffs have suffered and continue to suffer emotional and mental distress, anguish, humiliation, pain, anxiety, in addition to economic loss associated with loss of their employment and denial of future employment opportunities and any associated retirement benefits.

**COUNT SIX**
**Violation of the Administrative Leave Act**
**(Against all Defendants)**

401.    Plaintiffs incorporate all preceding paragraphs.

402.    The Administrative Leave Act prevents Defendants from placing an employee on administrative leave for more than a total of ten calendar days. *See* 5 U.S.C § 6329a(b)(1).

403.    Defendants forced Plaintiffs on administrative leave from February 4, 2025, and for more than ten calendar days.[6]

404.    Congress amended the Administrative Leave Act to indicate that an agency's decision to keep an employee on administrative leave for more than ten days is an admission that the employee is subject to a disciplinary action or under investigation for misconduct.

---

[6] USAID notified Plaintiffs Lucas, Pearson, Daly, Ekpe, Nenon, Begeal, Lee and Waters that they were essential employees who are required to work, and only these aforementioned named Plaintiffs were not on administrative leave for more than ten calendar days.

120

405.    The Administrative Leave Act only authorizes keeping employees on administrative leave for more than ten calendar days in special cases in which employees are provided with clear evidence that the agency determined that an extended investigation is necessary.

406.    Because Congress views placement on administrative leave for more than ten days as evidence of ongoing investigation for disciplinary action, the Act requires that the employer's notice to the employee placed on leave informs the employee of a notice period of a proposed adverse action against the employee, ending on the date on which an agency may take adverse action. *See id.*

407.    Plaintiffs' placement on administrative leave for more than ten days is an admission that the termination was not a *bona fide* RIF but rather, an adverse action carried out without notice and opportunity to respond, disguised as a RIF.

408.    Plaintiffs suffered harm due to this action, including being denied notice, the opportunity to respond, and the opportunity to perform their duties for more than ten calendar days, which in turn impacted their performance reviews, employment benefits, and ability to find suitable employment after termination.

## COUNT SEVEN
### Violation of the Administrative Procedure Act
### (Against all Defendants)

409.    Plaintiffs incorporate all preceding paragraphs.

410.    USAID is an agency within the meaning of the Administrative Procedure Act.

411.    Under the APA a court shall hold unlawful and set aside agency action that is arbitrary, capricious, an abuse of discretion, not in accordance with law, contrary to constitutional

rights, in excess of statutory authority, or short of statutory right. *See* 5 U.S.C. §§ 551(1), 706(2)(A)-(C).

412.    The Agency's decision to force Plaintiffs on administrative leave and then terminate them is a final agency action subject to APA review, as it marks the consummation of the Agency's decision-making process, and impacts Plaintiffs' rights—from which "legal consequences" flow. *See Bennett v. Spear*, 520 U.S. 154, 178 (1997).

413.    The termination decision is arbitrary and capricious under the APA because it was pretextual, detached from any review of Plaintiffs' individual performance, and without any rational connection between the grounds charged and the interest assertedly served by terminating these employees.

414.    The termination decision is not in accordance with law and was made in excess of statutory authority and short of statutory right because it violated Plaintiffs' rights under ADEA.

415.    Plaintiffs' terminations ought to be set aside under the APA as arbitrary, capricious, and abusive of the Agency's discretion and not in accordance with ADEA.

## **PRAYERS FOR RELIEF**

WHEREFORE, Plaintiffs pray that this Court grant relief against Defendants as follows:

A.      Find Plaintiffs' termination from USAID unlawful as it violated (1) the ADEA (2), the Administrative Leave Act; and (3) the Administrative Procedure Act;

B.      Enjoin Defendants from enforcing Plaintiffs' unlawful terminations;

C.      Enjoin Defendants from taking action to enforce guidance, including specifically by Defendant OPM, that could prevent Plaintiffs' as future applicants for positions due to their prior experience with USAID;

D.      Order Defendants USAID and/or the State Department to individually evaluate Plaintiffs' performance during their tenure, and for the Chief Human Capital Officer (or equivalent) of either Defendant to declare under oath and seal the individualized reason and documentation underpinning that termination, and why Plaintiffs cannot be reinstated to their previous positions with full back pay and front pay awarded;

E.      Enjoin Defendants USAID and/or the State Department from rehiring for positions similar or identical to positions for which Plaintiffs are qualified, without notifying the Court, and giving Plaintiffs the chance to be restored to those similar positions;

F.      Order Defendants USAID and/or the State Department to update Plaintiffs' personnel files, including their SF-50s, to reflect that their terminations were not performance- or conduct-based and make any necessary correction to Plaintiffs' retirement status as reflected in their SF-50s;

G.      Provide leave to add additional Plaintiffs by motion, or any method approved by the Court; and

H.     And award Plaintiffs back pay and front pay, all associated benefits, compensatory and liquidated damages, along with attorneys' fees and costs, and any other damages as trial may establish. Further, Plaintiff demands judgment against Defendant for punitive damages, plus interest, and any other additional relief as the nature of the case may require and which this Honorable Court shall deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury for all issues so triable.

Dated: March 18, 2026                          Respectfully submitted,

/s/ *Kevin E. Byrnes*
Kevin Byrnes, Esq. (D.C. Bar No. 480195)
Kiarash Rahnama Moghaddam, (D.C. Bar No. 1645325)
**Fluet**
1751 Pinnacle Drive, Suite 1000
Tysons, Virginia 22102
T : (703) 590-1234
F : (703) 590-0366
kbyrnes@fluet.law
krahnama@fluet.law
e-file@fluet.law

*Counsel for Plaintiffs*

124