**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

WILLIAM BRADLEY, *et al.*,

       Plaintiffs,

   v.

UNITED STATES AGENCY FOR
INTERNATIONAL DEVELOPMENT, *et al.*,

       Defendants.

Case No. 1:26-cv-00950-RC

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS' RULE 12(b)(1) and 12(b)(6) MOTION TO DISMISS**

**TABLE OF CONTENTS**

INTRODUCTION..................................................................................................... 1

BACKGROUND ...................................................................................................... 3

LEGAL STANDARD .............................................................................................. 6

ARGUMENT............................................................................................................ 7

I.  ALL CLAIMS AGAINST NON-USAID DEFENDANTS AND ALL CLAIMS ALLEGING ADVERSE EMPLOYMENT ACTIONS BEFORE APRIL 24, 2025 FALL OUTSIDE OF THE COURT'S JURISDICTION AND SHOULD BE DISMISSED UNDER RULE 12(B)(1). ............... 7

A.  Plaintiffs Cannot Show Standing to Sue the State Department, OPM, OMB, and USDS Defendants. ...................................................................... 7

B.  Plaintiffs' Claims Alleging Adverse Employment Decisions Taken by Defendants Prior to April 24, 2025 are Untimely. ............................................... 10

II.  PLAINTIFFS FAIL TO STATE A CLAIM AS TO ANY COUNT UNDER RULE 12(B)(6).......... 11

A.  Counts One and Two Fail to State a Claim Under the ADEA. ........................... 11

B.  Counts Three and Five Fail to State a Claim Under OWBPA and the ADEA ................................................................................................. 13

C.  Count Four Alleging a Violation of the ADEA due to Unlawful Classification is Without Merit. .......................................................... 15

D.  Count Six Alleging a Violation of the Administrative Leave Act is Without Merit. ............................................................................................. 16

E.  Plaintiffs Fail to State a Claim under the APA in Count Seven......................... 18

CONCLUSION ....................................................................................................... 19

# TABLE OF AUTHORITIES

**CASES**

*AFSA v. Baker*,
    895 F.2d 1460 (D.C. Cir. 1990) ......................................................................................... 3, 4

*Alexander v. Sandoval*,
    532 U.S. 275 (2001) ...................................................................................................... 14, 17

*Arbaugh v. Y & H Corp.*,
    546 U.S. 500 (2006) .............................................................................................................. 6

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) .............................................................................................................. 7

*Babb v. Wilkie*,
    589 U.S. 399 (2020) ............................................................................................................ 12

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ................................................................................................. 7, 15, 16

*Bowen v. Massachusetts*,
    487 U.S. 879 (1988) ............................................................................................................ 18

*Breen v. Chao*,
    253 F. Supp. 3d 244 (D.D.C. 2017) ............................................................................... 12, 13

*Ctr. for Biological Diversity v. U.S. Dep't of Interior*,
    144 F.4th 296 (D.C. Cir. 2025) ............................................................................................. 8

*DaimlerChrysler Corp. v. Cuno*,
    547 U.S. 332 (2006) .............................................................................................................. 8

*Gill v. Whitford*,
    585 U.S. 48 (2018) ................................................................................................................ 8

*Godwin v. Sec'y of Hous. & Urb. Dev.*,
    356 F.3d 310 (D.C. Cir. 2004) ............................................................................................ 18

*Gonzaga Univ. v. Doe*,
    536 U.S. 273 (2002) ...................................................................................................... 14, 17

*Greene v. USAID*,
    No. 25-cv-4217-SLS (D.D.C. 2025) ................................................................................. 1, 5

*Gross v. FBL Fin. Servs., Inc.*,
    557 U.S. 167 (2009)................................................................................................ 12

*Jerome Stevens Pharms. v. FDA,*
    402 F.3d 1249 (D.C. Cir. 2005) ............................................................................. 6

*Jones v. Bock*,
    549 U.S. 199 (2007)................................................................................................ 6

*Love v. Connor*,
    525 F. Supp. 2d 155 (D.D.C. 2007) ......................................................................18

*Lujan v. Defenders of Wildlife,*
    504 U.S. 555 (1992)................................................................................................6

*Raines v. Byrd*,
    521 U.S. 811 (1997) ............................................................................................... 8

*Smith v. City of Jackson*,
    544 U.S. 228 (2005)............................................................................................... 13

*Smith v. USAID*,
    No. 26-cv-183-TJK (D.D.C. 2026)..................................................................... 1, 5

*TransUnion LLC v. Ramirez*,
    594 U.S. 413 (2021)............................................................................................... 8

*U.S. Ecology, Inc. v. Dep't of Interior,*
    231 F.3d 20 (D.C. Cir. 2000).................................................................................. 6

*United States v. Texas*,
    599 U.S. 670 (2023) .............................................................................................. 8

*U.S. Inf. Agency v. Krc*,
    989 F.2d 1211 (D.C. Cir. 1993)............................................................................. 3

*Valley Forge Christian Coll. v. Americans United for Separation of Church & State, Inc.*,
    454 U.S. 464 (1982) .............................................................................................. 8

*Walsh v. Comey*,
    118 F. Supp. 3d 22 (D.D.C. 2015)........................................................................ 6

*Whitney Nat'l Bank v. Bank of New Orleans & Trust Co.*,
    379 U.S. 411 (1965)...............................................................................................18

*Wright v. Eugene & Agnes E. Meyer Found.*,
    68 F.4th 612 (D.C. Cir. 2023)............................................................................... 6

iv

## STATUTES

5 U.S.C. § 6329a .............................................................................................................. 16, 17

5 U.S.C. § 6329b .............................................................................................................. 16, 17

5 U.S.C. § 704 ....................................................................................................................... 18

22 U.S.C. § 4010a .................................................................................................................... 3

22 U.S.C. § 4106 ...................................................................................................................... 3

22 U.S.C. § 4107 ...................................................................................................................... 3

22 U.S.C. § 4109(a) ................................................................................................................. 4

22 U.S.C. § 4116 ...................................................................................................................... 4

22 U.S.C. § 4131(a) ................................................................................................................. 3

22 U.S.C. § 4134 ...................................................................................................................... 3

22 U.S.C. § 4140 ...................................................................................................................... 3

29 U.S.C. § 623 .................................................................................................................. 5, 11

29 U.S.C. § 626 ............................................................................................... 4, 10, 13, 14

29 U.S.C. § 633a ................................................................................................................ 4, 12

## RULES

Fed. R. Civ. P. 12(b)(1) ................................................................................................... *passim*

Fed. R. Civ. P. 12(b)(6) ................................................................................................... *passim*

## REGULATIONS

5 C.F.R. § 630.1403(a)(4) ...................................................................................................... 17

5 C.F.R. § 630.1404(a) ........................................................................................................... 16

29 C.F.R. § 1614.201 .......................................................................................................... 4, 10

**OTHER AUTHORITIES**

OPM, *Guidance on Probationary Periods, Administrative Leave and Details*
(January 20, 2025 – revised March 4, 2025), available at: https://perma.cc/3SH2-ANRN ..... 17

S. Rep. No. 114-292 (2016) ................................................................................................. 17

**INTRODUCTION**

Plaintiffs—168 former United States Agency for International Development ("USAID") employees—challenge their removals by USAID as part of wide-scale reductions-in-force ("RIFs") carried out across USAID.  Plaintiffs assert that their removals violated the Age Discrimination in Employment Act ("ADEA"), the Older Workers Benefits Protection Act ("OWBPA") Amendments to the ADEA, the Administrative Leave Act ("ALA"), and the Administrative Procedure Act ("APA"), and seek relief on that basis against multiple Defendants: USAID, the State Department, the U.S. Office of Personnel Management ("OPM"), the U.S. Office of Management and Budget ("OMB"), and the U.S. DOGE Service ("USDS"), as well as the acting or confirmed heads of those agencies and offices. But some of Plaintiffs' claims are untimely or sue the wrong defendants, and ultimately all of Plaintiffs' claims fail on the merits.  Accordingly, the Court should dismiss the complaint under Fed. R. Civ. P. 12(b)(1) and 12(b)(6). [1]

Procedurally, some of Plaintiffs' claims are untimely because they allege misconduct that took place more than 180 days before Plaintiffs notified the Equal Employment Opportunity Commission ("EEOC") of their intent to sue. This includes Plaintiffs' claims of violations of the Administrative Leave Act for individual plaintiffs who were placed on paid administrative leave. Additionally, Plaintiffs' claims against non-USAID defendants should be dismissed.

All of Plaintiffs' claims fail on the merits. Plaintiffs' ADEA claims allege disparate treatment and disparate impact.  Plaintiffs cannot succeed on the disparate treatment claims because the RIFs affected all USAID employees, regardless of age, such that Plaintiffs' age was

---

[1] Plaintiffs' suit follows other litigation by former USAID employees challenging their termination or removals by USAID under wide-scale RIFs. *See, e.g.*, *Greene v. USAID*, No. 25-cv-4217-SLS (D.D.C. 2025) (three former career civil service employees challenging their removal by USAID); *Smith v. USAID*, No. 26-cv-183-TJK (D.D.C. 2026) (twenty-nine former USAID foreign service limited appointees challenging their termination by USAID).

not the "but-for" cause of their removals.  Plaintiffs' disparate impact claims similarly fail because it is impossible for Plaintiffs to demonstrate disparate impact based on age, when virtually all USAID employees were removed, regardless of their age.

Plaintiffs' OWBPA claims are likewise completely without merit for at least two reasons. First, OWBPA does not contain a private right of action that would allow Plaintiffs to challenge their removals (unlike the ADEA).  Second, because nearly all plaintiffs were removed under the USAID RIFs. Plaintiffs' operative complaint references only two USAID employees who resigned, but neither plaintiff alleges to have unknowingly signed or agreed to an exit incentive or other employment termination program, let alone an employment termination program that released ADEA claims in an untoward manner.  *See* FAC ¶ 55 (indicating that "Plaintiff King resigned in response to the RIF decision on June 28, 2025); FAC ¶ 120 (indicating that "Plaintiff Pagen resigned effective June 25, 2025).

Plaintiffs' ALA claims are also without merit for at least two reasons. First, the ALA's ten-workday limit applies only to investigative leave for federal employees subject to investigation for misconduct, not to non-investigative paid administrative leave as was the case here. Second, the ALA provides no independent private right of action to enforce its terms, so these claims should be dismissed.

Finally, Plaintiffs fail to state a claim under the APA, because other statutes (here, the ADEA) provide a judicial remedy for Plaintiffs' age discrimination claims, such that judicial review through the APA is not available to Plaintiffs.

At bottom, Plaintiffs were employees of USAID who were placed on paid administrative leave and eventually removed as part of USAID agency-wide RIFs to wind down programmatic activity at the agency and transfer its programmatic functions to the State Department. Plaintiffs

were not individually targeted for dismissal, nor broadly targeted as a group, because of their age. Rather, they were situated like all other USAID employees, ultimately losing their jobs because the agency they worked for was wound down with its remaining programmatic functions transferred to the State Department. They are not entitled to any relief, and their operative complaint should be dismissed for lack of subject matter jurisdiction and failure to state a claim.

## BACKGROUND

**Statutory Background.** The relationship between Foreign Service employees and their employing agencies is governed by the Foreign Service Act of 1980 (FSA), which provides "a comprehensive system for reviewing personnel action[s] taken against" foreign service employees. *U.S. Inf. Agency v. Krc*, 989 F.2d 1211, 1217 (D.C. Cir. 1993) (citations omitted).[2] Among other topics, the FSA governs employee "grievances," defined as "any act, omission, or condition subject to the control of the Secretary which is alleged to deprive a member of the Service . . . of a right or benefit authorized by law or regulation or which is otherwise a source of concern or dissatisfaction to the member." 22 U.S.C. § 4131(a)(1). A foreign service employee first must file a grievance with the State Department, *see id.* § 4134(a); if a grievance is not resolved within ninety days, the employee then may file a grievance with the Foreign Service Grievance Board, *id.* § 4134(b), and its decisions are reviewable in district court, *id.* § 4140. Employees subject to a RIF may challenge their removals either by using these grievance procedures (before the removal takes effect) or by appealing to the MSPB (afterward). *Id.* § 4010a(c).

The FSA also created the Foreign Service Labor Relations Board (FSLRB) within the FLRA. *See AFSA v. Baker*, 895 F.2d 1460, 1461 (D.C. Cir. 1990); 22 U.S.C. § 4106. The FSLRB adjudicates federal labor disputes, 22 U.S.C. § 4107, and "has enforcement authority that mirrors

---

[2] The FSA is a "companion measure" to the Civil Service Reform Act (CSRA) and "provides an analogous system for reviewing allegedly adverse actions taken against those employees." *Id.*

the authority Congress gave to the FLRA in the [CSRA]," *AFSA*, 895 F.2d at 1461. A union may bring an unfair labor practice charge to the General Counsel of the FSLRB, who may issue a complaint leading to final action by the FSLRB. 22 U.S.C. § 4116. The FSLRB's decisions are reviewable in the D.C. Circuit. 22 U.S.C. § 4109(a).

Federal employees, including Foreign Service employees, can bypass this administrative process by filing "a civil action in a United States district court under the ADEA against the head of an alleged discriminating agency after giving the Commission not less than 30 days' notice of the intent to file such an action." 29 C.F.R. § 1614.201(a). An aggrieved individual must notify the EEOC "within 180 days of the occurrence of the alleged unlawful practice." *Id.*

**Plaintiffs' Complaint.**  Following their removals from USAID, Plaintiffs filed suit on March 18, 2026 and their First Amended Complaint ("FAC") on April 9, 2026, alleging claims against five federal agencies or entities, plus the heads of those agencies or entities in their official capacities: USAID, the State Department (plus Secretary of State Marco Rubio); the United States Office of Management and Budget (OMB) (plus Administrator Russell Vought); the United States Office of Personnel Management (plus Director Scott Kupor); and United States DOGE Services (plus Acting Administrator Amy Gleason). ECF No. 1.  The complaint alleges seven Counts:

- **Count One: "Discrimination Based on Age in Violation of ADEA, 29 U.S.C. § 633a (Disparate Treatment – Pretextual RIF) (Against all Defendants)."**  FAC ¶¶ 358-69.

- **Count Two: "Discrimination Based on Age in Violation of ADEA, 29 U.S.C. § 633a (Disparate Impact – Pretextual RIF) (Against all Defendants)."** FAC ¶¶ 370-79.

- **Count Three: "Violation of the Older Worker Benefits Protection Act Amendments (OWBPA) to the ADEA, (Mandatory Disclosures in Group Layoffs (29 U.S.C. § 626(f)(1)(H)) (Against Defendants USAID and [Department of State] and their Acting Officials)."**  FAC ¶¶ 380-90.

- **Count Four: "Discrimination Based on Age in Violation of ADEA, 29 U.S.C. § 623(a)(2) (Unlawful Classification) (Against all Defendants)."**  FAC ¶¶ 391-94.

4

- **Count Five: "Discrimination Based on Age in Violation of ADEA, 29 U.S.C. § 623(a)(2) (Constructive Discharge through Intolerable Conditions) (Against all Defendants)."** FAC ¶¶ 395-402.

- **Count Six: "Violation of the Administrative Leave Act (Against all Defendants)."** FAC ¶¶ 403-10.

- **Count Seven: "Violation of the Administrative Procedure Act (Against all Defendants)."** FAC ¶¶ 411-17.

**Ongoing USAID Litigation.** In *Greene v. USAID*, No. 25-cv-4217-SLS (D.D.C. 2025), three former career civil service employees challenge their removal by USAID under the same agency-wide RIFs. Plaintiffs in *Greene* allege that Defendants violated the First Amendment and the Due Process Clause, as well as numerous statutes and regulations: Title VII, the Civil Service Reform Act of 1978 ("CSRA"), the Administrative Leave Act, the Administrative Procedure Act ("APA"), and various internal regulations governing RIFs, and sued USAID, OMB, OPM, and USDS (as in the instant case). *See Greene v. USAID*, No. 25-cv-4217-SLS, ECF No. 11-1 at 1. Litigation in *Greene* is ongoing. The Complaint in *Greene* was filed on December 3, 2025. *Id.*, ECF No. 1. Defendants' motion to dismiss was filed on April 30, 2026. *Id.*, ECF No. 11. Plaintiffs' opposition brief is due on June 30, 2026 while Defendants' reply brief is due on August 20, 2026. *Id.*, ECF No. 13 and Minute Order of June 9, 2026.

In *Smith v. USAID*, No. 26-cv-183-TJK (D.D.C. 2026), twenty-nine former USAID foreign service limited appointees challenge their termination by USAID. Plaintiffs in *Smith* allege that Defendants violated the First Amendment, the Due Process Clause, and several statutory or administrative requirements, and sued USAID, OMB, OPM, and USDS (as in the instant case). *See Smith v. USAID*, No. 26-cv-183-TJK, ECF No. 11-1 at 1. Litigation in *Smith* is ongoing. The Complaint in *Smith* was filed on January 22, 2026. *Id.*, ECF No. 1. Defendants' motion to dismiss was filed on April 30, 2026. *Id.*, ECF No. 11. Plaintiffs' opposition brief is due on June 30, 2026

while Defendants' reply brief is due on August 20, 2026. *Id.*, ECF No. 13 and Minute Order of June 10, 2026.

## LEGAL STANDARD

"Under Federal Rule of Civil Procedure 12(b)(1), a court must dismiss a claim for relief when the complaint 'lack[s] . . . subject-matter jurisdiction.'" *Walsh v. Comey*, 118 F. Supp. 3d 22, 25 (D.D.C. 2015) (quoting Fed. R. Civ. P. 12(b)(1)).  "To survive a motion to dismiss under Rule 12(b)(1), a plaintiff bears the burden of proving that the Court has subject-matter jurisdiction to hear its claims." *Id.* (citing *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 561 (1992); *U.S. Ecology, Inc. v. Dep't of Interior,* 231 F.3d 20, 24 (D.C. Cir. 2000)). "A court has an 'independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party.'" *Id.* (quoting *Arbaugh v. Y & H Corp.,* 546 U.S. 500, 514 (2006)). "For this reason the [p]laintiff's factual allegations in the complaint . . . will bear closer scrutiny in resolving a 12(b)(1) motion than in resolving a 12(b)(6) motion for failure to state a claim." *Id.* (internal quotations and citations omitted). "Additionally, unlike with a motion to dismiss under Rule 12(b)(6), the Court 'may consider materials outside the pleadings in deciding whether to grant a motion to dismiss for lack of jurisdiction.'" *Id.* (quoting *Jerome Stevens Pharms. v. FDA,* 402 F.3d 1249, 1253 (D.C. Cir. 2005)).

"A complaint is subject to dismissal for failure to state a claim" pursuant to Federal Rule of Civil Procedure 12(b)(6) "if the allegations, taken as true, show the plaintiff is not entitled to relief." *Jones v. Bock*, 549 U.S. 199, 215 (2007); *see also Wright v. Eugene & Agnes E. Meyer Found.*, 68 F.4th 612, 619 (D.C. Cir. 2023) (The Court "must treat the complaint's factual allegations as true, and must grant [the] plaintiff the benefit of all inferences that can be derived from the facts alleged.") (citations omitted).

The complaint must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint falls short of this standard when it makes "conclusory" and "bare assertions" that amount to "nothing more than a 'formulaic recitation of the elements'" of a plaintiff's claim. *Id.* at 681 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The pleading standard requires alleging sufficient factual matter to establish "more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678.

## ARGUMENT

Plaintiffs' claims are without merit and should be dismissed under Rule 12(b)(1) and 12(b)(6). Plaintiffs' claims should be dismissed without prejudice under Rule 12(b)(1) for (1) failure to show standing as to non-USAID Defendants and (2) for any alleged adverse employment actions that took place more than 180 days before Plaintiffs notified EEOC of their intent to bypass the administrative claim process. Regardless, all of Plaintiffs' claims should be dismissed under the independent ground of failing to state a claim as required under Rule 12(b)(6).

I.    **ALL CLAIMS AGAINST NON-USAID DEFENDANTS AND ALL CLAIMS ALLEGING ADVERSE EMPLOYMENT ACTIONS BEFORE APRIL 24, 2025 FALL OUTSIDE OF THE COURT'S JURISDICTION AND SHOULD BE DISMISSED UNDER RULE 12(b)(1).**

A. **Plaintiffs Cannot Show Standing to Sue the State Department, OPM, OMB, and USDS Defendants.**

Plaintiffs were appointed, employed, and ultimately removed by USAID. Yet they sue not just USAID, but the State Department, OPM, OMB, and USDS, asserting the same claims against all five agencies or entities. They have not adequately pleaded any basis for standing to sue any defendant beyond USAID, and they could not in any event. Each of their claims against the State Department, OPM, OMB, and USDS should thus be dismissed for lack of standing.

Article III standing is a "bedrock constitutional requirement that [the Supreme] Court has applied to all manner of important disputes." *United States v. Texas*, 599 U.S. 670, 675 (2023). It is "built on a single basic idea—the idea of separation of powers." *Id*. The requirement that plaintiffs demonstrate standing "helps safeguard the Judiciary's proper—and properly limited—role in our constitutional system," *id*. at 675-76, by ensuring that federal courts do not become "forums for the ventilation of public grievances" more properly resolved through the democratic process, *Valley Forge Christian Coll. v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 473 (1982).

To establish standing, plaintiffs "must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." *Raines v. Byrd*, 521 U.S. 811, 819 (1997). Plaintiffs also "must demonstrate standing for each claim" they seek to press "and 'for each form of relief sought,' even if the various claims are derived from similar facts or raise similar legal questions." *Ctr. for Biological Diversity v. U.S. Dep't of Interior*, 144 F.4th 296, 304 (D.C. Cir. 2025) (quoting *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006)). And the "plaintiff's remedy must be tailored to redress the plaintiff's particular injury." *Gill v. Whitford*, 585 U.S. 48, 73 (2018). These limitations work to ensure that federal courts do not sit to "exercise general legal oversight of the Legislative and Executive Branches" but to redress concrete injuries to cognizable interests. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423-24 (2021).

Plaintiffs' Counts One through Seven challenge their removals from USAID and their placement on paid administrative leave.  In support of those claims, they allege that "[a]t the time of the relevant events," they were employed in various roles at USAID. FAC ¶¶ 30-203. Plaintiffs also state: "At all material times, USAID employed the Plaintiffs at its principal place of business

in Washington, D.C." *Id.* ¶ 204.  For nearly all plaintiffs, Plaintiffs further allege that "USAID placed [plaintiff] on administrative leave on [date], and terminated [plaintiff] from USAID on [later date]." *Id.* ¶¶ 30-203.  Plaintiffs also allege that "Mr. Marocco [USAID's Deputy Administrator] terminated Plaintiffs." *Id.* ¶¶ 242-43.

By contrast, Plaintiffs' factual allegations regarding non-USAID Defendants suggest no direct role in their conditions of employment or removals.  Those allegations describe public comments about USAID itself, unspecified senior USAID personnel, or even federal employees more generally by Administration officials. *See, e.g.*, FAC ¶¶ 214-224, 228-241. None of those allegations suggests direct involvement in Plaintiffs' removals by any of the named officials or persons, much less the State Department, OPM, OMB, or USDS.

Lacking any such allegations of involvement, Plaintiffs cannot show that any injury-in-fact attributable to their removals from USAID is "fairly traceable" to any non-USAID Defendant. Simply alleging an injury-in-fact fairly traceable to Defendant USAID—Plaintiffs' employer, and by extension, the agency that ended their employment—cannot suffice to show injury-in-fact fairly traceable to the State Department, OPM, OMB, USDS, or their respective agency heads.  This basic standing failure encompasses all seven of Plaintiffs' Counts against those Defendants.

Plaintiffs might seek to salvage part of their claims against the State Department, but that would be unavailing.  Separate from their claims of improper removal, Plaintiffs also allege that "the State Department now seeks to hire and has hired younger personnel with far less experience, to carry out the same work at State." FAC ¶ 337; *see also* FAC ¶¶ 338-51 (broadly and baselessly alleging that the State Department is rehiring for the "same positions" eliminated at USAID and "[u]pon information and belief," that new recruits are "younger employees" hired "to perform the same functions as Plaintiffs.").  Those allegations are conclusory and unfounded.  But even had

9

Plaintiffs alleged factual support for such naked contentions, they cannot satisfy any element of the three-part standing test to challenge alleged conditions on future employment for several fundamental reasons. For one, no Plaintiff has alleged any concrete effort to return to federal employment at the State Department (or elsewhere). For another, no Plaintiff has alleged that he or she has been blocked from consideration—or even been so much as frustrated—in any such effort to return to federal employment by any of the statements, policies, or actions alluded to in the Complaint. Without those sorts of factual showings, Plaintiffs cannot establish the injury-in-fact, much less the traceability and redressability, required to demonstrate standing.

Accordingly, Plaintiffs' Counts should be dismissed for lack of standing as to all non-USAID Defendants.

B. **Plaintiffs' Claims Alleging Adverse Employment Decisions Taken by Defendants Prior to April 24, 2025 are Untimely.**

Plaintiffs bypassed the administrative process under the FSA by filing "a civil action in a United States district court under the ADEA against the head of an alleged discriminating agency after giving the Commission not less than 30 days' notice of the intent to file such an action." 29 C.F.R. § 1614.201(a). Under this procedure, aggrieved individuals must notify the EEOC "within 180 days of the occurrence of the alleged unlawful practice." *Id. See also* 29 U.S.C. § 626(d)(1)(A) (requiring EEOC notification "within 180 days after the alleged unlawful practice occurred."). Plaintiffs allege that they notified the EEOC "on October 21, 2025, of their intent to bypass the administrative claim process at the EEOC and exercise their right to directly file a lawsuit under the ADEA." FAC ¶ 24. As such, this Court's jurisdiction extends only to adjudicating alleged unlawful practices that took place within 180 days of the date Plaintiffs notified the EEOC, i.e., those between April 24, 2025 to October 21, 2025.

10

Nearly all plaintiffs were placed on paid administrative leave prior to April 24, 2025. *See, e.g.,* FAC ¶¶ 30-42 (alleging plaintiffs were placed on administrative leave on or before February 23, 2025). To the extent that Plaintiffs allege that placement on paid administrative leave is an unlawful practice (as they do in at least Counts One, Six, and Seven), those claims are time-barred. Moreover, to the extent that Plaintiffs claim certain statements and actions by Defendants show "age-based bias in employment actions" (*see* FAC ¶ 213) including statements by "[s]enior government officials" that refer to "young gun management" or other "derogatory language" (as characterized by Plaintiffs), any reliance on such statements or acts that took place prior to April 24, 2025 are similarly time-barred. *See, e.g.,* FAC ¶¶ 216, 219.  *See also* FAC ¶¶ 221-247.

At a minimum, this Court should direct Plaintiffs to file an amended complaint that excludes any references to acts or statements that took place prior to April 24, 2025.

## II.    PLAINTIFFS FAIL TO STATE A CLAIM AS TO ANY COUNT UNDER RULE 12(B)(6).

All of Plaintiffs' claims should be dismissed under Rule 12(b)(6) for failure to state a claim. Plaintiffs' ADEA claims fail because they cannot plausibly demonstrate disparate treatment nor disparate impact because Plaintiffs were removed as part of a wide-ranging RIF that impacted the entire agency, irrespective of any employee's age. Plaintiffs' OWBPA claims are irrelevant since OWBPA does not grant a private right action for any plaintiff to challenge their removal and all but two plaintiffs were removed, rather than allegedly tricked or coerced to resign under false pretenses. Finally, Plaintiffs' remaining claims under the ALA and the APA are similarly without merit.

### A.  Counts One and Two Fail to State a Claim Under the ADEA.

The ADEA prohibits discrimination on the basis of age. *See* 29 U.S.C. § 623(a)(1). These protections are extended to federal employees (with some exceptions not relevant here) such that personnel actions impacting federal employees "shall be made free from any discrimination based

11

on age." *See* 29 U.S.C. § 633a(a). Plaintiffs here allege two types of discrimination under the ADEA: "(1) disparate treatment, by which "plaintiffs seek to prove an employer intentionally treated some people less favorably than others because of their age," and "(2) disparate impact, by which plaintiffs must show that a facially neutral employment policy or practice has a significant disparate impact on a protected class of which he is a member." *Breen v. Chao*, 253 F. Supp. 3d 244, 253-54 (D.D.C. 2017) (citations and quotations omitted).

Count One alleges discrimination on the basis of the age under the ADEA, specifically alleging disparate treatment in two adverse employment actions, namely in placing plaintiffs on paid administrative leave and in removing them as part of a RIF. However, Plaintiffs' own complaint acknowledges that "USAID terminated its foreign service officers *en masse*." FAC ¶ 17. *See also* FAC ¶ 334 (citing USAID's "Final Mission" memorandum, which states that "substantially all non-statutory positions at USAID will be eliminated."). Plaintiffs thus fail to plausibly allege the most basic assertion in their disparate treatment claim, namely, how could agency-wide removals of virtually every USAID employee discriminate against plaintiffs on the basis of age? Plaintiffs have no answer.

This is fatal to Plaintiffs' Count One, because "[t]o establish a disparate-treatment claim under the plain language of the ADEA . . . a plaintiff must prove that age was the 'but-for' cause of the employer's adverse decision." *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 176 (2009) (citations omitted); *see also Babb v. Wilkie*, 589 U.S. 399, 413 (2020) (holding that "plaintiffs must show that age discrimination was a but-for cause of the employment outcome" if plaintiffs' requested relief is "reinstatement, backpay, compensatory damages, or other forms of relief related to the end result of an employment decision."). Plaintiffs do not (and cannot) plausibly allege that

12

age was the "but-for" reason for their removal when USAID carried out an agency-wide RIF impacting virtually every USAID employee, regardless of their age.

Plaintiffs' Count Two fares no better. Plaintiffs are "'responsible for isolating and identifying the *specific* employment practices that are allegedly responsible for any observed statistical disparities.'" *Breen*, 253 F. Supp. 3d at 265 (citing *Smith v. City of Jackson*, 544 U.S. 228, 241 (2005)). But this is an impossible task for Plaintiffs where, as here, there can be no observed statistical disparities showing a disparate impact on USAID employees 40 years and older, when the agency-wide RIFs affected virtually every USAID employee, regardless of age. Put simply, Plaintiffs cannot show that they were disproportionately targeted for removal when USAID removed virtually everyone.

### B. Counts Three and Five Fail to State a Claim Under OWBPA and the ADEA.

Plaintiffs' Count Three alleges in part that "[h]ad the Defendants complied with OWBPA . . . it would have impacted each Plaintiffs' decision-making." FAC ¶ 389. But what decision-making are Plaintiffs referring to? Nearly all plaintiffs allege that they were improperly terminated. *See* FAC ¶¶ 30-203. The only two exceptions appear to be plaintiffs King and Pagen (*see* FAC ¶¶ 55 & 120), but even for those two plaintiffs, Plaintiffs' FAC merely alleges that they resigned. There is no additional detail or allegation to plausibly plead that either plaintiff resigned *because* of a non-OWBPA compliant exit incentive or employment termination program.

Plaintiffs cite to 29 U.S.C. § 626(f)(1)(H), but that provision concerns waivers "requested in connection with an exit incentive or other employment termination program." *Id.* In relevant part, the provision requires employees to be informed "in writing in a manner calculated to be understood by the average individual eligible to participate" regarding (i) who is eligible to participate and (ii) the ages of all individuals eligible or selected for the program and the ages of those who are not eligible or selected for the program. *Id.* To the extent that Plaintiffs are referring

13

to the Deferred Resignation Program ("DRP"), *see* FAC ¶¶ 259-71, that program, as Plaintiffs tacitly acknowledge, was "mass mailed to [all] federal employees and claimed to offer federal employees the right to be placed on administrative leave with pay until September 30, 2025." *Id.* ¶ 266. Whatever Plaintiffs' objections with the DRP, and assuming *arguendo* that the DRP is an "exit incentive or other employment termination program" under OWBPA, since the DRP was open to all federal employees (and by extension to all USAID employees), Plaintiffs cannot plausibly plead any OWBPA violation. 29 U.S.C. § 626(f)(1)(H). That is because every USAID employee was ostensibly eligible for DRP, regardless of their job title or age.

In any case, Plaintiffs cannot avail themselves of a private right of action to enforce OWBPA in this suit. To do so, Plaintiffs must show that Congress created a private right of action to rectify any OWBPA violation. *See Alexander v. Sandoval*, 532 U.S. 275, 286 (2001) ("[P]rivate rights of action to enforce federal law must be created by Congress.") Congress did not do so, meaning that Counts Three and Five should be dismissed for this reason as well.

To show intent to create a private right, the statute must use "rights-creating language." *See Gonzaga Univ. v. Doe*, 536 U.S. 273, 287 (2002). Provisions that "focus on the person regulated rather than the individuals protected" or that focus "on the agencies that will do the regulating" do not generally create private rights. *Alexander*, 532 U.S. at 289. Here, 29 U.S.C. § 626(f)(1)(H) does not use such "rights-creating language." This is unsurprising since the statute merely provides certain rules and rights when employers are asking employees covered by the ADEA to waive rights.  *See* 29 U.S.C. § 626(f)(1) ("An individual may not waive any right or claim under this chapter unless the waiver is knowing and voluntary."). Although it is not entirely clear why Plaintiffs are invoking OWBPA, that statute is typically invoked to defeat a waiver of ADEA rights in a settlement or exit termination program.  But Defendants have not asserted any

such settlement or exit termination program to bar the suits by plaintiffs King and Pagen, so it is unclear why Plaintiffs assert alleged OWBPA violations in this context.

Plaintiffs' Count Five similarly alleges constructive discharge through intolerable conditions. FAC ¶¶ 395-402. Again, it appears that this Count concerns only the two plaintiffs, King and Pagen, who resigned prior to removal by the agency-wide RIF. *See, e.g.,* FAC ¶ 55 (stating that plaintiff King resigned on June 28, 2025 without specific details as to any "intolerable conditions" facing plaintiff King); FAC ¶ 120 (same as to plaintiff Pagen who resigned on June 25, 2025). Plaintiffs do not plausibly allege specific facts as to any intolerable conditions that plaintiffs King and Pagen experienced leading to their resignations, especially in view of the scores of other plaintiffs who did not resign and were removed as part of the RIF. Plaintiffs' threadbare and conclusory allegations do not meet the plausibility bar of *Twombly*.

### C. Count Four Alleging a Violation of the ADEA due to Unlawful Classification is Without Merit.

Plaintiffs' Count Four alleges that "USAID terminated its older employees under the guise that their positions were not being retained only to rehire for the same positions but under different classification that tend to discourage older workers from reapplying and therefore adversely impacting their status due to their age." FAC ¶ 396. But Plaintiffs fail to plausibly allege USAID disproportionately targeted its older employees, given that the agency-wide RIF affected virtually every USAID employee. Nor do Plaintiffs plausibly allege that the same positions were then created at the State Department and filled with younger employees. At best, Plaintiffs claim "[o]n information and belief" that "new State Department positions" were created and "disproportionately staffed by younger workers." *See* FAC ¶ 330-31. But such threadbare and conclusory assertions, without specifically identifying the USAID positions that were replaced

15

with State Department positions, and without specifically identifying at least some younger workers taking up those positions, fail to meet the plausibility bar of *Twombly*.

### D. Count Six Alleging a Violation of the Administrative Leave Act is Without Merit.

Count Six alleges a violation of the ALA, FAC ¶¶ 403-10, on the basis that Plaintiffs were placed on paid administrative leave for longer than ten workdays prior to their removal.  This Count fails to state a claim for at least two reasons. First, the ALA's ten-workday limit applies only to "investigative leave" for federal employees that are subject to investigation; under OPM regulation, that limit is inapplicable to non-investigative administrative leave. Second, the ALA provides no independent private right of action to enforce its terms, including the alleged ten-workday limit.  Count Six should thus be dismissed.

Federal employees may be placed on administrative leave for investigative purposes for ten workdays, absent the need for an extended investigation. 5 U.S.C. §§ 6329a(b)(1), 6329b(b)(1)(A), and 6329b(b)(3)(A). However, administrative leave may be used for non-investigative purposes, and it is not subject to the ten-workday time limit in such instances. OPM is specifically directed by statute to prescribe regulations for the proper recording of "other leave authorized by law," that is, administrative leave that is not "investigative leave" (if the employee is subject to an investigation) or "notice leave" (if the employee is in a notice period, which begins with notice of a "proposed adverse action against the employee" until the date on which the agency "may take the adverse action."). 5 U.S.C. § 6329b(h)(1)(B)(ii). *See also* 5 U.S.C. §§ 6329b(a)(9), 6329b(b)(1)(A), and 6329b(h)(1)(A).

OPM has clarified by regulation that the "10-workday annual limit does not apply to administrative leave for other purposes," that is, for purposes other than "conducting an investigation." 5 C.F.R. § 630.1404(a). OPM further clarified that "paid administrative leave is

16

appropriate" where "the absence is in the interest of the agency or of the Government as a whole." 5 C.F.R. § 630.1403(a)(4). One such circumstance for using paid administrative leave is "where the agency component in which the employee works is being eliminated or restructured[.]" OPM, *Guidance on Probationary Periods, Administrative Leave and Details* (January 20, 2025 – revised March 4, 2025) (available at: https://perma.cc/3SH2-ANRN). Since Plaintiffs were not placed on investigative leave, the ten-workday time limit does not apply, thus Plaintiffs cannot invoke a violation of the ALA.

Even if Plaintiffs could show that USAID violated the ALA, they must show that Congress created a private right of action to rectify any violation. *See Alexander v. Sandoval*, 532 U.S. 275, 286 (2001) ("[P]rivate rights of action to enforce federal law must be created by Congress.") Congress did not do so, meaning that Count Six should be dismissed for this reason as well.

To show intent to create a private right, the statute must use "rights-creating language." *See Gonzaga Univ. v. Doe*, 536 U.S. 273, 287 (2002). Provisions that "focus on the person regulated rather than the individuals protected" or that focus "on the agencies that will do the regulating" do not generally create private rights. *Alexander*, 532 U.S. at 289. Here, neither 5 U.S.C. § 6329a nor 5 U.S.C. § 6329b use such "rights-creating language." This is unsurprising since the Administrative Leave Act of 2016 was primarily intended by Congress as a cost-cutting measure, intended to address "the cost to the taxpayers" of widespread use of administrative leave and "its abuse by some agencies." S. Rep. No. 114-292 at 1 (2016). Congress did not intend thereby to create a mechanism for federal employees to challenge their placement on non-investigatory administrative leave.

Finally, the general availability of APA review (which Plaintiffs invoke in Count Seven, also unsuccessfully) makes the threshold for finding a new implied right of action very high. *See,*

*e.g.*, *Godwin v. Sec'y of Housing & Urban Dev.*, 356 F.3d 310, 312 (D.C. Cir. 2004) (per curiam) ("[I]t is difficult to understand why a court would ever hold that Congress, in enacting a statute that creates federal obligations, has implicitly created a private right of action against the federal government, as there is hardly ever any need for Congress to do so given that agency action can normally be reviewed by a district court [under the APA]."). Put simply, Congress did not create a private right of action for enforcement of the ALA and Plaintiffs cannot invoke it here.

### E.  Plaintiffs Fail to State a Claim under the APA in Count Seven.

Plaintiffs claim a violation of the APA in Count Seven, arguing that USAID's decision to "force Plaintiffs on administrative leave and then terminate them" is "arbitrary and capricious." FAC ¶¶ 414-15.  Plaintiffs' claim is without merit. Where, as here, other statutes provide for judicial remedy, an action under the APA is improper.  *See* 5 U.S.C. § 704 ("Agency action made reviewable by statute and final agency action for which *there is no other adequate remedy* in a court are subject to judicial review." (emphasis added)); *Bowen v. Massachusetts*, 487 U.S. 879, 880 (1988). If Congress has provided an adequate procedure to obtain judicial review, then that statutory provision is the exclusive path for review to obtain judicial review. *See Whitney Nat'l Bank v. Bank of New Orleans & Trust Co.*, 379 U.S. 411, 419-23 (1965). Numerous statutes have been held to provide an adequate remedy and preclude APA review. *See, e.g.*, *Love v. Connor*, 525 F. Supp. 2d 155, 158-59 (D.D.C. 2007) (female farmers had no APA claim against Department of Agriculture for discrimination because Congress created a specific complaint procedure against USDA).

In this case, other statutes provide for judicial remedy, including the ADEA (which Plaintiffs invoke in this suit) and the comprehensive administrative system for reviewing personnel actions provided by the FSA. As such, Plaintiffs' attempts to invoke the APA for relief are without merit.

**CONCLUSION**

For the reasons above, many of Plaintiffs' Counts (and claims, where applicable) fall outside of district court jurisdiction, because they allege violations that took place more than 180 days prior to Plaintiffs' notification to the EEOC, and should be dismissed under Rule 12(b)(1) as untimely. Additionally, all of Plaintiffs' Counts against the non-USAID Defendants—the State Department, OPM, OMB, and USDS—fail for lack of standing and should likewise be dismissed under Rule 12(b)(1). Finally, Plaintiffs have failed to state a claim entitling them to relief as to any Count or claim that survives scrutiny under Rule 12(b)(1), and any such Count or claim should therefore be dismissed for failure to state a claim under Rule 12(b)(6).

Accordingly, Plaintiffs' claims should be dismissed in their entirety.

Dated: July 2, 2026

Respectfully submitted,

BRETT A. SHUMATE
*Assistant Attorney General*

CHRISTOPHER R. HALL
*Assistant Branch Director*

/s/ *Esam K. Al-Shareffi*
ESAM K. AL-SHAREFFI
(D.C. Bar No. 90010174)
*Trial Attorney*
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, DC 20530
Telephone: (202) 598-7367
E-mail: esam.k.al-shareffi@usdoj.gov

*Counsel for Defendants*