**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| WILLIAM BRADLEY, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES AGENCY FOR INTERNATIONAL DEVELOPMENT, *et al.*,<br><br>Defendants. | Case No. 1:26-cv-00950-RC |

**DEFENDANTS' REPLY IN SUPPORT OF**
**DEFENDANTS' RULE 12(b)(1) and 12(b)(6) MOTION TO DISMISS**

# TABLE OF CONTENTS

**INTRODUCTION** .......... **1**

**ARGUMENT** .......... **2**

I. ALL CLAIMS AGAINST NON-USAID DEFENDANTS AND ALL CLAIMS ALLEGING ADVERSE EMPLOYMENT ACTIONS BEFORE APRIL 24, 2025 FALL OUTSIDE OF THE COURT'S JURISDICTION AND SHOULD BE DISMISSED UNDER RULE 12(B)(1). .......... 2

A. Plaintiffs Cannot Show Standing to Sue the State Department, OPM, OMB, and USDS Defendants. .......... 2

B. Plaintiffs' Claims Alleging Adverse Employment Decisions Taken by Defendants Prior to April 24, 2025 are Untimely. .......... 6

II. PLAINTIFFS FAIL TO STATE A CLAIM AS TO ANY COUNT UNDER RULE 12(B)(6). .......... 8

A. Counts One and Two Fail to State a Claim Under the ADEA. .......... 8

B. Counts Three and Five Fail to State a Claim Under OWBPA and the ADEA .......... 10

C. Count Four Alleging a Violation of the ADEA due to Unlawful Classification is Without Merit. .......... 11

D. Count Six Alleging a Violation of the Administrative Leave Act is Without Merit. .......... 12

E. Plaintiffs Fail to State a Claim under the APA in Count Seven.. .......... 13

**CONCLUSION** .......... **14**

# TABLE OF AUTHORITIES

## CASES

*Alexander v. Sandoval*,
532 U.S. 275 (2001) ........ 11

*Babb v. Wilkie*,
589 U.S. 399 (2020) ........ 8

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ........ 4, 5, 9, 11, 12

*Bowen v. Massachusetts*,
487 U.S. 879 (1988) ........ 13

*Breen v. Chao*,
253 F. Supp. 3d 244 (D.D.C. 2017) ........ 9

*Gross v. FBL Fin. Servs., Inc.*,
557 U.S. 167 (2009) ........ 8

*Love v. Connor*,
525 F. Supp. 2d 155 (D.D.C. 2007) ........ 13

*Smith v. City of Jackson*,
544 U.S. 228 (2005) ........ 9

*Whitney Nat'l Bank v. Bank of New Orleans & Trust Co.*,
379 U.S. 411 (1965) ........ 13

## STATUTES

5 U.S.C. § 704 ........ 13, 14

29 U.S.C. § 623(a)(1) ........ 8

29 U.S.C. § 626(d)(1)(A) ........ 7

## RULES

Fed. R. Civ. P. 12(b)(1) ........ *passim*

Fed. R. Civ. P. 12(b)(6) ........ *passim*

**REGULATIONS**

29 C.F.R. § 1614.201 ........................................................................................................ 6, 7

**OTHER AUTHORITIES**

Exec. Order 14,158, *Establishing and Implementing the President's "Department of Government Efficiency"*, 90 Fed. Reg. 8,441 (Jan. 20, 2025) ........................................................ 5

## INTRODUCTION

Plaintiffs—168 former United States Agency for International Development ("USAID") employees—challenge their removals by USAID. Plaintiffs acknowledge that wide-scale reductions-in-force ("RIFs") were carried out across USAID, affecting virtually every USAID employee, but continue to assert that *their* removals violated the Age Discrimination in Employment Act ("ADEA"), based on theories of disparate treatment and disparate impact. But Plaintiffs have no logical response to the obvious query: How can age be a "but-for" cause of Plaintiffs' removal when the RIFs removed virtually all employees? How can a RIF that removes virtually all employees disparately impact employees 40 years of age or older? Plaintiffs' inability to put forth plausible allegations to address these two questions dooms their ADEA challenge.

As detailed in Defendants' opening brief and reiterated below, Plaintiffs' other challenges also fail. Take their Older Workers Benefit Protection Act ("OWBPA") claims: Although it is not entirely clear why Plaintiffs are invoking OWBPA, that statute is typically invoked to defeat a waiver of ADEA rights in a settlement or exit termination program. However, all but two Plaintiffs allege they were removed, not hoodwinked into a settlement or exit termination program which waived their ADEA rights. As to the two Plaintiffs who were not removed, *see* FAC ¶¶ 55, 120, the complaint merely states that they "resigned" and does not allege, for instance, an improper effort by Defendants to induce them to waive their ADEA rights. In any case, there is no private right of action under OWBPA, so those claims necessarily fail.

Plaintiffs' ALA claims fail as well, for at least three reasons. First, ALA's ten-workday limit applies only to investigative leave, not the non-investigative paid administrative leave relevant to Plaintiffs here. Second, the ALA provides no independent private right of action. Third, this claim is time-barred for most if not all Plaintiffs.

Plaintiffs' Administrative Procedure Act claims are also not viable given that Plaintiffs have recourse to other statutes (e.g., ADEA) with which to seek relief.

Finally, Plaintiffs' claims against non-USAID Defendants fail even before consideration of the merits, as Plaintiffs have not established standing to sue those non-USAID Defendants.

Put simply, Plaintiffs were not individually targeted for dismissal, nor broadly targeted as a group, because of their age. Rather, they were situated like all other USAID employees ultimately removed as part of USAID agency-wide RIFs to wind down programmatic activity at the agency and transfer its programmatic functions to the State Department. They are not entitled to any relief, and their operative complaint should be dismissed for lack of subject matter jurisdiction and failure to state a claim.

## ARGUMENT

Plaintiffs' claims are without merit and should be dismissed under Rule 12(b)(1) and 12(b)(6). Plaintiffs' claims should be dismissed without prejudice under Rule 12(b)(1) for (1) failure to show standing as to non-USAID Defendants and (2) for any alleged adverse employment actions that took place more than 180 days before Plaintiffs notified EEOC of their intent to bypass the administrative claim process. Regardless, all of Plaintiffs' claims should be dismissed under the independent ground of failing to state a claim as required under Rule 12(b)(6).

### I. ALL CLAIMS AGAINST NON-USAID DEFENDANTS AND ALL CLAIMS ALLEGING ADVERSE EMPLOYMENT ACTIONS BEFORE APRIL 24, 2025 FALL OUTSIDE OF THE COURT'S JURISDICTION AND SHOULD BE DISMISSED UNDER RULE 12(b)(1).

#### A. Plaintiffs Cannot Show Standing to Sue the State Department, OPM, OMB, and USDS Defendants.

Plaintiffs' Counts One through Seven challenge their removals from USAID and their placement on paid administrative leave. In support of those claims, they allege that "[a]t the time of the relevant events," they were employed in various roles at USAID. FAC ¶¶ 30-203. Plaintiffs

also state: "At all material times, USAID employed the Plaintiffs at its principal place of business in Washington, D.C." *Id.* ¶ 204. For nearly all Plaintiffs, the complaint further alleges that "USAID placed [Plaintiff] on administrative leave on [date], and terminated [Plaintiff] from USAID on [later date]." *Id.* ¶¶ 30-203. Plaintiffs also allege that "Mr. Marocco [USAID's Deputy Administrator] terminated Plaintiffs." *Id.* ¶¶ 242-43.

But Plaintiffs' suit is not limited to USAID but also includes as defendants the State Department, OPM, OMB, and USDS. Plaintiffs' allegations against non-USAID Defendants fail to plausibly plead a direct role by non-USAID Defendants in their conditions of employment or removals. At most, Plaintiffs' allegations describe public comments about USAID itself, unspecified senior USAID personnel, or even federal employees more generally by Administration officials. *See, e.g.*, FAC ¶¶ 214-224, 228-241. None of those allegations suggests direct involvement in Plaintiffs' removals by any of the named officials or persons, much less the State Department, OPM, OMB, or USDS.

As to the State Department specifically, Plaintiffs allege that "the State Department now seeks to hire and has hired younger personnel with far less experience, to carry out the same work at State." FAC ¶ 337; *see also* FAC ¶¶ 338-51 (alleging without support that the State Department is rehiring for the "same positions" eliminated at USAID and "[u]pon information and belief," that new recruits are "younger employees" hired "to perform the same functions as Plaintiffs."). Those allegations are conclusory and unfounded. But even had Plaintiffs alleged factual support for such naked contentions, they cannot satisfy any element of the three-part standing test to challenge alleged conditions on future employment for several fundamental reasons. For one, no Plaintiff has alleged any concrete effort to return to federal employment at the State Department (or elsewhere). For another, no Plaintiff has alleged that he or she has been blocked from

consideration—or even been so much as frustrated—in any such effort to return to federal employment by any of the statements, policies, or actions alluded to in the Complaint. Without those sorts of factual showings, Plaintiffs cannot establish the injury-in-fact, much less the traceability and redressability, required to demonstrate standing.

In their Opposition, *see* ECF No. 16 at 10-18, Plaintiffs retort that they have plausibly pled all elements of standing as to non-USAID Defendants with citations to their FAC. But Plaintiffs' have not done so. On scrutiny, Plaintiffs' arguments are either non-responsive or plainly conclusory, and in any case do not meet the *Twombly* pleading standard of plausible allegations.

Consider first the allegations against the State Department. In their Opposition, Plaintiffs claim "the State Department was . . . hiring younger workers to perform roles Plaintiffs had performed." Opp. Br., ECF No. 16, at 12 (citing FAC ¶¶ 254, 330, 331). But Plaintiffs provide no plausible basis for that assertion. FAC ¶ 254 states in relevant part: "Plaintiffs learned that the U.S. State Department, was hiring younger workers to perform the roles that the Plaintiffs had been performing, and simultaneously, that these newly hired employees, were not being provided the seniority-based pay and benefits that the Plaintiffs possessed." Further, Plaintiffs state "on information and belief" that the State Department "assumed functions and hired employees" to perform the same jobs that Plaintiffs filled at USAID and those State Department positions "are disproportionately staffed by younger workers" or for "lower rates of pay." FAC ¶¶ 330, 331.

But beyond that bare conclusory assertion, Plaintiffs allege zero evidence. They do not provide, for instance, the affidavit of even a single newly hired younger State Department employee allegedly carrying out the same role that a Plaintiff had carried out at USAID with lower pay or benefits. Plaintiffs do not even provide a single exhibit capturing a USAJOBS hiring notice for a State Department position that replaces a similar USAID position at lower pay. To be clear,

Plaintiffs need not prove their case at the complaint stage, but nor can they make purely conclusory allegations and expect to clear *Twombly*'s modest bar for plausible allegations. Plaintiffs' analogous allegations in FAC ¶¶ 337, 338, 343, 344 are similarly conclusory and implausible.

Plaintiffs attempt to bolster their allegations as to the State Department by referring to specific officials, namely "Secretary of State Marco Rubio," "State Department Director of Foreign Assistance Peter Marocco," and "Under Secretary for Foreign Assistance" Jeremy P. Lewin, who had simultaneous roles at USAID and the State Department during USAID's reorganization. *See* Opp. Br., ECF No. 16, at 13-14. But the fact that USAID personnel held State Department jobs does not explain why Plaintiffs have standing to sue the latter. Presumably, any acts Plaintiffs allege by these officials would be attributed to their work as USAID officials, not State Department positions they are alleged to have held at relevant times.

Plaintiffs' allegations as to "DOGE" (which appear to apply to Defendant USDS[1]), *see* Opp. Br., ECF No. 16, at 14-16, are even less plausible. In any case, even Plaintiffs concede that "DOGE's" role is "not completely understood at this juncture." *Id.* at 14. And nothing in Plaintiffs' FAC points to a specific act by USDS to terminate any Plaintiffs on the basis of age. The Court should not let Plaintiffs turn a case about alleged ADEA violations into a challenge to "DOGE." *See id.* ("Indeed, the crucial issues in the case center on DOGE – what was DOGE's role, under what authority was it operating, and who at DOGE took what steps?").

[1] "DOGE" is not a Defendant in this case, nor could it be, as it is not an agency. Plaintiffs are likely referring to the Defendant "United States DOGE Service" or "USDS" which was established in the Executive Office of the President pursuant to Executive Order 14,158. *See* Exec. Order 14,158, *Establishing and Implementing the President's "Department of Government Efficiency"*, 90 Fed. Reg. 8,441 (Jan. 20, 2025) (§ 3(a) establishing the "United States DOGE Service (USDS)"; § 3(b) establishing a "USDS Administrator" reporting to the "White House Chief of Staff.").

Plaintiffs' allegations as to OMB appear to center on OMB Director Russel Vought's role as acting USAID Administrator since August 29, 2025. *See id.* at 16-17. But again, Plaintiffs do not explain why that is a relevant consideration for suing OMB, when presumably any alleged acts by Mr. Vought relevant to this case would be in his role and tenure as acting USAID Administrator. In any case, Mr. Vought's tenure at USAID, beginning in late August 2025, was well after Plaintiffs were first placed on administrative leave, and also after the date many were removed. *See* FAC ¶¶ 30-203 (indicating nearly all Plaintiffs were placed on administrative leave in late February 2025 or sooner and that most were removed on July 1, 2025, with some removed on September 2, 2025). Plaintiffs have thus failed to plausibly plead any allegations against OMB.

As for Defendant OPM, Plaintiffs do not appear to specifically address any allegations against OPM in their Opposition. Plaintiffs' OPM-specific allegations seem to focus on OPM's policy of granting discretion to federal agencies to place employees on paid administrative leave for more than ten days under certain circumstances. *See* FAC ¶¶ 286-90. But while Plaintiffs may think OPM's policy is contrary to the Administrative Leave Act, that is not the basis of their suit, which instead alleges that OPM (and other Defendants) removed Plaintiffs contrary to the ADEA and other statutes. On that score, Plaintiffs have no plausible allegations against OPM.

Accordingly, Plaintiffs have not plausibly pled any allegations against non-USAID Defendants, so all non-USAID Defendants should be dismissed from this litigation.

### B. Plaintiffs' Claims Alleging Adverse Employment Decisions Taken by Defendants Prior to April 24, 2025 are Untimely.

Plaintiffs bypassed the administrative process under the EEOC by filing "a civil action in a United States district court under the ADEA against the head of an alleged discriminating agency after giving the Commission not less than 30 days' notice of the intent to file such an action." 29 C.F.R. § 1614.201(a). Under this procedure, aggrieved individuals must notify the EEOC "within

180 days of the occurrence of the alleged unlawful practice." *Id. See also* 29 U.S.C. § 626(d)(1)(A) (requiring EEOC notification "within 180 days after the alleged unlawful practice occurred."). Plaintiffs allege that they notified the EEOC "on October 21, 2025, of their intent to bypass the administrative claim process at the EEOC and exercise their right to directly file a lawsuit under the ADEA." FAC ¶ 24. As such, this Court's jurisdiction extends only to adjudicating alleged unlawful practices that took place within 180 days of the date Plaintiffs notified the EEOC, i.e., those between April 24, 2025 to October 21, 2025.

In response to this, Plaintiffs offer a dizzying array of justifications and excuses as to why alleged unlawful practices that took place before April 24, 2025 should still be considered timely. *See* Opp. Br., ECF No. 16, at 18-22. But none of the rationales offered are responsive to the applicable statute and regulation, which mandates EEOC notification "within 180 days" of any "alleged unlawful practice." *See* 29 U.S.C. § 626(d)(1)(A); 29 C.F.R. § 1614.201(a).

Nor does this limitation apply only to Plaintiffs' allegations regarding placement on paid administrative leave. *See* FAC ¶ 405 ("Defendants forced Plaintiffs on administrative leave from February 4, 2025, and for more than ten calendar days."). Plaintiffs' FAC is replete with allegations and citations to alleged age-discriminatory statements that took place before April 24, 2025. *See, e.g.*, FAC ¶ 217 (President Trump's remark made on or about Feb. 7, 2025); FAC ¶ 219 ("young guns" remark made on or about Feb. 25, 2025); FAC ¶ 237 (Elon Musk's remark quoted on social media on Feb. 2, 2025); FAC ¶ 241 (Mr. Miller's remark made on or about Jan. 29, 2025). *See also* FAC ¶¶ 221, 222, 228, 230, 238, 354 (referencing other remarks made before April 24, 2025). To be clear, Defendants do not concede that any of these statements is "age-discriminatory." But in any case, Plaintiffs make no effort in their FAC or in their Opposition to justify reliance on alleged age-discriminatory statements before April 24, 2025.

The onus should not be on Defendants or the Court to sift through Plaintiffs' complaint, separating out untimely allegations that are inextricably enmeshed throughout. At a minimum, the Court should dismiss Plaintiffs' FAC without prejudice and direct Plaintiffs to refile only timely allegations.

## II. PLAINTIFFS FAIL TO STATE A CLAIM AS TO ANY COUNT UNDER RULE 12(b)(6).

All of Plaintiffs' claims should be dismissed under Rule 12(b)(6) for failure to state a claim. Plaintiffs' ADEA claims fail because they cannot plausibly demonstrate disparate treatment nor disparate impact because Plaintiffs were removed as part of a wide-ranging RIF that impacted the entire agency, irrespective of any employee's age. Plaintiffs' OWBPA claims are irrelevant since OWBPA does not grant a private right action for any plaintiff to challenge their removal and all but two Plaintiffs were removed, rather than allegedly tricked or coerced to resign under false pretenses. Finally, Plaintiffs' remaining claims under the ALA and the APA are similarly without merit.

### A. Counts One and Two Fail to State a Claim Under the ADEA.

The ADEA prohibits discrimination on the basis of age. *See* 29 U.S.C. § 623(a)(1). Plaintiffs' Count One fails, because "[t]o establish a disparate-treatment claim under the plain language of the ADEA . . . a plaintiff must prove that age was the 'but-for' cause of the employer's adverse decision." *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 176 (2009) (citations omitted); *see also Babb v. Wilkie*, 589 U.S. 399, 413 (2020) (holding that "plaintiffs must show that age discrimination was a but-for cause of the employment outcome" if plaintiffs' requested relief is "reinstatement, backpay, compensatory damages, or other forms of relief related to the end result of an employment decision."). Plaintiffs do not (and cannot) plausibly allege that age was the "but-for" reason for their removal when USAID carried out an agency-wide RIF impacting virtually every USAID employee, regardless of their age.

Plaintiffs' Count Two fares no better. Plaintiffs are "'responsible for isolating and identifying the *specific* employment practices that are allegedly responsible for any observed statistical disparities.'" *Breen v. Chao*, 253 F. Supp. 3d 244, 265 (D.D.C. 2017) (citing *Smith v. City of Jackson*, 544 U.S. 228, 241 (2005)). But this is an impossible task for Plaintiffs where, as here, there can be no observed statistical disparities showing a disparate impact on USAID employees 40 years and older, when the agency-wide RIFs affected virtually every USAID employee, regardless of age. Put simply, Plaintiffs cannot show that they were disproportionately targeted for removal when USAID removed virtually everyone.

Plaintiffs retort that their burden at this stage of the litigation is modest under Rule 12(b)(6). *See* Opp. Br., ECF No. 16, at 23-24. They need only allege that Plaintiffs are "all over 40," that "the vast majority of USAID's foreign service officers are over the age of 40," and that Defendants removed "USAID's foreign service officers together in a large mass." *Id.* at 24. But Plaintiffs are required to do more. Under *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), factual allegations that are "merely consistent with" liability, and as to which an "obvious alternative explanation" exists, do not cross "the line between possibility and plausibility." *Twombly*, 550 U.S. at 557, 567. Plaintiffs do not cross that line because an obvious alternative explanation is that USAID foreign service officers were not terminated because most of them happen to be 40 years of age or older, but because they were situated like virtually every USAID employee who ultimately lost their jobs as part of USAID agency-wide RIFs to wind down programmatic activity at the agency and transfer its programmatic functions to the State Department.

Were the facts different—for instance, were only USAID employees 40 years of age or older terminated while their younger colleagues spared—then perhaps Plaintiffs could simply present that fact and survive a Rule 12(b)(6) motion to dismiss on that basis alone and seek to build

up their case in discovery. But that is not the case here. Plaintiffs need not prove their case at this stage, but they must plausibly plead sufficient facts to allow their case to continue. They have failed to do so here.

**B. Counts Three and Five Fail to State a Claim Under OWBPA and the ADEA.**

Plaintiffs' Count Three alleges in part that "[h]ad the Defendants complied with OWBPA . . . it would have impacted each Plaintiffs' decision-making." FAC ¶ 389. But what decision-making are Plaintiffs referring to? Nearly all allege that they were improperly terminated. *See* FAC ¶¶ 30-203. The only two exceptions appear to be Plaintiffs King and Pagen (*see* FAC ¶¶ 55, 120), but even for them, the FAC merely alleges that they resigned. There is no additional detail or allegation to plausibly plead that either Plaintiff resigned *because* of a non-OWBPA compliant exit incentive or employment termination program.

Plaintiffs' Opposition does little to illuminate what the alleged violation is or what remedy should follow. *See* Opp. Br., ECF No. 16 at 29. Plaintiffs rely on one out-of-circuit district court case to allege that OWBPA protections, which typically concern ADEA waivers in settlements and termination programs, are somehow applicable here, where all but two Plaintiffs allege they were removed (and where the only two Plaintiffs who resigned do not allege that they have signed ADEA waivers under untoward circumstances). *Id.* Plaintiffs insist they are entitled to "decisional unit statistics and criteria." *Id.* For this alleged failure, Plaintiffs seem to think they are entitled to a remedy "declaring the RIF unlawful for failure to comply with OWBPA's data publication requirements and other requirements." *Id.* But there is no logic in Plaintiffs' assertions and neither of the two cases they cite stands for the proposition that a RIF carried out without providing decisional statistics is voided. *See id.* at 29-30.

In any case, Plaintiffs cannot establish a private right of action to enforce the OWBPA in this suit. To do so, Plaintiffs must show that Congress created a private right of action to rectify

any OWBPA violation. *See Alexander v. Sandoval*, 532 U.S. 275, 286 (2001) ("[P]rivate rights of action to enforce federal law must be created by Congress.") As detailed in Defendants' opening brief, ECF No. 14-1 at 14-15, Congress did not do so, meaning that Counts Three and Five should be dismissed for this reason as well.

Plaintiffs' Count Five similarly alleges constructive discharge through intolerable conditions. FAC ¶¶ 395-402. Again, it appears that this Count could only concern the two Plaintiffs, King and Pagen, who resigned prior to removal by the agency-wide RIF. *See, e.g.,* FAC ¶ 55 (stating that King resigned on June 28, 2025 without specific details as to any "intolerable conditions" facing King); FAC ¶ 120 (same as to Pagen, who resigned on June 25, 2025). Plaintiffs do not plausibly allege specific facts as to any intolerable conditions that Plaintiffs King and Pagen experienced leading to their resignations, especially in view of the scores of other Plaintiffs who did not resign and were removed as part of the RIF. Plaintiffs' threadbare and conclusory allegations do not meet the plausibility bar of *Twombly*.

### C. Count Four Alleging a Violation of the ADEA due to Unlawful Classification is Without Merit.

Plaintiffs' Count Four alleges that "USAID terminated its older employees under the guise that their positions were not being retained only to rehire for the same positions but under different classification that tend to discourage older workers from reapplying and therefore adversely impacting their status due to their age." FAC ¶ 396. But Plaintiffs fail to plausibly allege USAID disproportionately targeted its older employees, given that the agency-wide RIF affected virtually every USAID employee.

Plaintiffs respond that since "more than eighty-nine percent of the USAID workforce" is older than forty years old, they have "made a *prima facie* showing that Defendants' employment practices operated to exclude from USAID a disproportionate number of ADEA-protected

employees." *See* Opp. Br., ECF No. 16 at 26-27. Not so. Once again, Plaintiffs do not meet *Twombly*'s requirement to plausibly plead allegations by explaining away obvious alternative explanations, e.g., that an age-neutral policy of winding down USAID's programmatic functions merely incidentally impacted employees aged forty or greater. Plaintiffs fail to present any evidence, for instance, that USAID as an agency (compared to other federal agencies) in having some 89% of the workforce aged 40 or greater. Absent even this basic showing, Plaintiffs' factual allegations are "merely consistent with" liability and do not cross "the line between possibility and plausibility." *Twombly*, 550 U.S. at 557, 567.

**D. Count Six Alleging a Violation of the Administrative Leave Act is Without Merit.**

Count Six alleges a violation of the ALA, FAC ¶¶ 403-10, on the basis that Plaintiffs were placed on paid administrative leave for longer than ten workdays prior to their removal. This Count fails to state a claim for at least two reasons. As detailed in Defendants' opening brief, ECF No. 14-1 at 16-18, the ALA's ten-workday limit applies only to "investigative leave" for federal employees that are subject to investigation; under OPM regulation, that limit is inapplicable to non-investigative administrative leave. The ALA also provides no independent private right of action to enforce its terms, including the alleged ten-workday limit.

Plaintiffs fail to engage with the latter argument and thus must concede it. *See* Opp. Br., ECF No. 16 at 30-32. Plaintiffs instead put forth their argument against the propriety of OPM's administrative leave policy. *Id.* But even if Plaintiffs were right (and they are not), they fail to address why they are entitled to challenge the policy, when Congress did not provide for a private right of action to enforce it. Whatever the merits of Plaintiffs' arguments that granting paid administrative leave for longer than ten days is wasteful to the public fisc or against Congress's legislative intent, Plaintiffs present no argument as to why they (who received payment while on

administrative leave, sometimes for months) have any basis to challenge the policy. In any case, Plaintiffs have not asked for relief to strike OPM's guidance (*see* FAC, Prayer for Relief) and have thus waived any argument that OPM's guidance should not control in assessing Plaintiffs' ALA claims. For all these reasons, Count Six should also be dismissed.

**E. Plaintiffs Fail to State a Claim under the APA in Count Seven.**

Plaintiffs claim a violation of the APA in Count Seven, arguing that USAID's decision to "force Plaintiffs on administrative leave and then terminate them" is "arbitrary and capricious." FAC ¶¶ 414-15. Plaintiffs' claim is without merit. Where, as here, other statutes provide for judicial remedy, an action under the APA is improper. *See* 5 U.S.C. § 704 ("Agency action made reviewable by statute and final agency action for which *there is no other adequate remedy* in a court are subject to judicial review." (emphasis added)); *Bowen v. Massachusetts*, 487 U.S. 879, 880 (1988). If Congress has provided an adequate procedure to obtain judicial review, then that statutory provision is the exclusive path for review to obtain judicial review. *See Whitney Nat'l Bank v. Bank of New Orleans & Trust Co.*, 379 U.S. 411, 419-23 (1965). Numerous statutes have been held to provide an adequate remedy and preclude APA review. *See, e.g.*, *Love v. Connor*, 525 F. Supp. 2d 155, 158-59 (D.D.C. 2007) (female farmers had no APA claim against Department of Agriculture for discrimination because Congress created a specific complaint procedure against USDA).

In this case, other statutes provide for judicial remedy, including the ADEA (which Plaintiffs invoke in this suit) and the comprehensive administrative system for reviewing personnel actions provided by the FSA. As such, Plaintiffs' attempts to invoke the APA for relief are without merit.

Plaintiffs' arguments to the contrary, *see* Opp. Br., ECF No. 16 at 32-34, do not explain why APA review is possible in this matter despite the statutory mandate that judicial review is

available only for final agency action "for which there is no other adequate remedy." *See* 5 U.S.C. § 704. Plaintiffs have asserted numerous other statutory vehicles, including the ADEA, through which to challenge their removals. Judicial review under the APA is thus not available here.

**CONCLUSION**

For the reasons above, Plaintiffs' claims should be dismissed under Rule 12(b)(1) and Rule 12(b)(6).

Dated: September 3, 2026

Respectfully submitted,

BRETT A. SHUMATE
*Assistant Attorney General*

CHRISTOPHER R. HALL
*Assistant Branch Director*

/s/ *Esam K. Al-Shareffi*
ESAM K. AL-SHAREFFI
(D.C. Bar No. 90010174)
*Trial Attorney*
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, DC 20530
Telephone: (202) 598-7367
E-mail: esam.k.al-shareffi@usdoj.gov

*Counsel for Defendants*